ACCEPTED
01-15-00471-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/26/2015 2:49:52 PM
CHRISTOPHER PRINE
CLERK

REPORTER'S RECORD

VOLUME 1 OF 1

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

TRIAL COURT CAUSE NO. 425.57~~5/26/2015~~ 2:49:52 PM

APPELLATE NO. _____

CHRISTOPHER A. PRINE
Clerk

| | |
|---|---|
| IN RE: | ) IN THE PROBATE COURT |
| DANIEL STEVEN WEINER | ) NUMBER 4 (FOUR) OF |
| 1996 TRUST | ) HARRIS COUNTY, TEXAS |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DANIEL WARREN'S PLEA TO THE JURISDICTION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 13th day of May, 2015, the following proceedings came to be heard in the above-entitled and numbered cause before the Honorable Christine Butts Judge of Probate Court No. 4, held in Houston, Harris County, Texas:

**EXHIBIT**

**TAB E-1**

exhibitsticker.com

Proceedings reported by Machine Shorthand

HIPOLITA G. LOPEZ, CERTIFIED SHORTHAND REPORTER

A-P-P-E-A-R-A-N-C-E-S:

Ms. Carol A. Cantrell              Ms. Sarah P. Pacheco
Attorney at Law                    Attorney at Law
SBN 24043592                       SBN 00788164
CANTRELL & CANTRELL, PLLC          Crain Caton & James
3700 Buffalo Speedway              1401 McKinney; 17th Floor
Suite 520                          Houston, Texas   77010
Houston, Texas   77098             713.658.2323
713.333.0555

ATTORNEY FOR PETITIONER            ATTORNEY FOR ANDY WEINER

VOLUME 1
(PLEA TO THE JURISDICTION)
May 13, 2015                                    Page      Vol.

PROCEEDINGS...............................4        1
PLEA TO THE JURISDICTION:
    ARGUMENT BY MS. CANTRELL................4        1
    ARGUMENT BY MS. PACHECO................10        1
    REBUTTAL ARGUMENT BY MS. CANTRELL......20        1
    REBUTTAL ARGUMENT BY MS. PACHECO.......27        1
COURT'S RULING............................29        1

COURT REPORTER'S CERTIFICATE..............38        1

EXHIBITS INDEX

| RESPONDENT'S | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| A | Original Petition for Termination of Trust | 15 | 16 | 1 |
| B | First Amended Original Petition for Modification of Trust and Response to Plea in Abatement and Plea to the Jurisdiction | 16 | 17 | 1 |
| C | Original Petition In Intervention | 17 | 17 | 1 |
| D | Andy Weiner's Cross-Claims Against Katherine Warren F/K/A Katherine Weiner | 17 | 17 | 1 |
| E | First Supplement to Original Answer | 17 | 18 | 1 |
| G | Rules of the Probate Courts of Harris Cnty | 18 | 18 | 1 |
| H | Plaintiff's Original Petition | 18 | 19 | 1 |

| PLAINTIFF'S | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 1 | Petitioner's Notice of Nonsuit Against Andy Weiner | 5 | 5 | 1 |
| 2 | Order Granting Petitioner's Nonsuit and Dismissal | 5 | 6 | 1 |
| 3 | Andy Weiner's Counter & Cross-Petition | 5 | 6 | 1 |
| 4 | Andy Weiner's Sec'd Amended Cross-Claims Against Katherine Warren F/K/A Katherine Weiner | 6 | 6 | 1 |
| 5 | Amended Order on Motion to Sever | 6 | 7 | 1 |
| 6 | Email chain | 7 | X | 1 |

HIPOLITA G. LOPEZ, CERTIFIED SHORTHAND REPORTER

May 13, 2015

PROCEEDINGS

THE COURT: Calling to order Cause Number 425.576 in the 401; In Re: Daniel Steven Weiner 1996 Trust. We're here on Daniel Warren's Plea To The Jurisdiction.

MS. CANTRELL: That is correct. Are we ready to proceed?

THE COURT: Yes, we are.

DANIEL WARREN'S PLEA TO THE JURISDICTION

ARGUMENT BY MS. CANTRELL:

MS. CANTRELL: Well hopefully this will be the easiest of the three Weiner Trust cases.

This case involves a nonsuit at a time where there were no outstanding claims of any kind.

Daniel had sued Andy Weiner, and Katherine Warren was a Respondent in that. He nonsuited Katherine Warren. So, she was out.

Andy Weiner had affirmative defenses but no counter-claims against Daniel.

Andy Weiner had cross-claims against Katherine but not in Daniel's case. They were all in the case that David filed. And so at the moment in time that he nonsuited, and at the time he was dismissed, under Greenberg versus Brookshire, the case was over.

HIPOLITA G. LOPEZ, CERTIFIED SHORTHAND REPORTER

All the controversies were settled; all the claims were gone and the parties were gone.

I would like to go ahead and introduce as Exhibit 1, the date order so that there's no question about that just to make sure. What I have in Exhibit 1 for you, Sarah, is the Daniel's nonsuit of his entire case against Andy Weiner. And I have this Court's order granting his nonsuit and dismissal. His nonsuit was March 10th; the dismissal was March 16th; and the counter and cross-petition was March 24th.

MS. PACHECO: My only request, Your Honor, is if it is three distinct documents, if we can enter those as three distinct exhibits because I'm quite confident where Ms. Cantrell would go next and that would be the appellate record. I always find it's easier to refer to each document separately in the record if that's okay.

MS. CANTRELL: Okay. That's fine.

We'll mark those Exhibit 1 for the notice of nonsuit. Exhibit 2 for the dismissal. And Exhibit 3 for the counter and cross-petition.

THE COURT: Exhibit 1 which is Petitioner's Notice of Nonsuit Against Andy Weiner is admitted as Exhibit 1, as Plaintiff's Exhibit 1. And the Order Granting Petitioner's Nonsuit and Dismissal,

that is admitted as Plaintiff's Exhibit 2. And Andy Weiner's Counter and Cross-Petition is admitted as Plaintiff's Exhibit 3.

MS. CANTRELL: I would also like to admit Exhibit 4 which is Andy Weiner's Second Amended Cross-Claims. And one of the footnotes in the response that, I guess, Ms. Beduze or Ms. Pacheco filed last night about 5:00, said that it was administrative error that this cross-claim got left off of the list of documents that were transferred to Daniel's case. And so, I would like to admit Exhibit 4 as the Second Amended Cross-Claims to show, number one, that it was in David's case only.

MS. PACHECO: I have no objection.

MS. CANTRELL: Okay.

THE COURT: Okay. Andy Weiner's Second Amended Cross-Claims Against Katherine Warren Formerly Known As Katherine Weiner is admitted as Plaintiff's Exhibit 4.

MS. CANTRELL: And because I think there might be a dispute over whether that -- those counter-claims or those cross-claims apply in Daniel's case, I would like to also admit Exhibit 5 which is this Court's order and the list of documents that were moved over in the motion to sever in the agreed order -- or

not the agreed, but the amended order to sever - that being dated November 17th of 2014, showing clearly that those cross-claims were not moved.

MS. PACHECO: No objection.

THE COURT: Okay. The Amended Order On The Motion To Sever is admitted as Plaintiff's Exhibit 5.

MS. CANTRELL: And the only other one that I would like to admit at this time is Exhibit 6 which is the email chain that led up to that motion or that order to sever in that itemized list of documents because it took us 10 days of negotiations to get that list pulled together. It started with a draft of a, of a list that Ms. Beduze put together, and it's in substantial identical form as the one that was actually signed. And we went back and forth with certain changes to the language on it - who was going to pay for the cost and so forth; but essentially, it was negotiated. It was -- in the email - this is from Judge Comstock to me and Kathleen Beduze - she said, "Are there any additional items that you would like to include in the order to protect the order?"

So we all, I believe, had ample opportunity to add to, subtract, and it didn't make it. Just to clear the record that that is not part of

Daniel's case - the cross-claims aren't.

MS. PACHECO: I'm going to object to a series of emails between Counsel and your court staff that are basically going back and forth and aren't complete. It's hearsay, it's inappropriate, and this doesn't constitute anything but the efforts of lawyers trying to do the right thing. The document speaks for itself.

MS. CANTRELL: I would agree to leave it out if there's no objection that the cross-claims are not in Daniel's case.

MS. PACHECO: We've already placed in the record what we placed in the record, Your Honor. The record speaks for itself.

MS. CANTRELL: The record is conflicting, then, because the response says that they are before this court, and I believe that the record shows that they're not.

MS. PACHECO: The Court's order speaks for itself. And the Court's order specifically says that you are moving over, let me find the exact wording...

"All prior motions, discovery orders, responses and answers." And then there is a laundry list of specific pleadings. So, the order speaks for itself. I don't think conversations between Counsel and

court staff who are trying to be helpful but certainly weren't shepherding responsible a ruling on these matters is any way relevant to the appellate record in this case.

MS. CANTRELL: Then I would point out that prior discovery, orders, motions, responses and answers do not include pleadings. And that cross-claim would be a pleading. So, I mean, if we're in agreement that the cross-claim does not apply to this case, then, I'm okay not admitting the emails.

MS. PACHECO: I've said my objection, Your Honor, at this point. I believe I don't think I have anything else to add, and I'm just wasting your time reiterating the same thing. It's for the Court to rule. I believe the record speaks for itself, and it's for the appellate court to determine where somebody is going to go.

THE COURT: Okay. I'm not going to be able to admit Exhibit 6.

MS. CANTRELL: Okay. That's fine.

THE COURT: Okay. So, let's continue.

MS. CANTRELL: In a case like Daniel's where there is a nonsuit and there are no outstanding claims, it's clear there was no cross-claim against Katherine and the counter and cross-petition was filed

well after the dismissal. That is on all 4's - the supreme court case of Greenberg versus Brookshire. And that case has been followed over a hundred times in all kinds of cases. Greenberg versus Brookshire was a divorce case, but it's been followed by Texas Supreme Court cases, it's been followed by appeal court cases, Fifth Circuit Court of Appeals, the federal courts. It's the law of the land. It's a landmark case. It was a case exactly like this where there was a suit and a nonsuit and a counter-claim following the nonsuit. And the supreme court mandamused the judge - it was a district court judge in Jefferson County - and said, "Halt. The case is over."

And I submit that our case is Greenberg versus Brookshire on all 4's.

MS. PACHECO: May I proceed, Your Honor?

THE COURT: Certainly.

<u>DANIEL WARREN'S PLEA TO THE JURISDICTION</u>

<u>ARGUMENT BY MS. PACHECO:</u>

MS. PACHECO: I think the fundamental difference is the way we view what this case is. I admit, I'll be the first person to admit, this case is probably the most convoluted procedural case I've ever seen. Petitioners have become Respondents; they've released each other; they've sat in depositions

representing the other. It is a bizarre case. I don't understand what they're doing, but frankly, they, as Ms. Cantrell told me when I called her the day I got her nonsuit, she doesn't have to tell; and she's right. But what she misses is when she chooses to nonsuit, my client who'd been a defendant for a year and a half, had substantial money invested in the education of this Court and rulings obtained by this Court, had the absolute right to, himself, institute a lawsuit and proceed on that lawsuit to resolve the very issues they have raised and vilified him for. And that's exactly what -- you don't have to worry about the nonsuit.

I'll take the simple answer first.

When we filed days after she filed her nonsuit, we filed a cross and counter-petition. We affirmatively stated in there, and it's her exhibit, that because of the convoluted procedural nature of this case, we drafted it just like an original petition. And in fact, it shows Paragraph 1 as discovery letter level just like an original petition. And Footnote 2 says, "Due to the confusing nature of this case's procedural background, Mr. Weiner requests that service be affected on Daniel through his attorney of record as well as through private process."

We treated this suit to be careful as a

newly-instituted lawsuit which that jurisdiction reattaches to this court on the moment the pleading is filed. And that is confirmed. In fact, when I was looking at this issue, and it is an odd issue - because what Ms. Cantrell focuses on her nonsuit. If she filed a nonsuit and then when we came down and got affirmative relief against Daniel, which is what happened in Greenberg, I would be saying she's absolutely right. We can't do that. All we did was reinstitute a lawsuit in the same cause number which Local Rule 2.2 tells us this is where this lawsuit goes. Once you choose the number, it goes back to that original number.

We instituted a new lawsuit and immediately attempted to effectuate service.

When they evaded it nine times, this Court entered a substituted service order. This Court had absolutely every right to do that because every court has jurisdiction to enter a substituted order when a party is evading service. And that's what's happened in this case. That's all that's happened.

In Greenberg, after the party dismissed, the Court entered rulings. Well they can't enter rulings because I would agree in that case the parties aren't before this Court. The only thing that's

happened in this case since the readmission of this pleading is the attempt to join her clients, and we have now done that through substituted service. We haven't gotten to any affirmative rulings. They will be a party.

Greenberg is completely irrelevant to this case 'cause your court has entered no rulings. You've done nothing other than approved substituted service since we filed this pleading. Now once the service date has passed, whatever she's going to do - she can argue then whether we should have the ruling or not, but they're before this Court; they've been joined.

The supreme court in Zachary versus Lane in 2001 looked at the issue of who is a party. Do you have to be served to be a party or are you a party the second the pleading is filed? The supreme court looked at the case and said, "No. You are a party the second the case is filed." They were rejoined as a party 'cause we re-served her which I agree - if they claim they want a party - so be it. But we didn't skip the step of personal service. We did that; albeit, by substituted because they evaded.

But in that case, the supreme court said they are party the second the pleading is filed. Now you can't render judgment against that person unless we

go and proceed and join, but the definition of "party" is not when they have just been joined; in fact, what they said:

"The supreme court does not hold that a named defendant is not a party until that person is served except to waive service."

Well it's true the party may be served except to waive service otherwise a PR in order for a judgment to be rendered against them; nevertheless, it doesn't make them not a party in the lawsuit in which they have been specifically named.

Another case out of Corpus Christi, Christus Health versus Ragsdale, also a 2001 case, looked at the issue of can you then add a party to a suit later and it relates back to the original filing? And they say, "Yes," even if that party tried to run off to another court and file a lawsuit. And that's Corpus Christi -- Christus Health versus Ragsdale.

So, my point is we're sort of avoiding the real issue here.

She does not like that when she was playing her procedural games, we got a sense that this wasn't going away and reinstituted the very same affirmative claims in this suit that they have been bringing this whole time, construction of the trust.

So, I just disagree wholly that her cases apply. I disagree wholly this Court doesn't have jurisdiction. It's a statute of probate court. As you know very well, it's concurrent jurisdiction in all trust cases. This is a trust case that had been pending here.

And on March 24th, before she went to the district court, we initiated, at a minimum, what would be deemed a new lawsuit.

I have a few exhibits to put in the record. They are mainly attached to my pleading so I didn't make extra copies for Counsel, but I do feel like I want to go the extra step and have them in the record.

I'm offering as Exhibit A, and I apologize, I'm just trying to use the same exhibit numbers I did to my response. The Original Petition For Termination of Trust originally filed by Katherine Warren as Co-Trustee of Daniel's trust on October 2nd, 2013 as Respondent's for Mr. Weiner's Exhibit A. And I'll represent to Counsel these are duplicates of the exhibits attached.

MS. CANTRELL: That's fine.

THE COURT: The Original Petition For Termination of Trust is -- well do you have an objection?

MS. CANTRELL: No objection.

THE COURT: Is admitted as Respondent's Exhibit A.

MS. PACHECO: Thank you, Your Honor. We offer as Exhibit B, the First Amended Original Petition For Modification of Trust and Response To Plea and Abatement and Plea To The Jurisdiction filed by Katherine Warren as next friend of Daniel Weiner on November 4th of 2013, Your Honor.

MS. CANTRELL: My only objection, I guess, other than those two, would be that those are -- are those in Cause 425.576?

THE COURT: Yes.

MS. CANTRELL: Which is a case that's been dismissed now. So, that's -- it was dismissed back in November of 2013. They're somewhat irrelevant, but I presume it's harmless to admit them at this point.

MS. PACHECO: I just want to show the procedural and history of this particular Mr. Weiner's claims, Daniel Weiner's claims as it relates to this Court, Your Honor.

THE COURT: The first amended -- so are you --

MS. CANTRELL: I'm okay with that.

THE COURT: -- withdrawing your objection?

MS. CANTRELL: No, I have no objection.

THE COURT: Okay. The First Amended Original Petition for Modification of Trust and Response To Plea and Abatement and Plea To The Jurisdiction is admitted as Respondent's Exhbit B.

MS. PACHECO: Thank you, Your Honor.

And I offer as Exhibit C, the Original Petition In Intervention filed by Daniel Steven Weiner on April 22nd of 2014 in Cause Number 425.577.

MS. CANTRELL: No objection.

THE COURT: The Original Petition In Intervention is admitted as Respondent's Exhibit C.

MS. PACHECO: Thank you, Your Honor.

I offer as Andy Weiner's Cross-Claims Against Katherine Warren Formerly Known As Katherine Weiner filed on July 2nd, 2014, Your Honor.

MS. CANTRELL: No objection.

THE COURT: The Andy Weiner's Cross-Claims Against Katherine Warren, F/K/A Katherine Weiner is admitted as Respondent's Exhibit D.

MS. PACHECO: Your Honor, I offer into first supplement -- First Supplement To Original Answer filed by Mr. Weiner on July 8, 2014.

MS. CANTRELL: No objection.

THE COURT: The First Supplement To

Original Answer is admitted as Respondent's Exhibit E.

MS. PACHECO: Thank you, Your Honor.

I offer as our Exhibit G, the Rules of The Probate Courts of Harris County, Texas approved by the supreme court and entered as an order of this court on March 8 of, 2007.

MS. CANTRELL: May I see those? Which rules are those?

MS. PACHECO: Yes.

MS. CANTRELL: Oh, the probate courts. Good. Thank you.

THE COURT: The Rules of The Probate Courts of Harris County, Texas, are entered as Respondent's Exhibit G.

MS. PACHECO: Thank you. And I was going to offer so I affirm the offering of Andy Weiner's Counter-Claim and Cross-Petition which I believe is already Plaintiff's Exhibit 3. I believe that's already admitted into evidence; is that right, Your Honor?

THE COURT: It is.

MS. PACHECO: Thank you.

And finally as Exhibit H, I offer Plaintiff's Original Petition of David W. Warren, Daniel W. Warren and Katherine Warren as next friend of MHW, a minor. That was filed in the district courts of Harris

County and assigned to District Court Number 133 on April the 2nd of 2015.

MS. CANTRELL: No objection.

THE COURT: Okay. Plaintiff's Original Petition is admitted as Respondent's Exhbit H.

MS. PACHECO: And what those documents establish is the procedural history in this court including the severance because of Mr. Daniel Weiner's now-Daniel-Warren's intervention; but more specifically, that Mr. Weiner's counter and cross-petition which fell to constitute the original pleading that was promptly served was filed before any attempt to initiate any jurisdiction, any other court which the supreme court has also said the first filing applies. And that would reinstitute this Court's jurisdiction.

Even if you believe that we couldn't rejoin her, even if you believed that there was no valid existing lawsuit as it relates to Daniel, it's irrelevant because we reinstituted a lawsuit on March 24th; we promptly served; service has been obtained.

And finally we ask the Court to take judicial notice of your order of substituted service.

THE COURT: It is so noted.

MS. PACHECO: Thank you, Your Honor.

HIPOLITA G. LOPEZ, CERTIFIED SHORTHAND REPORTER

REBUTTAL ARGUMENT BY MS. CANTRELL:

MS. CANTRELL: May I? I have a couple of comments in rebuttal.

THE COURT: Sure.

MS. CANTRELL: The facts of this case are what happened in Greenberg versus Brookshire identically. There was a counter-claim, a brand new pleading into the case after the nonsuit, and that's in the Court's -- the supreme court said that that -- the nonsuit ended the case. It was over at that point. There should be no more claims - whether they're hearings or not - there's no more orders. The case is over.

And so I also wanted to point out that in their responsive -- the response to our motion -- our plea to the jurisdiction which I'm not sure that you-all have because it was filed about 5:00 last night. Did you-all get that?

THE COURT: The response --

MS. CANTRELL: Their response to our plea.

THE COURT: Yes, I got it right here. They gave me this notebook which is their courtesy copy.

MS. CANTRELL: Okay. Could you please look for me on -- at Paragraph 33 and 36 of their response because I would like to correct the record on a

couple of misstatements in there about timing and dates which I think the records -- the documents we have admitted will speak for themselves.

Paragraph 33 says that "Further in his counter and cross-petition filed prior to the Court signing Daniel's request for dismissal" - that is not correct. The counter and cross-petition was filed after the Court signing Daniel's request for dismissal - the dates being March 24th for the counter and cross-petition and March 16 on signing the dismissal. And that error is repeated in Paragraph 36 where it says, "In subsequent to Daniel's nonsuit but prior to the entry of dismissal, Mr. Weiner's cross and counter-petition was filed." That's the same error. It is incorrect on the dates. Daniel's nonsuit predated, and his dismissal predated, the cross or the counter and the cross-petition. So, I would -- I'd like to correct the record on those two things.

THE COURT: Okay. Just quite simply: We view the pleading filed on March 24th by Andy Weiner whose counter and cross-petition, we view that as an original petition. I mean, I know it's titled, "Counter and Cross-Petition" but we view it as an original petition. And so --

MS. CANTRELL: Your Honor, could we look

at the local rules, then, on the numbering, the case numbering, on original petitions that are in evidence?

THE COURT: Okay.

MS. CANTRELL: It says, "All matters relating to or appertaining to an estate or guardianship -- "

THE COURT: Where are you reading from?

MS. CANTRELL: The Rule 2.2, the one they cited in their response.

THE COURT: Okay.

MS. CANTRELL: "All matters relating or appertaining to an estate or guardianship," which this does not, "that has not been closed as provided in the Probate Court Code including proceedings upon trust created by decedent's will," which this is not - this is an inter vivos trust, "shall remain in such court subject to an order of transfer as with any case and shall retain the original docket number with an appropriate sub file."

So, if it's an original petition, it should have its own separate case number according to the way I read these rules.

"Each subsequent matter filed involving the same decedent or Proposed Ward," which this does not involve, "shall be filed in the original file under the

same docket number and in the same court as the original filing."

So, I do not see under these rules how they can file a brand new petition into a case that has been nonsuited. I don't dispute that they could file a brand new lawsuit and they're welcome to. They will -- they've already raised the construction issues in the district court case; so those are already before the district court case. So, it would be duplication if it reads the same way as their counter and cross-petition.

MS. PACHECO: Actually, they're part of an affirmative answer, and there is a plea to abate in the district court case saying this court has jurisdiction.

MS. CANTRELL: I have a copy of that pleading. Well you've got it in evidence.

THE COURT: Okay. So, if we view this as an original petition, does it need to go back to -- should it have gone through the process of being assigned to another probate court?

MS. PACHECO: I don't know the answer to that. That's never been my experience. My experience with the Clerk's Office in 20-plus years, if it relates to the exact same cause number or style of the original - it always goes back to that case. They get very upset when you start picking new courts which is

part of the reason you have assigned it back to the same court which is clearly intention of the local rules.

MS. CANTRELL: And, Your Honor, I have the Government Code Section 25.1034 which this Rule 2.2 refers to, and it does talk about the random assignments. And it says, "The county clerks will keep a separate docket for each court. The County Clerk shall assign and docket as random matters and proceedings filed in the statutory probate courts according to the following percentages:

"Probate Court Number 1 - 30 percent; Probate Court 2 - 30 percent; Probate Court 3 - 20 percent; Probate Court 4 - 20 percent."

So, this is the random assignments. You may be familiar with this.

MS. PACHECO: That's a Clerk's Office function. If the Court wants to tell them to reassign it a new cause number, it doesn't change the filing it attaches to the courts - it's just a matter who hears it. But I've never seen a case where the case was already before a court that even if it was assigned to another court, it wasn't immediately transferred back under administrative transfer powers.

MS. CANTRELL: I have no problem --

THE COURT: We can go through that -- we

can go through the motions of -- I can send the file back to the Clerk's Office for random assignment. But then whatever judge in Harris County gets it is going to see that we've got two other related cases, and they're going to send it back.

MS. CANTRELL: Your Honor, I would submit that they need to file a brand new lawsuit in starting all over.

MS. PACHECO: Of course, she does because she wants to try and get to her district court. This is a game. It is a vile game that has been played for a year and a half. It is offensive.

MS. CANTRELL: It is not a game; it is called following the rules.

MS. PACHECO: No, this isn't following the rules. This isn't the spirit of the Code of Professional Conduct. This isn't the spirit of the Rules of Professional Procedure. There is nothing appropriate about the actions that have been taken in this case.

MS. CANTRELL: There is --

MS. PACHECO: I'm going to be quiet because I'm about to be unprofessional myself.

THE COURT: You know, I'm just not going to do anything about -- I view this as an original

petition. I don't care what it's called. And I'm not going to do anything about the sending it to the Clerk for random reassignment. I really don't -- I've never had this issue come up, and I'm just not going to do anything about it. And, I mean, and you can, you can appeal these decisions, of course. And so, I mean, that's what I suggest you do. But I view this as an original petition and that's just, that's just how I reasonably view it. And so I could be wrong about that but --

MS. CANTRELL: Your Honor, there is a case by Justice Bland who is the same one that wrote the opinion in Michael's case --

MS. PACHECO: Your Honor, I have a proposed order on the dismissal of the plea and the jurisdiction. I would ask that the Court enter it.

THE COURT: Well what were you saying?

MS. CANTRELL: The Court says this:

"After the trial Court lost plenary power," this involved a nonsuit, and your plenary power expired 30 days after the March 16th dismissal under Section 329(b) of the Rules of Civil Procedure, "after the Court, trial Court, lost plenary power it granted a plea to the jurisdiction. Because the trial Court had lost its plenary power, the Trial Court's order granting

the plea is void. An appellate Court should declare post-plenary power orders void."

And that is my position that any order in this case past April 16th, according to every case I have read, is void.

In this case, now they can file a brand new lawsuit, but the jurisdiction in this case is over starting with the nonsuit and 30 days thereafter when the plenary power expires. That is just according to the rules.

You can call it gamesmanship as Ms. Pacheco likes to do frequently, but it's playing by the rules. It is to prevent this exact same thing happening; otherwise, the right to nonsuit would be illusory. You could never nonsuit because someone could simply counter-claim you right back in which is exactly what happened. And this case is -- this would be not only void but it would be an interlocutory order and that does not qualify for permissive appeal because it's not a situation where there's substantial ground for disagreement.

REBUTTAL ARGUMENT BY MS. PACHECO:

MS. PACHECO: One, that case doesn't apply under this circumstance; and two, again Counsel completely ignores how the law does not approve of forum

shopping which is exactly what's happened in this case. We obtained rulings on summary judgments. We did all that. She, again, incurred thousands and thousands of dollars of legal fees. And then she tried to get out of this court 'cause she didn't like where it was going and go find a different shore. That is flat-out forum shopping. This isn't even a different county - it's a different court; different floor; different court; same courthouse.

So, I don't see how any of that is appropriate or relevant to the issues in this case.

MS. CANTRELL: The plaintiff has a perfect right to choose his forum that's why Wyatt versus Shaw Plumbing is the case that Michael's case went up on appeal over.

MS. PACHECO: And Mr. Weiner has done that when they chose to take their ball and try and get different rulings at a different court. And now he is the Plaintiff, and he has chosen the Harris County Probate Courts, wherever he be assigned, including the judge who is very educated on this process.

MS. CANTRELL: Your Honor, I have an order dismissing Andy Weiner's counter and cross-claim and dismissing this entire case.

COURT'S RULING

THE COURT: Okay. I'm not going to dismiss it. And I could be wrong on when I sign this order on the plea to the jurisdiction. I guess, I'm just -- I'm frustrated because at the beginning of this case then Andy Weiner wanted it moved over to the family court. And so we -- when I looked at the case, I thought, you know, clearly this is within the language of the divorce decree, right? The divorce decree. And I know I'm going back years, but the divorce decree, if I remember right, said that they were to be trustees and that they weren't supposed to seek the removal of either of them. I don't remember exactly what the language was. So, I thought, well, you know, a judge over there is one who signed that order or that decree, and they need to go back and determine if this is, in fact, a violation of that decree. I was wrong about that. So, that came back to us.

And now the Warren children are wanting to move their cases to district court. And it's, in my view, it doesn't serve the interest of either party or either -- or any of the parties to be jumping around courts especially you guys have both invested a lot of time, energy, and money in this court. And it feels like forum shopping to me. And they've invested a lot

of effort and money and time when they, over the course of this case, and I can't just dismiss it. And I could be wrong. I mean, I could be wrong that my plenary powers expire 30 days after I sign the order dismissing the case. But that's not the way I view it. I view this as, in essence, an original petition being filed. And maybe it should have been funneled through the Clerk's Office and assigned to a different court. I don't know. But I'm not going to dismiss it over something procedural like that.

So, you know, I'm going to have to just do what I think is right and let the appeals court deal with it. So, that's all I know how to do.

MS. CANTRELL: Yes, Your Honor.

MS. PACHECO: Your Honor, while we're here, may I make one last request that has nothing to do with this motion. And you raised this at the last hearing.

Ms. Cantrell has the propensity to contact your staff and email them and elicit comments and then quote them, now in mandamuses and other proceedings. I recognize it's your prerogative to allow us to do that, and you've been very accommodating to move things along. Given what she has contorted some of those statements to be, I would request that if any requests should be made,

they should be made in open hearings with a record so it's not this back and forth convoluted process and then attempt to put an email in the record.

I recognize -- I'm a believer in cooperative courts, and y'all have always been cooperative, but I feel that now she tries to get answers and then use those in future proceedings and it's just improper.

She has suggested court staff has given her legal advice which hasn't -- I'm not staying it happened, but I just think it needs to stop. I mean, to the extent we request a hearing, the request should be I want to set a hearing on "X" date - not the going back and forth because I feel like we have crossed the line, or perhaps all sides, in this case. And because of the nature of this case, I would ask that you direct all parties to stop emailing anything substantive to the Court and put in a pleading.

THE COURT: Okay.

MS. CANTRELL: I thought you did that already, Your Honor, at the last hearing. You did ask us -- well, to put everything in emails so now the request I'm hearing is not to even email?

THE COURT: Well, I mean, the thing is, this is the limits -- I mean, we're bound by judicial

ethics, and I'll say this. What I said before is we've kind of been -- we've done our best to abide by those ethical requirements, but I will say that in estate and guardianship matters where we're dealing with a lot of pro se litigants then quite often we will give advice that borders on, you know, it may go beyond just procedural, and it may be even bordering on legal advice. And we do that because we view that sometimes it's just, it's expeditious for the protection of a Ward especially, okay. We don't want anything bad to happen to our Wards, and we view that as our highest priority.

This case is totally different, okay. And the only thing that you guys, as you know, are permitted to visit with our staff about is procedural issues. And so beyond that, we shouldn't receive any communication if it has nothing -- if it goes beyond procedural, we are not permitted to receive it.

MS. CANTRELL: Your Honor, I understand that, and I think that was clear at the last hearing. I'm not sure why it's coming up again.

MS. PACHECO: It's coming up because now she's quoting emails in mandamuses. And what I've come to realize is you call it procedural issues, but technically, what she should be communicating with the Court about is setting hearings. I mean, she can't get

her procedural questions answered by this Court either. If she wants to know what the Court wants to do on a particular issue, I'm always happy to come down here and have a status conference with a record, and we can deal with it in the proper way.

166(g), under the Rules of Procedure, is intended to address procedural issues on notice and pleading. But what has happened in this case is she's sort of contorting those communications into other things; and frankly, I don't like having arguments with Counsel where, you know, colleagues or anybody associated with the Court are copied on those. It just, you know -- and there's embedded comments in there.

I understand -- I'm not saying it should be in every case, and I certainly, I said this last time and I'm going to say it on the record - I am not implying this Court has done anything other than be excessively cooperative to both sides. But Ms. Cantrell then contorts those into advice; and, you know, it's not even with you, but your staff is an arm of you and it can be deemed as ex parte communication or she's trying to argue the Court told her to do something. It's improper. And she's not seeing the limits of those, and yet again, when we're setting things, there's a lot of back and forth that included Judge Comstock. I just

think this needs to stop because it's an unusual case with unusual parties and unusual counsel and perhaps this is one where other than asking for setting a hearing, everything else needs to be on the record to avoid this happening again.

THE COURT: Okay.

MS. CANTRELL: These emails with the order on the severance, I'm not sure who initiated those but it certainly wasn't me. I mean, but we have discussed this over and over at the last hearing.

THE COURT: Well no, no because the Court can discuss procedural issues with lawyers, but when -- but that is such a -- you know, when you talk about procedure versus giving legal advice, I think there is a lot of overlap there. And here, you know, you guys are seasoned lawyers. You guys know the procedures. There's no reason why you need to be visiting with us over -- about anything other than scheduling hearings. So, I think it's very fair that Ms. Pacheco request that we limit our all-communication.

MS. CANTRELL: Yes, Your Honor, I agree. We did that already. I'm not sure what it is that made her bring it up again.

THE COURT: I don't even see these emails. I don't know. But if there is something that goes

beyond the bounds of simply setting hearings then --

MS. PACHECO: There's a discussion of pulling down certain hearings, we're going to go in a different direction. All of that is beyond what should be communicated in emails. They're not part of the Court's record and yet she tries to admit them.

Again, I've never made this request, but I've never had a case quite like this. And I'm very appreciative that we can approach you on any normal case and ask reasonable questions with Counsel copied. This is just not that case.

MS. CANTRELL: But Counsel was copied on those emails and it was initiated --

MS. PACHECO: But it's a rally back and forth. It's an ex parte communication and then Counsel is forced to respond and your staff is then watching this volley back and what do you do with that thing? Do you show it to you? Does it go in the Court's file?

THE COURT: It doesn't get to me, but it does in a sense because if it gets to anyone of our staff it gets to me. I mean, it's deemed that I have viewed it, okay. And so because they are an extension. The staff is, of course, an extension of me.

And, you know, the truth is, I view those emails as ex parte even though it copies Counsel. It's

still an ex parte communication, and this is why: Because it does force the other side to have to respond. It does bring the other side into like almost a secret hearing in a way. I mean, you're putting information out there or questions out there and forcing the other party in to respond. I don't know what else to say except that if someone makes a request that we limit receipts of emails and communication by email and phone to scheduling hearings. I think that's a reasonable request and especially because you guys can call up any time and set a hearing, and you'll have it, you know. I mean, it's not like I'm not here, you know.

MS. CANTRELL: I'm just confused about what it is Ms. Pacheco is concerned about if it was --

MS. PACHECO: I don't want to have a discussion of the substance of all emails. I think everybody's aware, probably not you because you haven't seen them, of what's been going on. I just think it needs to stop.

And again, she, just like the offering of this email today, some emails that are going to happen to show up in the mandamus - it doesn't matter the substance. I'm not complaining anything's improper at this point - I just think in the future on an on-going basis, to avoid future issues, that I would ask the

Court to direct all counsel, us included, to limit our contacts with this Court to requesting hearings which I think is the conservative and appropriate means to communicate with the Court because I do want a record any time Ms. Cantrell communicates with this Court.

THE COURT: Okay. So, just I guess going forward, all communication needs to be with setting hearings only and --

MS. CANTRELL: I agree, Your Honor. I think you made that clear to us last time.

THE COURT: Okay. Ms. Pacheco, do you want to sign this?

MS. PACHECO: I apologize. Thank you.

THE COURT: Thank you.

MS. PACHECO: May I be dismissed?

THE COURT: Yes.

MS. PACHECO: Thank you.

* * * * *

The State of Texas          )

County  of  Harris          )


        I, Hipolita Lopez, Official Court Reporter in and for the Probate Court Number Four of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record truly and correctly reflects the exhibits, if any, admitted by the respective parties.

        I further certify that the total cost for the preparation of this Reporter's Record is $288.00 and was paid by Cantrell & Cantrell

        WITNESS MY OFFICIAL HAND this the 19th day of May, 2015.


                        /s/ Hipolita G. Lopez
                        HIPOLITA G. LOPEZ, Texas CSR #6298
                        Expiration Date:  12-31-16
                        Official Court Reporter
                        Probate Court Number Four
                        Harris County, Texas
                        201 Caroline, 7th Fl.
                        Houston, Texas 77002

HIPOLITA G. LOPEZ, CERTIFIED SHORTHAND REPORTER

PROBATE COURT 4

## No. 425,576-401

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DANIEL STEVEN WEINER | § | NO. 4 |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## PLEA TO THE JURISDICTION

Daniel Warren files this Plea to the Jurisdiction in response to Andy Weiner's Counter and Cross-Petition.

### SUMMARY OF THE ARGUMENT

1. Daniel Warren asks the Court to dismiss Andy Weiner's Counter and Cross-Petition because it was filed *after* Daniel Warren nonsuited all of his claims and the court lacks jurisdiction to rule on it under the holding of *Greenberg v. Brookshire,* 640 S.W.2d 870 (Tex. 1982).

### BACKGROUND

2. Daniel Warren is the sole beneficiary of the Daniel Steven Weiner 1996 Trust (the "Trust"). The Trust was created on March 20, 1996 by Andy I. Weiner and Katherine R. Warren (formerly Katherine F. Weiner), who are also the co-trustees.

3. On April 22, 2014, Daniel Warren filed a Plea in Intervention in Cause No. 425,577, In Re David Abraham Weiner 1994 Trust, suing Andy Weiner for breach of fiduciary duty for borrowing substantially all of the Trust assets for Andy Weiner's own personal use, commingling the Trust assets with Andy's personal funds, failing to prudently invest the Trust assets, and failing to render an accounting upon Daniel's request.

4. On July 8, 2014 Andy Weiner asserted various affirmative defenses, including that his

1

EXHIBIT

TAB F

exhibitsticker.com

"actions were justified, excused and/or authorized by the terms of the Daniel Steven Weiner 1996 Trust" and "Ambiguity." [See attached **Exhibit A**]

5.     On October 24, 2014 Andy Weiner filed a Second Amended Cross-Claim against Katherine Warren in Cause No. 425,577 seeking to hold Katherine responsible for any damages, actions, inactions, and violations of the Trust Agreement, breach of her fiduciary duty, removal, tortious interference with Andy's ability to properly administer the Trust, and reimbursement of Andy's legal fees in defending the lawsuit.

6.     On November 17, 2014 the Court severed Daniel Warren's suit against Andy Weiner into a separate Cause No. 425,576-401, and ordered 24 docket entries to be moved to the new case. [See attached **Exhibit B**]  The Cross-Claim was not moved and remained in Cause No. 425,577.

7.     Pursuant to the November 17, 2014 Order, Daniel Warren filed an Original Petition in this Cause No. 425,576-401 on December 1, 2014 asserting the same claims as in his Plea in Intervention filed in Cause No. 425,577. The Original Petition named Andy Weiner and Katherine Warren as parties, but expressly stated that his Notice of Nonsuit against Ms. Warren applies to this Cause No. 425,576-401.

8.      On February 10, 2015, Daniel challenged Andy Weiner's Answer and Supplemental Answer by Special Exceptions. After a hearing on the matter on February 17, 2015, the Court ordered Andy Weiner to replead nine (9) of his thirteen (13) defenses by March 17, 2015. Andy Weiner failed to do so.

9.    On March 10, 2015, Daniel Warren nonsuited all of his claims in this case and on March 16, 2015 the Court dismissed Daniel Warren without prejudice. [See attached **Exhibit C**].

10.   On March 24, 2015, two weeks *after* Daniel Warren nonsuited his claims, Andy Weiner

filed a Counter and Cross-Petition against Daniel and Katherine, attempting to join them as parties to the nonsuited case.

## ARGUMENT & AUTHORITIES

11.   Daniel Warren asks the Court to dismiss Andy Weiner's Counter and Cross-Petition for the following reasons:

12.   Daniel Warren had an absolute right to nonsuit all of his claims on March 10, 2015 and be dismissed from the case as long as it does not "prejudice the right of an adverse party to be heard on a *pending* claim for affirmative relief." (emphasis added) [TRCP 96, 162].

13. The right to nonsuit should be liberally construed in favor of the nonsuiting plaintiff. [*Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982)].

14.   When the defendant has no pending claims for affirmative relief, the plaintiff's nonsuit renders the merits of the underlying case moot and dismisses the entire case. A trial court may not rule on a counter or cross claim filed after a nonsuit. [*Greenberg,* 640 S.W.2d at 871].

15.    Andy Weiner's failure to replead the nine (9) affirmative defenses as ordered by the Court left Andy's only defenses as 1) that Daniel is not entitled to attorney fees, 2) Daniel lacks standing, legal authority or capacity to sue, 3) Daniel's claims are barred by the statute of limitations, and 4) Daniel's claims are barred because he has no legal or equitable basis for recovery. [See attached **Exhibit D**]. These are not claims for affirmative relief under TRCP 162.

16.   Since Daniel has dropped all his claims, both the claims and the defenses in this case are moot.  A trial court has no jurisdiction to rule on a moot controversy. [*Klein v. Hernandez*,

3

315 S.W.3d 1, 3 (Tex. 2010; *Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 209 (Tex. App.—Houston [14th Dist.] 2014, *pet. pending on other grounds*)].

17. In *Greenberg v. Brookshire*, the wife filed a counterclaim against her husband two days after he nonsuited his divorce case against her. Over the husband's objections, the trial judge held a hearing on the wife's counterclaim and entered an order pertaining to it. In a proceeding for mandamus relief, the Texas Supreme Court held that the trial judge should not have proceeded with the hearing on the counterclaim and directed him to withdraw his order pertaining to it. [*Greenberg v. Brookshire*, 640 S.W.2d 870 (Tex. 1982)].

18. When a plaintiff files a nonsuit, the trial court loses jurisdiction of the entire case, except jurisdiction to render the order of dismissal without prejudice, which this Court has done. [*Ault v. Mulanax*, 724 S.W.2d 824, 828 (Tex. App.—Texarkana 1986, *orig. proceeding*), also citing *Greenberg v. Brookshire*].

19. Similarly, in *Ault v. Mulanax* the defendant filed a cross-action against the plaintiff *after* she had nonsuited all of her claims. The appeal court held that the trial court lost jurisdiction of the entire case immediately upon the filing of the plaintiff's nonsuit, except jurisdiction to render the order of dismissal without prejudice. [*Ault*, 724 S.W.2d at 829].

20. Just as in *Greenberg* and *Ault*, when Daniel nonsuited this case, there were no pending claims for affirmative relief filed by any party. As such, the trial court's only recourse is to dismiss the entire case without prejudice, as the Court has done.

21. Andy Weiner's cross-claims against Katherine Warren have no impact on this case. They were filed only in Cause No. 425,577, a separate cause of action. Nor do Andy Weiner's Counter and Cross-Petition have any impact on this case because they were filed

4

*after* Daniel nonsuited his entire case. According, Daniel had an absolute right to dismiss his entire case under the holding of *Greenberg v. Brookshire*.

22.   A trial court cannot deny a litigant's right to nonsuit his case when affirmative relief is not sought by an adverse party *before* the nonsuit. [*Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex. 1982)]. Andy Weiner had no claims for affirmative relief pending at the time of Daniel's nonsuit.

23.   Accordingly, the Court should dismiss this entire case and Andy Weiner's Counter and Cross-Petition as it was filed after Daniel nonsuited his entire case.

### RELIEF REQUESTED

24.   For these reasons, Daniel Warren asks the Court to set this Plea to the Jurisdiction for a hearing and sign an order dismissing Andy Weiner's Counter and Cross-Petition and this entire case for lack of jurisdiction.

Respectfully submitted,
CANTRELL & CANTRELL, PLLC

By: /s/ Carol A. Cantrell
Carol A. Cantrell, Attorney for Daniel Warren
State Bar No.:  24043592
Meredith N. McIver
State Bar No.: 24078974
Cantrell & Cantrell, PLLC
3700 Buffalo Speedway, Suite 520
Houston, Texas  77098
Telephone:  (713) 333-0555
Facsimile:  (713) 333-0550
ccantrell@cctaxlaw.com

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been duly served by electronic delivery and facsimile on all parties and counsel of record indicated below, on April 17, 2015.


Sarah Patel Pacheco
Kathleen Tanner Beduze
Crain Caton & James
Five Houston Center,
1401 McKinney, 17th Floor
Houston, TX 77010
pacheco-efile@craincaton.com
713-658-1921 (facsimile)
ATTORNEY FOR ANDY WEINER

Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, TX 77010
tom@lawcl.com
713-654-8115 (facsimile)
ATTORNEY FOR KATHERINE R. WARREN


/s/  Carol Cantrell

CAROL A. CANTRELL

NO. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## ANSWER TO PETITION FOR TERMINATION OF TRUST

TO THE HONORABLE JUDGE OF SAID COURT:

Andy Weiner ("Mr. Weiner"), co-trustee of the David Abraham Weiner 1994 Trust ("Trust"), files this Answer to Original Petition for Termination of Trust filed by Katherine F. Warren ("Ms. Warren") and David A. Weiner k/n/a David W. Warren ("David"), and in support thereof respectfully shows the following:

### I.
### Overview

1.     The Original Petition for Termination of Trust ("Petition") is just another sad stage in Ms. Warren's systematic plan to exclude Mr. Weiner from his son's life. Mr. Weiner and Ms. Warren are currently parties to a family court proceeding that arises from Ms. Warren's failure to comply with the terms of the Trust and a Judgment entered by the Family Court in their divorce, pending in the 309th Judicial District Court of Harris County, Texas.

2.     The Petition filed in this Court seeks to gain complete control of funds gifted by Mr. Weiner's parents to the Trust established by both Mr. Weiner and Ms. Warren prior to their divorce. It cites no credible or legal basis to remove Mr. Weiner and/or terminate the Trust by distributing said funds either free of trust to David or into a Uniform Transfers to Minors Act account only Ms. Warren would control. And, while Mr. Weiner has historically attempted to accommodate Ms. Warren's various requests, he is unwilling to risk funds needed for David's

EXHIBIT

A

exhibitsticker.com

092865/000001
376 - 942296v1

future education or sanction her ignoring provisions of a Judgment entered by the Family Court in their divorce.

3. Neither Mr. Weiner nor the named successor trustee is disqualified to serve as a trustee of the Trust. Mr. Weiner has never mishandled the Trust, has never harbored any hostility towards David and has always acted in a prudent manner -- even under the most difficult of circumstances created by Ms. Warren. Mr. Weiner has done so because he recognizes that David and the Trust both need protection.

## II.
## Background

4. On December 13, 1994, Mr. Weiner and Ms. Warren established the Trust for the benefit of their then-minor son, David. The irrevocable trust agreement provides that David is the primary beneficiary and Mr. Weiner and Ms. Warren are the original co-trustees. In the event they are not able to serve, the trust agreement provides that Bayle Weiner Drubel shall serve as successor trustee.

5. Mr. Weiner's parents, David's grandparents, funded the Trust with the desire to provide for their grandson's education.

6. After David's grandparents' generous gifts, Ms. Warren systematically excluded Mr. Weiner and his family from David and his siblings' lives. By way of example, Ms. Warren facilitated in David changing his last name from his father's (Weiner) to a name with no family significance shortly after David's eighteenth birthday. And, Ms. Warren routinely belittled Mr. Weiner, his mother and his sisters in front of his sons, including David.

7. Ms. Warren filed for divorce and, pursuant to an Agreed Decree of Divorce ("Divorce Decree") entered into by the 309th Judicial District Court of Harris County, Texas in Cause No.

2

092865/00000!
376-942296v1

2011-01040 (the "Family Court Proceeding"), Mr. Weiner and Ms. Warren were divorced on March 29, 2012. *See* Exhibit C to Ms. Warren's Petition.

8.    The Divorce Decree addresses the Trust at issue in this case. Specifically, the Divorce Decree provides:

> IT IS ORDERED that the following children's trusts are held in irrevocable trusts, which shall continue as written, and that each party will take any and all necessary steps to provide full co-trustee ownership and control of each such account including the placing of such accounts in a deposit and withdrawal agreement requiring both co-trustees to disburse funds; also known as an "and" account:
>
> 1.    Fidelity Trust Acct Ending in #8634 (David);
>
> 2.    Fidelity Trust Acct Ending in #3958 (Daniel); and
>
> 3.    Fidelity Trust Acct Ending in #1942 (Michael).

*See* Exhibit C to Ms. Warren's Petition, page 10.

9.    Subsequent to the parties' divorce, Ms. Warren has continued her efforts to alienate their children and has failed to comply with the terms of the Divorce Decree. For example, Ms. Warren has refused to provide a simple invoice to confirm an alleged significant tuition payment for David, who started his freshman year at Rice University this fall. Instead, she acknowledges in her affidavit that she wired trust funds without Mr. Weiner's required permission and consent.

10.   The Petition seeks an order from this Court to either distribute the Trust funds to David free of trust or, alternatively, to award Ms. Warren sole and exclusive control over a new account (a Uniform Transfers to Minors Act account created for David's benefit), even though the Trust agreement and the Divorce Decree provide otherwise.

092865/000001
376-942296v1

### III.
### Answer to Petition for Termination of Trust

11.     Mr. Weiner incorporates by reference the allegations contained within the preceding Paragraphs 1 through 10.

#### A.     General Denial

12.     Mr. Weiner asserts a general denial, as authorized by Rule 92 of the Texas Rules of Civil Procedure, to each and every, all and singular, allegation contained in the Petition and respectfully requests that this Court and jury require Plaintiffs to prove their claims, charges, and allegations by a preponderance of the evidence, as required by the Constitution and the laws of the State of Texas.

13.     Mr. Weiner respectfully reserves the right to file an amended answer in this cause in the manner authorized by the Texas Rules of Civil Procedure.

#### B.     Affirmative Defenses

14.     Pleading further and without waiving the foregoing, Plaintiffs' claims are barred in whole or in part, by the doctrine of res judicata.

15.     Pleading further and without waiving the foregoing, Plaintiffs' claims are barred in whole or in part, by the doctrine of estoppel, including collateral estoppel.

16.     Pleading further and without waiving the foregoing, Plaintiffs' claims are barred in whole or in part, by the doctrine of unclean hands.

17.     Pleading further and without waiving the foregoing, Plaintiffs' claims are barred in whole or in part, by the terms of the Trust.

18.     Pleading further and without waiving the foregoing, Plaintiffs are not entitled to attorneys' fees under Section 114.064 of the Texas Trust Code or otherwise.

4

## IV.
## Request for Jury Trial

19.    Pleading further, and without waiving the foregoing, Mr. Weiner demands a trial by jury and hereby tenders payment.

## V.
## Request for Disclosure

20.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are each requested to disclose, within 30 days of service of this request, the information or material described in Rule 194.2(a) - (i).

WHEREFORE, Mr. Andy Weiner respectfully requests that Plaintiffs recover nothing by their suit, and for such other and further relief as to which he may show himself justly entitled to receive.

Respectfully submitted,

CRAIN, CATON & JAMES,
A PROFESSIONAL CORPORATION

By: _____
SARAH PATEL PACHECO
(TBA # 00788164)
KATHLEEN TANNER BEDUZE
(TBA # 24052205)
1401 McKinney, 17th Floor
Houston, Texas 77010
(713) 658-2323
(713) 658-1921 (Facsimile)

Attorneys for Andy Weiner

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to:

Carol A. Cantrell
Meredith N. McIver
Cantrell & Cowan, PLLC
3700 Buffalo Speedway, Suite 520
Houston, Texas 77098
Facsimile: (713) 333-0550

by facsimile and/or certified mail, return receipt requested, on the 23rd day of October, 2013.

SARAH PATEL PACHECO

6

092865/000001
376 - 942296v1

FILED
7/8/2014 3:34:04 PM
Stan Stanart
County Clerk
Harris County

NO. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## FIRST SUPPLEMENT TO ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Andy Weiner ("Mr. Weiner"), co-trustee of the David Abraham Weiner 1994 Trust, files his First Supplement to Original Answer in response to Petitioner David W. Warren f/k/a David A. Weiner's ("Petitioner") Second Amended Original Petition and Intervenor Daniel Steven Weiner's ("Intervenor") Original Petition in Intervention and, in support thereof, respectfully shows the following:

## I.
## VERIFIED DENIAL

1. Intervenor does not have standing, lacks the legal authority, or lacks capacity to sue and is not entitled to recover in the capacity in which he has sued.

## II.
## SUPPLEMENTAL AFFIRMATIVE DEFENSE

2. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, because Mr. Weiner's actions were justified, excused and/or authorized by the terms of the David Abraham Weiner 1994 Trust.

3. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, based on the equities.

4. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, because of ambiguity.

092865/000002
376 - 1096417v1

5. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, by the statute of limitations.

6. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, by the doctrine of comparative fault.

7. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, by the doctrine of contributory negligence.

8. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, because there is no legal or equitable basis for recovery.

9. Pleading further and without waiving the foregoing, Petitioner's and Intervenor's claims are barred, in whole or in part, by Katherine Warren f/n/a Katherine Friedman Weiner.

10. Pleading further and without waiving the foregoing, Intervenor's claims and/or defenses are barred, in whole or in part, because of lack of standing and/or because he lacks a judiciable interest in the David Abraham Weiner 1994 Trust.

### III.
### SUPPLEMENTAL PRAYER

11. In addition to the relief sought in Mr. Weiner's Original Answer to Petition to Terminate Trust, Mr. Weiner prays that Petitioner David W. Warren f/k/a David A. Weiner takes nothing by his Second Amended Original Petition and Intervenor Daniel Steven Weiner likewise takes nothing by his Original Petition in Intervention, and for such other and further relief as to which he may show himself justly entitled to receive.

2

Respectfully submitted,

**CRAIN, CATON & JAMES,**
**A PROFESSIONAL CORPORATION**


By: /s/ Kathleen Tanner Beduze
SARAH PATEL PACHECO
(TBA # 00788164)
KATHLEEN TANNER BEDUZE
(TBA # 24052205)
1401 McKinney, 17th Floor
Houston, Texas 77010
(713) 658-2323
(713) 658-1921 (Facsimile)

*Attorneys for Andy Weiner*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to:

Carol A. Cantrell / Meredith N. McIver
Cantrell & Cowan, PLLC
3700 Buffalo Speedway, Suite 520
Houston, Texas 77098
Facsimile: (713) 333-0550

Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, Texas 77010
Facsimile: (713) 654-8115

by e-file, facsimile and/or certified mail, return receipt requested, on the 8th day of July, 2014.


/s/ Kathleen Tanner Beduze
KATHLEEN TANNER BEDUZE

092865/000002
376 - 1096417v1

## VERIFICATION

STATE OF TEXAS       §

                              §

COUNTY OF HARRIS      §

BEFORE ME, the undersigned authority, on this day personally appeared Andy I. Weiner who, after being sworn, stated under oath that he is the person whose signature appears on this document. The affiant has read the foregoing First Supplement to Original Answer and he verifies that the information contained therein is true and correct based upon his personal knowledge.

_____
Andy I. Weiner, as Co-Trustee of the David Abraham Weiner 1994 Trust

Subscribed and sworn to before me on this __8__ day of July, 2014.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

CRYSTLE RICHARD COMBS
Notary Public, State of Texas
My Commission Expires
May 08, 2017

4

Error! Unknown document property name.

No. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NO. 4 |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## AMENDED ORDER ON MOTION TO SEVER

On this date, the Court having considered Daniel W. Warren's Motion to Sever and the Court's written and verbal Orders on August 27-28, 2014, GRANTS the Motion to Sever as follows. It is hereby:

ORDERED that Daniel W. Warren shall restate the claims set forth in his Motion to Sever as a new Original Petition by December 1, 2014 and complete service pursuant to the rules that would apply to a new lawsuit. It is further,

ORDERED that the Court Clerk assign Cause No. 425,576-401 to Daniel W. Warren's new Original Petition. It is further,

ORDERED that Daniel W. Warren file all future pleadings, motions, and other papers under Cause No. 425,576-401 as Petitioner rather than Intervenor. It is further,

ORDERED that all prior discovery, orders, motions, responses and answers pertaining to Daniel W. Warren in Cause No. 425,577 shall apply in the same manner as if such had occurred in Cause No. 425,576-401, and that the Clerk of this Court is hereby directed to transfer and file copies of the following pleadings and orders from Cause No. 425,577 to Cause No. 425,576-401:

1. Daniel W. Warren's Original Petition in Intervention; docket entry date 4-22-14

2. Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-15-14

3. Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-5-14

4. Notice of Submission of Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-5-14

5. Petitioners' Notice of Nonsuit Against Katherine Warren (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-7-14

EXHIBIT

B

exhibitsticker.com

6.	Andy Weiner's Motion to Compel Depositions (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

7.	Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-1-14

8.	Motion for Continuance of Hearing on Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

9.	Petitioners' Response to Andy Weiner's Motion to Compel (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-18-14

10.	Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-22-14

11.	Petitioners' Response to Andy Weiner's Motion for Continuance (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

12.	Petitioners' Response to Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

13.	Order Granting Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-29-14

14.	Order Denying Motion for Sanctions; docket entry date 8-29-14

15.	Order Partially Granting and Partially Denying Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-4-14

16.	Daniel W. Warren's Motion to Sever; docket entry date 9-8-14

17.	Order Partially Granting and Partially Denying Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-26-14

18.	Order Granting Motion to Sever;  signed 11-5-14

19.	Court's Docket Sheet; docket entry date 8-29-14

20.	Andy Weiner's First Supplement To Original Answer; docket entry date 7-8-14

21.	Petitioner's Response to Andy Weiner's Motion for Partial Traditional Summary Judgment; docket entry date 8-5-14;

22.	Petitioner's Application to Quash Deposition of Daniel Warren; docket entry date 8-11-14;

23.	Order to Compel Depositions Granted; docket entry date 8-29-14; and

24.	Petitioner's Responses to Andy Weiner's Special Exceptions to Petition in

Intervention and Motion for Sanctions; docket entry date 8-19-14.

It is further,

ORDERED that Cause No. 425,576-401 is subject to the deadlines set out in the Agreed Docket Control Order dated August 27, 2014 relating to Cause No. 425,577.  It is further,

ORDERED that all costs related to the copying, transfer, and filing of items 1 through 24 herein be assessed against Daniel Warren.  It is further,

ORDERED that if Daniel W. Warren fails to file a new Original Petition by the 1st day of December, 2014 as Cause No. 425,576-401, his pleading in Cause No. 425,577 will be dismissed.

SIGNED on this 17 day of November , 2014.

_Christine Butts_

PRESIDING JUDGE

425,576-401

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DANIEL STEVEN WEINER | § | NO. 4 |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |
| | § | |

## ORDER GRANTING PETITIONER'S NONSUIT AND DISMISSAL

The Court GRANTS Petitioner Daniel Warren's Notice of Nonsuit without prejudice and dismisses his claims against Respondent Andy Weiner without prejudice.

Signed ___March 16___, 2015

_Christine Butts_ _____
JUDGE CHRISTINE BUTTS
HARRIS COUNTY PROBATE COURT FOUR

EXHIBIT

C

exhibitsticker.com

No. 425,576-401

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DANIEL STEVEN WEINER | § | NO. 4 |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## ORDER ON DANIEL WARREN'S SPECIAL EXCEPTIONS TO ANDY WEINER'S ANSWER AND FIRST SUPPLEMENT TO ORIGINAL ANSWER

After considering Daniel W. Warren's Special Exceptions to Andy Weiner's Answer and First Supplement to Original Answer, the pleadings, response, reply, affidavits, and other evidence on file, the Court finds that Daniel Warren's Special Exceptions should be GRANTED and Andy Weiner should replead the following affirmative defenses and cure their defects as follows: ^by March 17, 2015

1. Paragraph 14 of Andy Weiner's Answer, which reads: "Plaintiffs' claims are barred, in whole or in part, by the doctrine of res judicata"

   ____X____ Granted _____ Denied

2. Paragraph 15, of Andy Weiner's Answer, which reads: "Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including collateral estoppel"

   ____X____ Granted _____ Denied

3. Paragraph 16 of Andy Weiner's Answer, which reads: "Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands"

   ____X____ Granted _____ Denied

4. Paragraph 17 of Andy Weiner's Answer, which reads: "Plaintiffs' claims are barred in whole or in part, by the terms of the trust"

   ____X____ Granted _____ Denied

5. Paragraph 18, of Andy Weiner's Answer, which reads: "Plaintiffs' are not entitled to attorney's fees under Section 114.064 of the Texas Trust Code or otherwise"

   _____ Granted ____X____ Denied

EXHIBIT

D

exhibitsticker.com

6. Paragraph 1 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner "does not have standing, lacks the legal authority, or lacks capacity to sue and is not entitled to recover in the capacity in which he has sued"

_____ Granted ____X_____ Denied

7. Paragraph 3 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, based on the equities"

____X_____ Granted _____ Denied

8. Paragraph 4 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, because of ambiguity"

____X_____ Granted _____ Denied

9. Paragraph 5 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, by the statute of limitations"

_____ Granted ____X_____ Denied

10. Paragraph 6 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, by the doctrine of comparative fault"

____X_____ Granted _____ Denied

11. Paragraph 7 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, by the doctrine of contributory negligence"

____X_____ Granted _____ Denied

12. Paragraph 8 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, because there is no legal or equitable basis for recovery"

_____ Granted ____X_____ Denied

13. Paragraph 9 of Andy Weiner's First Supplement to Original Answer, which states that Petitioner's "claims are barred, in whole or in part, by Katherine Warren f/n/a Katherine Friedman Weiner"

____X_____ Granted _____ Denied

SIGNED on February 17, 2015.

_Christine Power_

PRESIDING JUDGE

NO. 425,576-401

PROBATE COURT 4

| | | |
|---|---|---|
| IN RE: | § | IN PROBATE COURT |
| | § | |
| DANIEL STEVEN WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## ANDY WEINER'S RESPONSE TO PLEA TO THE JURISDICTION

TO THE HONORABLE JUDGE OF SAID COURT:

Andy Weiner ("Mr. Weiner"), as co-trustee of the Daniel Steven Weiner 1996 Trust, files his Response to Plea to the Jurisdiction filed by Daniel Warren f/k/a Daniel Steven Weiner ("Daniel"), and in support thereof, respectfully shows the following:

## I.
## OVERVIEW

1. Notwithstanding Daniel's assertions to the contrary, Mr. Weiner's claims against Katherine Warren f/k/a Katherine Weiner ("Ms. Warren") were properly on file when Daniel filed his nonsuit. But, regardless, Mr. Weiner has an absolute right to initiate a new lawsuit to resolve the construction and other issues pled in his Counter and Cross-Petition properly filed in the above-referenced proceeding in accordance with Local Rule 2.2. Therefore, this Court should retain the above-referenced lawsuit on its docket and deny Daniel's Plea to the Jurisdiction.

## II.
## FACTUAL BACKGROUND

2. On March 20, 1996, Mr. Weiner and Ms. Warren established the Daniel Steven Weiner 1996 Trust (the "Trust") for the benefit of their then-minor son, Daniel. The irrevocable trust agreement provides that Daniel is the primary beneficiary and Mr. Weiner and Ms. Warren are

EXHIBIT

TAB F-1

exhibitsticker.com

092865/000001
376 - 1495732v1

the original co-trustees. In the event they are not able to serve, the trust agreement provides that Bayle Weiner Drubel shall serve as successor trustee.

3. Mr. Weiner's parents, Daniel's grandparents, primarily funded the Trust with the desire to provide for Daniel's education.

4. After Daniel's grandparents' generous gifts, Ms. Warren systematically excluded Mr. Weiner and his family from Daniel's life, as well as the lives of his brothers, David and Michael. By way of example, Ms. Warren likely facilitated the process of Daniel changing his last name from his father's (Weiner) to a name with no family significance on his eighteenth birthday. And, in 2011, Ms. Warren deceitfully made ulterior plans to celebrate Daniel's birthday to purposefully exclude Mr. Weiner. Further, Ms. Warren routinely belittled Mr. Weiner, his mother and his sisters in front of his sons.

5. On January 6, 2011, Ms. Warren filed for divorce from Mr. Weiner. Pursuant to an Agreed Decree of Divorce ("Divorce Decree") entered into by the 309th Judicial District Court of Harris County, Texas in Cause No. 2011-01040 (the "Family Court Proceeding" or "Family Court"), Mr. Weiner and Ms. Warren were divorced on March 29, 2012.

6. Subsequent to the parties' divorce, Ms. Warren has continued her efforts to alienate their children and has failed to comply with the terms of the Divorce Decree.

7. On September 30, 2013, Ms. Warren, as co-trustee of the Trust, filed a lawsuit[1] against Mr. Weiner, seeking an order from this Court to terminate the Trust and for the Trust funds to be distributed to a Uniform Transfers to Minors Act account created for Daniel's benefit over which Ms. Warren would have sole control, even though the Trust agreement and the Divorce Decree provide otherwise. *See Original Petition*, attached hereto, without exhibits, as Exhibit A and incorporated by this reference.

---

[1] Cause No. 425,576; *In re: Daniel Steven Weiner 1996 Trust*, In Probate Court No. 4 of Harris County, Texas.

2

8. On October 23, 2013, Mr. Weiner filed a Plea to the Jurisdiction in Cause No. 425576, alleging that the District Court had jurisdiction over the claims brought by Daniel because they related to the Family Court Proceeding.

9. On November 4, 2013, Ms. Warren, as next friend of Daniel, filed a First Amended Original Petition in Cause No. 425,576 in which she requests for the Trust to be modified to allow Daniel to become his own trustee upon reaching the age of 18. *See First Amended Petition*, attached hereto, without exhibits, as Exhibit B and incorporated by this reference.

10. On November 21, 2013, the Probate Court granted Mr. Weiner's Plea to the Jurisdiction in Cause No. 425576.

11. On April 22, 2014, Daniel filed an Original Petition in Intervention in his older brother David Weiner's proceeding against Mr. Weiner.[2] *See Original Petition in Intervention*, attached hereto, without exhibits, as Exhibit C and incorporated by this reference.

12. On July 2, 2014, Mr. Weiner filed his Cross-Claims against Ms. Warren in Cause No. 425,577 (where Daniel was an Intervenor), seeking to hold Ms. Warren equally responsible for (1) all actions and alleged inactions of the trustees, (2) all claimed damages and relief sought by David and Daniel, (3) all violations of the Trust agreements, including any scheme of collusion, (4) the preparation of an accounting, and (5) payment of one-half of Mr. Weiner's attorneys' fees and costs. *See Cross-Claims*, attached hereto, without exhibits, as Exhibit D and incorporated by this reference.

13. On July 8, 2014, Mr. Weiner filed his First Supplement to Original Answer, alleging, among other claims and defenses, that Daniel has no standing to intervene in David's case. *See*

---

[2] Cause No. 425,577, *In re: David Abraham Weiner 1994 Trust*, In Probate Court No. Four (4) of Harris County, Texas ("David's Case").

092865/000001
376 - 1495732v1

*First Supplement to Original Answer*, attached hereto, without exhibits, as Exhibit E and incorporated by this reference.

14.    On July 15, 2014, Mr. Weiner filed his Motion for Partial Traditional Summary Judgment.

15.    On August 7, 2014, Mr. Weiner filed his First Supplement to Cross-Claims against Ms. Warren, incorporating, by reference, the cross-claims and factual background supporting same contained within his Motion for Partial Traditional Summary Judgment.

16.    Also on August 7, 2014, David and Daniel (as Intervenor in David's Case) nonsuited their claims against Ms. Warren in Cause No. 425,577.

17.    On September 8, 2014, pursuant to an order of this Court, Daniel filed a Motion to Sever in David's Case.

18.    On September 25, 2014, the Probate Court partially granted and partially denied Mr. Weiner's Motion for Partial Traditional Summary Judgment finding that, pursuant to the terms of David's Trust: (i) a trustee of the trust may retain, invest or reinvest in assets unproductive of interest and wasting assets, (ii) the diversification required under the Texas Trust Code and Texas common law, if any, does not apply to the Trust; (iii) Mr. Weiner and Ms. Warren had a duty to jointly administer the Trust; (iv) in order to delegate her powers or duties to Movant as co-trustee of the Trust, Ms. Warren must have filed a written instrument with the records of the Trust; and (v) Mr. Weiner has no liability relating to his actions as trustee other than for acts and omissions found to be made with gross negligence, bad faith or fraud.

19.    On October 24, 2014, Mr. Weiner filed his Second Amended Cross-Claims against Ms. Warren in Cause No. 425,577. *See Second Amended Cross-Claims*, attached hereto as Exhibit F and incorporated by this reference. As clearly expressed in the Second Amended Cross-Claims,

092865/000001
376 - 1495732v1

the cross-claims relate to the David Abraham Weiner 1994 Trust as well as Daniel's Trust because, at the time of filing, Daniel's intervention had not yet been severed into its own cause of action. Exhibit F ¶1.

20.    On November 5, 2014, Daniel's claims were severed into their own cause of action in the instant proceeding. An amended order, specifically identifying the pleadings and orders to be transferred into the new cause of action, was signed on November 17, 2014.[3]

21.    On December 1, 2014, Daniel, pursuant to this Court's order, filed his Original Petition in Cause No. 425,576-401.

22.    On March 10, 2015, Daniel nonsuited his claims against Mr. Weiner.

23.    On March 24, 2015, Mr. Weiner filed his Counter and Cross-Petition. *See Counter and Cross-Petition*, attached hereto, without exhibits, as Exhibit G and incorporated by this reference. In his Counter and Cross-Petition, Mr. Weiner (1) asked for the Court to construe the language of the Trust agreement; (2) alleged the following cross/counterclaims against Ms. Warren: breaches of fiduciary duty, reimbursement, removal as trustee, tortious interference with administration; and (3) requested the appointment of a corporate trustee. While no monetary claims were brought against Daniel, he was joined as a necessary party because he is the primary beneficiary of Daniel's Trust. *See* TEX. PROP. CODE § 115.011.

24.    On March 24, 2015, Mr. Weiner's counsel took Ms. Warren's court-ordered deposition. Ms. Cantrell attended that deposition.

25.    On April 2, 2015, Daniel, along with his brothers, David and Michael, jointly filed an Original Petition in the 133rd Judicial District of Harris County, Texas, Cause No. 2015-19320. *See Original Petition*, attached hereto, without exhibits, as Exhibit H and incorporated by this

---

[3] Due to an administrative error, Mr. Weiner's Second Amended Cross-Claims were inadvertently left off of the list of documents to be transferred to Cause No. 425,576-401.

5

reference. When the three related cases currently pending in Probate Court No. 4 of Harris County, Texas (Cause No. 425,576-401, Cause No. 425,577, and Cause No. 425,578) are compared to the District Court case, the parties and issues are the same.

26. On April 17, 2015, Daniel filed a Plea to the Jurisdiction in this Court, alleging that Mr. Weiner's cross-claims against Ms. Warren, pled in his Second Amended Cross Claims and his Counter and Cross-Petition, have "no impact on this case." Motion at ¶21. As further discussed below, Daniel's request for dismissal is misguided, as Mr. Weiner's affirmative claims against Ms. Warren were properly in front of this Court prior to the nonsuit being filed. But, regardless, Mr. Weiner had every right – and did – initiate cross and counter claims. Even if considered a new lawsuit, the Counter and Cross-Petition is validly before this Court and Mr. Weiner has properly and diligently sought to serve Daniel, in compliance with the Texas Rule of Civil Procedure.

27. On May 4, 2015, Mr. Weiner filed a Plea in Abatement and, subject thereto, Original Answer in Cause No. 2015-19320.

### III.
### ARGUMENT & AUTHORITY

28. Daniel's Plea to the Jurisdiction is his last ditch effort to have his case tried in the District Court, instead of this Court where he originally filed his claims against his father, Mr. Weiner.

29. Daniel's nonsuit nullifies the controversy by and between Daniel and Mr. Weiner; it does not affect any pending claims for relief made by Mr. Weiner. *In re Bennett*, 960 S.W. 35, 38 (Tex. 1997). A party has an absolute right to nonsuit their *own* claims, but not *someone else's* claims they are trying to avoid. *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) (emphasis in original).

30. So long as the plaintiff pleads enough facts to affirmatively demonstrate the trial court

6

has jurisdiction over the suit, a court's jurisdiction attaches upon filing a lawsuit. TEX. PROP. CODE § 115.001; *TDCJ v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). And, unless the pleadings demonstrate the absence of jurisdiction, the court will assume it has jurisdiction over the case. *Peek v. Equip. Serv.*, 779 S.W.2d 802, 804 (Tex. 1989); *Beacon Nat'l Ins. v. Montemayor*, 86 S.W.3d 260, 266 (Tex. App.—Austin 2002, no pet.). In the event this Court "lost" its jurisdiction upon Daniel's nonsuit – which Mr. Weiner vehemently disagrees – this Court gained jurisdiction upon the filing of Mr. Weiner's Cross and Counter-Petition.

31. Rule 162 of Texas Rule of Civil Procedure governs dismissal and nonsuits. Rule 162 provides that "[a]ny dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." TEX. R. CIV. P. 162. A claim for affirmative relief is one "on which the claimant could recover compensation or relief even if the plaintiff abandons his cause of action." *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz,* 195 S.W.3d 98, 101 (Tex. 2006); *BHP Petroleum Co., Inc. v. Millard,* 800 S.W.2d 838, 841 (Tex.1990).

32. Daniel falsely asserts that Mr. Weiner had no affirmative claims for relief pending at the time of Daniel's nonsuit. At the time of Daniel's nonsuit, Mr. Weiner had the following cross-claims, alleged in his Second Amended Cross-Claims, against Ms. Warren pending: (1) contribution, (2) breaches of fiduciary duty, (3) removal of trustee, (4) tortious interference with administration, and (5) attorneys' fees and costs. *See* Exhibit F. These are claims for affirmative relief under Rule 162 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 162; *BHP Pet. Co. v. Millard*, 800 S.W.2d 838, 840-41 (Tex. 1990) (defendant's request for declaratory judgment if it seeks resolution of continuing issues); *Leon Springs Gas Co. v. Restaurant Equip. Leasing Co.*, 961 S.W.2d 574, 578 (Tex. App—San Antonio 1997, no pet.); *Ulloa v. Davila*, 860 S.W.2d 202,

7

204 (Tex. App.—San Antonio 1993, no writ) (counterclaim did more than resist plaintiff's suit). These are independent claims for affirmative relief, not merely derivative claims. *In re Estate of Kidd*, 812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied).

33.     Further, in his Counter and Cross-Petition, filed prior to this Court signing Daniel's request for dismissal, Mr. Weiner alleged the following claims: (1) construction of the Trust Agreement, (2) breach of fiduciary duty, (3) reimbursement, (4) removal as trustee, (5) tortious interference with administration, and (6) petition to modify trust and request for appointment of a corporate trustee. *See* Exhibit G.

34.     Daniel relies upon *Greenberg v. Brookshire* and *Ault v. Mulanex* in support of his position that this lawsuit should be dismissed, despite Mr. Weiner's valid pending claims. *Greenberg v. Brookshire*, 640 S.W.2d 870 (Tex. 1982); *Ault v. Mulanex*, 724 S.W.2d 824 (Tex. App—Texarkana 1986, orig. proceeding).   However, these cases are readily distinguishable. *Greenberg* was a divorce action wherein the lower court conducted a hearing on an amended pleading after the husband nonsuited his claims.   Unlike the facts to the instant case, there were only two parties to the lawsuit – a husband and a wife – and the wife filed a counterclaim against her husband and requested a hearing on same *after* her husband filed a nonsuit.   The lower court conducted a hearing on the counterclaims, which the Texas Supreme Court held was in error, as a plaintiff has an absolute, unqualified right to a nonsuit. *Greenberg*, 640 S.W.2d at 872.   *Ault v. Mulanax* is another divorce proceeding, specifically involving custody and child support issues and; not relating, whatsoever, to the factual disputes at issue in the instant litigation. *Ault v. Mulanax*, 724 S.W.2d at 828.  Notwithstanding the factual differences, the *Ault* cases specifically related to and involved the imposition of the Texas Family Code. *Id.*  Furthermore, the legal issues in *Ault* were jurisdictional – which court had dominant jurisdiction at the time the nonsuit

8

was filed. *Id.* at 828. Like in *Greenberg*, the Texarkana Court of Appeal's ruling in *Ault* is not instructive to this Court, as the factual and legal matters at issue in *Ault* are grossly different and irrelevant to the case at hand.

35.     Regardless of the gamesmanship of Daniel and his mother, Ms. Warren, and their persistent litigious acts, Daniel's nonsuit does not summarily dismiss the affirmative claims brought by Mr. Weiner against Ms. Warren, which were filed *prior to* the nonsuit; Daniel cannot nonsuit Mr. Weiner's claims against Ms. Warren. *Tex. Mut. Ins. Co.*, 251 S.W.3d at 37.

**V.**
**CONCLUSION**

36.     Mr. Weiner's Second Amended Cross-Claims were properly on file prior to Daniel's Nonsuit. And, subsequent to Daniel's nonsuit, but prior to the entry of dismissal, Mr. Weiner's Cross and Counter-Petition was filed.

37.     While Daniel's nonsuit effectively eliminates the affirmative claims he had against Mr. Weiner, it does nothing with respect to the claims alleged by Mr. Weiner against Ms. Warren. This Court has jurisdiction over this case and the remaining claims between Mr. Weiner and Ms. Warren.

38.     Accordingly, it would be improper to dismiss this case, in its entirety, because of the remaining claims by Mr. Weiner against Ms. Warren.

WHEREFORE, Andy Weiner respectfully requests that this Court, after oral hearing, deny the Plea to the Jurisdiction filed by Daniel Warren f/k/a Daniel Steven Weiner, and for such other and further relief, either at law or in equity, to which he may be justly entitled.

9

Respectfully submitted,

**CRAIN, CATON & JAMES,
A PROFESSIONAL CORPORATION**

By: /s/ *Kathleen Tanner Beduze*

SARAH PATEL PACHECO
(TBA # 00788164)
spacheco@craincaton.com
KATHLEEN TANNER BEDUZE
(TBA # 24052205)
kbeduze@craincaton.com
1401 McKinney, 17th Floor
Houston, Texas 77010
(713) 658-2323
(713) 658-1921 (Facsimile)

*Attorneys for Andy Weiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to:

Carol A. Cantrell                    Thomas R. Conner
Cantrell & Cantrell, PLLC            Conner & Lindamood, P.C.
3700 Buffalo Speedway, Suite 520     1221 Lamar, Suite 1010
Houston, Texas 77098                 Houston, Texas 77010
Facsimile: (713) 333-0550            Facsimile: (713) 654-8115

by e-file, facsimile and/or certified mail, return receipt requested, on the 12th day of May, 2015.

/s/ *Kathleen Tanner Beduze*
KATHLEEN TANNER BEDUZE

10

No. **425576**

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| | § | NO._____ |
| DANIEL STEPHEN WEINER | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

RECEIVED 2013 SEP 30 PM 4:31

<u>ORIGINAL PETITION FOR TERMINATION OF TRUST</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Katherine F. Warren, co-trustee of the DANIEL STEPHEN WEINER 1996 TRUST (the "Trust"), Petitioner herein, and files this Original Petition for Termination of Trust, respectfully showing the Court as follows:

## PARTIES

1. Petitioner is an individual acting as co-trustee of the Trust. The situs of administration of the Trust is maintained in Houston, Harris County, Texas. Petitioner brings this action in her capacity as co-trustee of the Trust pursuant to Texas Trust Code § 111.004(7). A true and correct copy of the trust agreement is attached hereto as "Exhibit A" and is incorporated for all purposes.

2. Andy I. Weiner is an individual acting as co-trustee of the Trust. Andy I. Weiner is joined as a Respondent herein because he has an interest in this Trust under Texas Trust Code § 111.004(7) and is a necessary party pursuant to Texas Trust Code § 115.011(b)(4). Andy I. Weiner currently resides at 1200 Post Oak Blvd., Apartment 907, Houston, Texas 77056.

3. Daniel S. Weiner, ("Primary Beneficiary") has an interest in this proceeding pursuant to Texas Trust Code § 111.004(7) and is joined as Respondent herein because he is currently eligible, or potentially eligible to receive distributions of income and principal

1

EXHIBIT

TAB G

exhibitsticker.com

from the Trust. Pursuant to Texas Trust Code § 115.011(2) Daniel S. Weiner is a necessary party because he is the primary beneficiary named in the Trust. Daniel S. Weiner was born on March 11, 1996 and he currently resides at 1226 Muirfield Place, Houston, Harris County, Texas 77055. Petitioner requests to appear as next of friend on behalf of Daniel S. Weiner. Daniel S. Weiner is a minor, and Petitioner is his mother. In the divorce decree, attached as "Exhibit B," entered into by Katherine F. Warren and Andy I. Weiner in Cause Number 2011-01040 in the District Court of the 309th Judicial District in Harris County, Texas, Petitioner was awarded the exclusive right to represent her minor children in legal actions and to make decisions of substantial legal significance on behalf of her minor children. Texas Trust Code § 115.013(c)(3) permits a parent to represent her child as guardian ad litem or next of friend if there is no conflict of interest and no guardian of the estate or guardian ad litem has been appointed.

## JURISDICTION

4. This Court has jurisdiction to grant the relief requested in this petition pursuant to Texas Trust Code § 115.001(d)(1) and Texas Probate Code § 4G.

## VENUE

5. Venue of this proceeding is proper in this Court pursuant to Texas Trust Code § 115.002(b-2) and Texas Probate Code § 8.

## FACTS

6. The Trust is an inter vivos trust created under Internal Revenue Code § 2503(c) by Katherine F. Warren and Andy I. Weiner by agreement dated March 20, 1996 for the benefit of their son, the Primary Beneficiary.

2

7. At the present time, the only permissible beneficiary of the Trust is the Primary Beneficiary. The Trust is authorized under Section A-1 to make distributions to the Primary Beneficiary as follows:

During the term of the trust, the trustees may distribute as much or all of the Trust estate as, in the trustees' discretion, is in the Primary Beneficiary's best interests.

8. Pursuant to Section A-2 of the Trust, the Primary Beneficiary may withdraw all or part of the Trust estate within 60 days after becoming age 21, and may thereby terminate the trust as to the part withdrawn. If the Primary Beneficiary does not exercise his withdrawal right, the Trust continues until the Primary Beneficiary becomes age 30.

9. Section A-2 of the Trust provides that in the event the Primary Beneficiary should die before the Trust terminates, then all assets remaining in the Trust shall be held or distributed by the Trustee for the benefit of those in favor of whom the Primary Beneficiary exercises a power of appointment, or otherwise in the following order: (1) to the Primary Beneficiary's descendants, (2) if none of the descendants are then living, to the trustors' descendants, (3) if none of the trustors' descendants are then living, to the trustors' heirs.

10. Section C-1 Trust agreement provides that any distribution made to a beneficiary of the Trust may be made to a custodian for a minor beneficiary under the Uniform Gifts to Minors Act.

11. The trust had marketable securities and cash in the approximate value of $113,000 as of August 31, 2013.

3

12. The initial co-trustees of the Trust were Katherine A. Warren and Andy I. Weiner. Both of the initial co-trustees of the Trust remain the current co-trustees, and no other co-trustees have been appointed. In the event that Andy I. Weiner and Katherine F. Warren cease to act as trustee, Bayle Weiner Drubel, Andy I. Weiner's sister, is appointed successor trustee under Section D-1(a) of the Trust.

13. The co-trustees of the Trust are the parents of the Primary Beneficiary. Although the co-trustees were married at the time the Trust was created, they were granted a divorce on March 29, 2012. From the time that the divorce was finalized, the co-trustees have been unable to agree on proper administration of the Trust.

14. Pursuant to the divorce decree attached as "Exhibit B," the Court ruled that the Trust should be administered according to its terms. This requires the co-trustees to act jointly, which has proved detrimental to the best interests of the Primary Beneficiary and contrary to the purposes of the Trust.

15. Texas Trust Code § 112.054(a)(3) provides that on the petition of a trustee, a Court may order that the trustee be changed or that the Trust be terminated if modification of administrative, non-dispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the Trust's administration.

16. Texas Trust Code § 112.054(a)(2) provides that on the petition of a trustee, a Court may order that the trustee be changed or that the Trust be terminated if, because of circumstances not known to or anticipated by the trustors, termination or modification of the Trust will further the purposes of the Trust.

17. Petitioner claims that the inability of the co-trustees to agree on the appropriate administration of the Trust assets has impaired the Trust's administration. The purposes

4

of the Trust, to provide for the Primary Beneficiary, cannot be fulfilled if the co-trustees cannot agree regarding what actions constitute the "best interests" of the Primary Beneficiary. Additionally, the current circumstances, i.e. the divorce of the co-trustees, was not known to or anticipated by the trustors. Termination or modification of the Trust is necessary due to the disharmony between the Trust's co-trustees which prevents the co-trustees from administering the Trust in the best interests of the Primary Beneficiary.

## RELIEF REQUESTED

1. Petitioner requests that the Court order that the Trust be terminated and that the Trust estate be distributed to the Uniform Transfers to Minors Act account created for the benefit of the Daniel S. Weiner, Fidelity Account ending in #6843, over which Katherine F. Warren was awarded sole and exclusive control in the divorce decree attached as "Exhibit B"; that continued administration of the Trust would defeat or substantially impair the accomplishment of the Trust; that such circumstances were not known to or anticipated by the trustors upon creation of the Trust; that termination of the Trust will further the purposes of the Trust; that the Petitioner be awarded Court costs and expenses and legal fees from the Trust estate; that the remaining assets of the Trust, after payment of Court costs and expenses and legal fees, be distributed to the Fidelity Account ending in #6843; and that the Court enter such other orders as may be appropriate to provide for the delivery of all Trust assets from Katherine F. Warren and Andy I. Weiner to the Fidelity Account ending in #6843.

2. Petitioner alternatively requests that the Court order that the co-trustees be changed; that the Court appoint an independent corporate trustee; that replacing the co-trustees with an independent corporate trustee will further the purposes of the Trust; that modification of

5

the Trust is necessary or appropriate to prevent waste or avoid impairment of the Trust's administration; that the Petitioner be awarded Court costs and expenses and legal fees from the Trust estate; that the remaining assets of the Trust, after payment of Court costs and expenses and legal fees, be distributed to an independent corporate trustee; and that the Court enter such other orders as may be appropriate to provide for the delivery of all Trust assets from Katherine F. Warren and Andy I. Weiner to the independent corporate trustee.

3. After the hearing on this petition, if the Court terminates the Trust or appoints a corporate trustee in place of the current co-trustees, Katherine F. Warren will submit a final accounting that describes all of the actions she has taken as co-trustee of the Trust. In that event, Petitioner asks the Court to review the final accounting, and to enter an order approving the accounting and discharging Katherine F. Warren from any liabilities in connection with her actions as co-trustee of this Trust, including the termination.

4. Petitioner brings this action for the purpose of preserving and protecting the interests of the Trust and its Primary Beneficiary. The relief sought herein is necessary to enable the Trust to fulfill its purposes as created by the trustors. Accordingly, Petitioner is entitled to recover reasonable attorney's fees and court costs from the Trust pursuant to Texas Trust Code § 114.064. If any of the other parties to this proceeding retain counsel to represent their interests in this cause, including counsel appointed by this Court, the Court should determine whether all or any portion of the attorney's fees and court costs incurred by these parties should be paid by the Trust.

6

PRAYER

WHEREFORE PREMISES CONSIDERED, Petitioner prays that the Court grant the requested relief. Petitioner further prays for such other and further relief to which Petitioner is justly entitled.

Respectfully submitted,

Cantrell & Cowan, PLLC

By: _Carol Cantrell_____
Carol A. Cantrell, Attorney for Petitioner
Texas Bar No.: 24043592
Meredith N. McIver
Texas Bar No.: 24078974
3700 Buffalo Speedway, Suite 520
Houston, TX 77098
Phone: 713-333-0555
Fax: 713-333-0550

7

## CERTIFICATE OF SERVICE

I certify that on September 30, 2013, I served a true and correct copy of the foregoing instrument by certified mail, return receipt requested to the following:

Andy I. Weiner
1200 Post Oak Blvd.,
Apartment 907,
Houston, Texas 77056

Carol A. Cantrell

No. _____

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| | § | NO. _____ |
| DANIEL STEPHEN WEINER | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On the _____ day of _____, 2013, came on to be heard the Original Petition for Termination of Trust in the above-entitled and numbered cause by Katherine F. Warren, co-trustee of the DANIEL STEPHEN WEINER 1996 TRUST. Petitioner appeared through her duly authorized representative and attorney of record and announced ready for trial. Respondent Andy I. Weiner appeared by and through his duly authorized representative and attorney of record and announced ready for trial. No jury having been demanded by any party, all issues of fact and law were submitted to the Court for decision.

Having reviewed the pleadings and other papers on file in this cause; and having considered the evidence presented at trial and the arguments of counsel, the Court finds as follows:

1. This Court has jurisdiction and venue of this action.

2. All necessary parties to this action are properly before the Court and have been duly served with citation in the manner required by law.

3. The DANIEL STEPHEN WEINER 1996 TRUST (hereinafter referred to as the "Trust") is an inter vivos trust created by Katherine F. Warren and Andy I. Weiner by agreement dated March 20, 1996 for the benefit of their son, Daniel S. Weiner (hereinafter referred to as the "Primary Beneficiary").

4. The current co-trustees of the Trust are Katherine F. Warren and Andy I. Weiner.

1

5. Texas Trust Code § 112.054(a)(3) provides that on the petition of a trustee or beneficiary, a Court may order that the trustee be changed or that the Trust be terminated if modification of administrative, non-dispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the Trust's administration.

6. Texas Trust Code § 112.054(a)(2) provides that on the petition of a trustee or beneficiary, a Court may order that the trustee be changed or that the Trust be terminated if, because of circumstances not known to or anticipated by the trustors, termination or modification of the Trust will further the purposes of the Trust.

7. Petitioner has requested termination of the Trust contingent on the Court's finding that: (a) the inability of the co-trustees to agree on the appropriate administration of the Trust assets has impaired the Trust's administration; and (b) due to the divorce of the co-trustees, a circumstance not known to or anticipated by the trustors when they created the Trust, termination will further the purposes of the Trust, which is to provide for the best interests of the Primary Beneficiary.

8. Petitioners have alternatively requested that the co-trustees be replaced by an independent corporate trustee, if available, contingent on the Court's finding that: (a) the inability of the co-trustees to agree on the appropriate administration of the Trust assets has impaired the Trust's administration; and (b) due to the divorce of the co-trustees, a circumstance not known to or anticipated by the trustors when they created the Trust, modification of the Trust will further the purposes of the Trust, which is to provide for the best interests of the Primary Beneficiary.

9. The co-trustees have tendered an accounting of their actions as co-trustee of the Trust (the "Final Accounting"). The Final Accounting reflects that the co-trustees have administered the Trust in accordance with the requirements of Texas law.

10. The Final Accounting should be approved in all respects, and the co-trustees should be released and discharged from any and all liabilities arising out of or in any way related to the administration of the Trust or the Trust termination.

11. The Trust should be terminated and the remaining Trust estate, after payment of all Court costs and expenses and legal fees should be distributed to the Uniform Transfers to Minors Act account created for the benefit of the Daniel S. Weiner, Fidelity Account ending in #6843.

12. Katherine F. Warren brought this action for the purpose of preserving and protecting the interests of the Trust and its Primary Beneficiary. The relief sought in this action was necessary to enable the Trust to accomplish the purposes of the Trust as established by the trustors. Accordingly, Katherine F. Warren is entitled to recover her reasonable and necessary attorney's fees and litigation expenses from the Trust pursuant to Texas Trust Code § 114.064.

It is therefore, ORDERED, ADJUDGED, and DECREED that the Trust is hereby terminated; that the termination shall be effective immediately upon the entry of this Final Judgment by the Court; that the co-trustees are directed to deliver the remaining Trust estate, after payment of all Court costs and expenses and legal fees to the Fidelity Account ending in #6843. The provisions of this Final Judgment shall constitute sufficient legal authority to all persons owing any money to the Trust, having custody of any property of the Trust, or acting as

3

transfer agent of any property of the Trust, for payment or transfer of such money, property, or right without liability to Daniel S. Weiner, the Primary Beneficiary, and his legal successors in interest.

It is further ORDERED, ADJUDGED, and DECREED that the Final Accounting submitted by the co-trustees is hereby approved in all respects, and that the co-trustees are hereby released and discharged from any and all liabilities arising out of or in any way related to the administration of the Trust, including its termination.

It is further ORDERED, ADJUDGED, and DECREED that Katherine F. Warren is entitled to recover her reasonable attorney's fees and court costs of $_____ from the Trust pursuant to Texas Trust Code § 114.064, and that these fees shall be paid prior to the delivery of any properties to the Primary Beneficiary.

It is further ORDERED, ADJUDGED, and DECREED that all filing fees and Court costs in this cause are hereby taxed against the Trust, for which execution shall issue if not timely paid.

SIGNED this _____ day of _____, 2013.

_____
Judge Presiding

4

APPROVED AS TO FORM AND SUBSTANCE:


CANTRELL & COWAN, PLLC


By: _Carol Cantrell_

Carol A. Cantrell, Attorney for Petitioner
Texas Bar No.: 24043592
Meredith N. McIver
Texas Bar No.: 24078974
3700 Buffalo Speedway, Suite 520
Houston, TX 77098
Phone: 713-333-0555
Fax: 713-333-0550

## DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

A. PRIMARY TRUST

A-1. _Distributions._ The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2. _Termination._ Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a)   To Daniel.

(b)   If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To Daniel's descendants.

(2)   If none of Daniel's descendants is then living, to trustors' descendants.

Exhibit A

(3) If none of trustors' descendants is then living, to trustors' heirs.

A-3. **Payment of Taxes.** If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

## B. CONTINGENT TRUSTS

B-1. **Trusts Established.** Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment). Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary. However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. **Distributions.** The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. **Termination.** Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death. Upon termination, the trust estate shall be distributed:

(a) To the beneficiary.

(b) If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment. If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate. If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1) To the beneficiary's descendants.

-2-

(2)  If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3)  If none of these persons is then living, to trustors, descendants.

(4)  If none of trustors' descendants is then living, to trustors' heirs.

C.  DISTRIBUTIONS

C-1.  Distributions to or for Beneficiaries.  During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state.  Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit.  However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor.  Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2.  Best Interests of Beneficiary.  In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

D.  OFFICE OF TRUSTEE

D-1.  Successor Trustee, Co-Trustee.  The following provisions shall apply to each separate trust established under this trust agreement:

(a)  Successor Trustee.  Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee.  Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

-3-

(b) <u>Appointment of Successor Trustee by Trustee</u>. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) <u>Appointment of Successor Trustee by Beneficiaries</u>. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) <u>Appointment of Co-Trustee</u>. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) <u>Who May Be Appointed</u>. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f) <u>Procedure for Appointment</u>. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. <u>Resignation of Trustee</u>. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) <u>Notice</u>. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) <u>Accounting</u>. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. <u>Rights and Liabilities</u>.

(a) <u>Bond Not Required</u>. No bond or other security shall be required of any trustee.

(b) <u>Liabilities</u>. This agreement shall always be construed in

-4-

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) <u>Compensation</u>. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E. ADMINISTRATION

E-1. <u>General Powers of Trustee</u>. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) <u>Trust Estate</u>. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) <u>Business Interests</u>. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) <u>Transfers, Loans</u>. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) <u>Dealings With Related Parties</u>. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) <u>Agents, Employees</u>. The trustee may employ and compensate agents and other employees 'and may delegate to them any and all discretions and powers.

-5-

(f) _Partitions, Distributions_. The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) _Claims, Controversies_. The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) _Additional Powers_. In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. _Principal and Income Determinations_. The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. _Restrictions on the Exercise of Certain Powers_.

(a) _Dealings with Trust Estate_. No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

(b) <u>Distributions to or for Trustee</u>. Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4. <u>Release and Delegations of Powers</u>. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

## F. DEFINITIONS AND GENERAL PROVISIONS

F-1. <u>Trust Estate</u>. "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2. <u>Descendants</u>. "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3. <u>Heirs</u>. Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4. <u>Internal Revenue Code</u>. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

F-5.  Other Terms.  The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6.  Spendthrift Provision.  No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner.  No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary.  Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7.  Texas Law Applies.  The situs of the trusts established under this trust agreement is Texas.  Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8.  Maximum Term of Trusts.  No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement.  Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9.  Powers of Appointment Exercisable by Beneficiaries.  In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state.  If the beneficiary appoints to a custodian, he may select the custodian.  If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions.  He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees.  He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee.  He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate.  Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

### G.  ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.


_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee


-9-

ATTACHMENT A:   INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST


$1.00




_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

3559;pslnso\0157136








-10-

NO. 2011-01040



| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| KATHERINE F. WEINER | § | |
| AND | § | 309TH JUDICIAL DISTRICT |
| ANDY I. WEINER | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| DAVID A. WEINER, DANIEL S. | § | |
| WEINER AND MICHAEL H. | § | |
| WEINER, CHILDREN | § | HARRIS COUNTY, TEXAS |

**FILED**
Chris Daniel
District Clerk

MAR 29 2012

Time: _____
Harris County, Texas

By _____ Deputy

## AGREED FINAL DECREE OF DIVORCE

On February 17, 2012, the Court heard the parties' agreement for the terms of their Agreed Final Decree of Divorce as set out in the parties' Mediated Settlement Agreement. Andy I. Weiner and his attorney, Eileen M. Gaffney appearing for Joan F. Jenkins appeared in person and proved up the agreement. After hearing the parties' agreement, the court set this case for entry.

*Appearances*

Petitioner, Katherine F. Weiner, appeared at entry through her attorney of record, Randy B. Wilhite and announced ready.

Respondent, Andy I. Weiner, appeared in person and through attorney of record, Joan F. Jenkins, and announced ready.

*Record*

The making of a record of testimony was waived by the parties with the

Weiner - Agreed Final Decree of Divorce

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Page 1

Exhibit B

Certified Document Number: 51817895 - Page 1 of 41

consent of the Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Agreement of Parties*

The Court finds that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce. The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement. A copy of the agreement is not filed with the records of this Court.

Certified Document Number: 51817895 - Page 2 of 41

The agreements in this Final Decree of Divorce were reached in mediation with Harry L. Tindall. This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement between the parties. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

*Divorce*

IT IS ORDERED AND DECREED that Katherine F. Weiner, Petitioner, and Andy I. Weiner, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

| | |
|---|---|
| Name: | David A. Weiner |
| Sex: | Male |
| Birth date: | June 14, 1994 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x861 |
| Driver's license number and issuing state: | xxxxx273, Texas |

| | |
|---|---|
| Name: | Daniel S. Weiner |
| Sex: | Male |
| Birth date: | March 11, 1996 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x039 |
| Driver's license number and issuing state: | xxxxx996Texas |

Certified Document Number: 51817895 - Page 3 of 41

| Name: | Michael H. Weiner |
| --- | --- |
| Sex: | Male |
| Birth date: | November 1, 1999 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x735 |
| Driver's license number and issuing state: | N/A |

The Court finds no other children of the marriage are expected.

*Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner are appointed Joint Managing Conservators of the following children: David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

IT IS ORDERED that, at all times, Katherine F. Weiner, as a parent joint managing conservator, shall have the following rights:

1.     the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

Certified Document Number: 51817895 - Page 4 of 41

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in case of an emergency;

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Andy I. Weiner, as a parent joint managing conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

Certified Document Number: 51817895 - Page 5 of 41

5.   the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.   the right to attend school activities;

7.   the right to be designated on the children's records as a person to be notified in case of an emergency;

8.   the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.   the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Katherine F. Weiner and Andy I. Weiner,

as parent joint managing conservators, shall each have the following duties:

1.   the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.   the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.   WARNING:   A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, Katherine F.

Certified Document Number: 51817895 - Page 6 of 41

Weiner, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;
2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, Andy I. Weiner, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that Katherine F. Weiner, as a parent joint managing conservator, shall have the following rights and duty:

1. the exclusive right to establish the primary residence and legal domicile of the children in Harris County, Texas or a county that is contiguous to Harris County, Texas, subject to the provisions hereinafter.

2. the exclusive right to consent to medical, dental, and surgical

Certified Document Number: 51817895 - Page 7 of 41

treatment involving invasive procedures;

3. the exclusive right to consent to psychiatric and psychological treatment of the children;

4. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the exclusive right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6. the exclusive right to consent to marriage and to enlistment in the armed forces of the United States;

7. the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education;

8. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

10. the exclusive duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parent.

IT IS ORDERED that Andy I. Weiner, as a parent joint managing conservator, shall have the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education, and in this regard, the Court finds that Andy I. Weiner has agreed for each child to remain at the Kinkaid School through each child's graduation from such School, and that there are other more specific provisions herein further delineating the obligation of

Andy I. Weiner to pay for the Kinkaid School for the children.

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. IT IS ORDERED that, so long as the principal residence of Andy I Weiner is in either Harris County, Texas or a county that is contiguous to Harris County, Texas, the primary residence of the children shall be in Harris County, Texas or a county that is contiguous to Harris County, Texas, and the parties shall not remove the children from such designated area for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

IT IS ORDERED that the following custodial accounts now held by the parties for the parties' children are placed under the sole and exclusive control of Katherine F. Weiner:

1.    Fidelity UTMA Acct Ending in #4270; and

2.    Fidelity UTMA Acct Ending in #6843.

Unless these documents have been previously executed, Andy I. Weiner is



ORDERED to appear in the law offices of Randall B. Wilhite at 4265 San Felipe Street, Suite 1400, Houston, Texas 77027, at 2:00 p.m. on March 30, 2012, and to execute, have acknowledged, and deliver to Katherine F. Weiner all documents necessary to effectuate Katherine F. Weiner's sole and exclusive control of the accounts.

IT IS ORDERED that the following children's trusts are held in irrevocable trusts, which shall continue as written, and that each party will take any and all necessary steps to provide full co-trustee ownership and control of each such account including the placing of such accounts in a deposit and withdrawal agreement requiring both co-trustees to disburse funds; also known as an "and" account:

1.    Fidelity Trust Acct Ending in #8634 (David);

2.    Fidelity Trust Acct Ending in #3958 (Daniel); and

3.    Fidelity Trust Acct Ending in #1942 (Michael).

*Possession and Access*

1.    *Modified Possession Order*

The Court finds that the parties have entered into a Mediated Settlement Agreement providing for a non-expanded, non-standard possession order as more specifically herein provided.

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Modified Possession Order. IT IS ORDERED that this Modified Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this

Weiner – Agreed Final Decree of Divorce                    Page 10



Modified Possession Order.   IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Modified Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Modified Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Modified Possession Order.

©    Except as otherwise expressly provided in this Modified Possession Order, Andy I. Weiner shall have the right to possession of the child as follows:

1.    Weekends –

On weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday, provided that upon 14 days' advance written notice of an out-of-town trip, Andy I. Weiner may pick up at 4 p.m. one time every 60 days.

2.    Thursdays – On Thursday of each week during the regular school term, beginning at 4:00 p.m. and ending at 8:00 p.m.

3.    Spring Vacation in Even-Numbered Years – In even-numbered years, beginning at 5:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 5:00 p.m. on the day before school resumes after that vacation.

Weiner – Agreed Final Decree of Divorce                    Page 11



4.    Extended Summer Possession by Andy I. Weiner –

With Written Notice by April 1 – On or before April 1st of each year, Andy I. Weiner shall designate one period of 14 consecutive days (which may be exercised in 2 one week periods of possession, separated by no less than 14 days), beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than 7 days before school resumes for the next school year, during which he shall have his summer periods of possession with the children. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for Andy I. Weiner, it is expressly ORDERED that Katherine F. Weiner shall have a superior right of possession of the child as follows:

1.    Spring Vacation in Odd-Numbered Years – In odd-numbered years, beginning at 5:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.    Summer Weekend Possession by Katherine F. Weiner – On or before April 15th of each year, Katherine F. Weiner shall designate 14 consecutive days, or at her election, two 7 day periods beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than 7 days before school resumes for the next school year, during which she will have her summer period(s) of possession with the children, provided the dates do not conflict with Father's Day weekend or the summer periods designated by Andy I. Weiner. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

(d)    Holidays

Notwithstanding the weekend and Thursday periods of possession of Andy I. Weiner, Katherine F. Weiner and Andy I. Weiner shall have the right to possession of the child as follows:

Weiner – Agreed Final Decree of Divorce                    Page 12

Certified Document Number: 51817895 – Page 12 of 41

1.     Christmas Holidays in Even-Numbered Years - In even-numbered years, Andy I. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and Katherine F. Weiner shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

2.     Christmas Holidays in Odd-Numbered Years - In odd-numbered years, Katherine F. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and Andy I. Weiner shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.     Thanksgiving in Odd-Numbered Years - In odd-numbered years, Andy I. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4.     Thanksgiving in Even-Numbered Years - In even-numbered years, Katherine F. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5.     Father's Day - Andy I. Weiner shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if Andy I. Weiner is not otherwise entitled under this Modified Possession Order to present possession of the child, he shall pick up the child from Katherine F. Weiner's residence and return the child to that same place.

6.     Mother's Day - Katherine F. Weiner shall have the right to

possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if Katherine F. Weiner is not otherwise entitled under this Modified Possession Order to present possession of the child, she shall pick up the child from Andy I. Weiner's residence and return the child to that same place.

(e)     Undesignated Periods of Possession

Katherine F. Weiner shall have the right of possession of the child at all other times not specifically designated in this Modified Possession Order for Andy I. Weiner.

(f)     General Terms and Conditions

Except as otherwise expressly provided in this Modified Possession Order, the terms and conditions of possession of the child are as follows:

1.     Surrender of Child by Katherine F. Weiner - Katherine F. Weiner is ORDERED to surrender the child to Andy I. Weiner at the beginning of each period of Andy I. Weiner's possession at the residence of Katherine F. Weiner.

2.     Return of Child by Andy I. Weiner - Andy I. Weiner is ORDERED to return the child to the residence of Katherine F. Weiner at the end of each period of possession.

3.     Surrender of Child by Andy I. Weiner - Andy I. Weiner is ORDERED to surrender the child to Katherine F. Weiner, if the child is in Andy I. Weiner's possession or subject to Andy I. Weiner's control, at the beginning of each period of Katherine F. Weiner's exclusive periods of possession, at the place designated in this Modified Possession Order.

4.     Return of Child by Katherine F. Weiner - Katherine F. Weiner is ORDERED to return the child to Andy I. Weiner, if Andy I. Weiner is entitled to possession of the child, at the end of each of Katherine F. Weiner's exclusive periods of possession, at the place designated in this Modified Possession Order.

Certified Document Number: 51817895 - Page 14 of 41

5. Notwithstanding any other provision herein to the contrary, any child with a driver's license shall be permitted to drive himself to and from each period of possession and during each period of possession; however, any child without a driver's license (which at this time includes Daniel Weiner and Michael Weiner) is ORDERED to ride only with Andy I. Weiner.

6. Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

7. Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

8. Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

9. Written Notice - Written notice shall be made to the other parent via e-mail correspondence to the other parent's e-mail address, including all notices from one parent to the other of any changes in a party's e-mail address. Each party is ORDERED to provide any change in the e-mail address designated by each such party as the one to be used for notification by the other party within 7 days of a change thereof.

This concludes the Modified Possession Order.

2. *Provisions for Jewish Religious Holidays*

In addition to the holiday periods of possession set forth in the Modified Possession Order, Andy I. Weiner and Katherine F. Weiner shall share the Jewish holidays as set forth below:

a. Rosh Hashanah - Even-Numbered Years. In all

Certified Document Number: 51817895 - Page 15 of 41

even-numbered years Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Rosh Hashanah and ending at 9:00 p.m. on the same day; Katherine F. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Rosh Hashanah.

b.      Rosh Hashanah - Odd-Numbered Years.   In all odd-numbered years Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Rosh Hashanah and ending at 9:00 p.m. on the same day; Andy I. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Rosh Hashanah.

c.      Yom Kippur - Odd-Numbered Years - In all odd-numbered years, Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Yom Kippur and ending at 9:00 p.m. on the same day; Andy I. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Yom Kippur.

d.      Yom Kippur - Even-Numbered Years - In all even-numbered years, Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Yom Kippur and ending at 9:00 p.m. on the same day; Katherine F. Weiner shall have

Certified Document Number: 51817895 - Page 16 of 41

possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Yom Kippur.

e. Passover - Even-Numbered Years - In all even-numbered years, Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first full day of Passover and ending at 9:00 p.m. on the same day.

f. Passover - Odd-Numbered Years - In all odd-numbered years, Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first full day of Passover and ending at 9:00 p.m. on the same day.

3. *Duration*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

4. *Noninterference with Possession*

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

5. *Termination of Orders*

Weiner - Agreed Final Decree of Divorce                    Page 17



The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of Katherine F. Weiner to Andy I. Weiner unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that Andy I. Weiner is obligated to pay and shall pay to Katherine F. Weiner child support of two thousand two hundred fifty dollars ($2,250) per month, with the first payment being due and payable on ~~March~~ April 1, 2012, and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. any child marries;

3. any child dies;

4. the parent-child relationship is terminated based on genetic testing that excludes the obligor as the child's genetic father;

5. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

6.	any child's disabilities are otherwise removed for general purposes.

Thereafter, Andy I. Weiner is ORDERED to pay to Katherine F. Weiner child support of one thousand eight hundred seventy-five dollars ($1,875) per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand eight hundred seventy-five dollars ($1,875) due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for another child.

Thereafter, Andy I. Weiner is ORDERED to pay to Katherine F. Weiner child support of one thousand five hundred dollars ($1,500) per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand five hundred dollars ($1,500) due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for another child.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that Andy I. Weiner's obligation to pay child support to Katherine F. Weiner shall not terminate but shall continue for as long as the child is enrolled-

1.	under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under

Weiner - Agreed Final Decree of Divorce	Page 19



section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.    on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

### Withholding from Earnings

IT IS ORDERED that any employer of Andy I. Weiner shall be ordered to withhold from earnings for child support from the disposable earnings of Andy I. Weiner for the support of David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of Andy I. Weiner by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of Andy I. Weiner, and it is hereby ORDERED that Andy I. Weiner pay the balance due directly to the state

Weiner - Agreed Final Decree of Divorce                              Page 20



disbursement unit specified below.

On this date the Court authorized the issuance of an Order/Notice to Withhold Income for Child Support.

### Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to Katherine F. Weiner for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

### Change of Employment

IT IS FURTHER ORDERED that Andy I. Weiner shall notify this Court and Katherine F. Weiner by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of Andy I. Weiner and the name and address of his current employer, whenever that information becomes available.

### Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D

Certified Document Number: 51817895 - Page 21 of 41

Weiner - Agreed Final Decree of Divorce                   Page 21



agency, the friend of the Court, a domestic relations office, Katherine F. Weiner, Andy I. Weiner, or an attorney representing Katherine F. Weiner or Andy I. Weiner, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

Suspension of Withholding from Earnings

The Court finds that good cause exists that no order to withhold from earnings for child support should be delivered to any employer of Andy I. Weiner as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to Katherine F. Weiner. For the purpose of this provision, a delinquency has occurred if Andy I. Weiner has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to Katherine F. Weiner, the clerk shall deliver the order to withhold earnings as provided above.

ACCORDINGLY, IT IS ORDERED that, as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to Katherine F. Weiner, all payments shall be made through the state disbursement unit and thereafter

Weiner - Agreed Final Decree of Divorce                    Page 22

promptly remitted to Katherine F. Weiner for the support of the children. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to Katherine F. Weiner, all payments shall be made in accordance with the order to withhold earnings as provided above.

### Kinkaid School Tuition

IT IS ORDERED that Andy I. Weiner shall pay, as child support, through graduation from high school, each child's tuition, required fees, required books, lunches at school and other fees associated with the children's attendance at the Kinkaid School, as billed directly by the school to Andy I. Weiner.

*Health Care*

1. IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner shall each provide medical support for each child as set out in this order as additional child support for as long as the Court may order Katherine F. Weiner and Andy I. Weiner to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day Katherine F. Weiner and Andy I. Weiner's actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent

Weiner - Agreed Final Decree of Divorce                    Page 23



to fully comply with those obligations before that date.

2. Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which Andy I. Weiner is responsible under a medical support order that does not exceed 9 percent of Andy I. Weiner 's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:



a. to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b. to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c. to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3. Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the children through Andy I. Weiner's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4. Provision of Health-Care Coverage -



As additional child support, through four (4) months past high school graduation for each child and for so long as child support is payable for a child, Andy I. Weiner is ORDERED to provide health insurance for each such child with a deductible of no more than $1,000.00 per year, per child, and if it is higher, as child support, Andy I. Weiner is ORDERED to pay 100% of all deductible amounts to a point where such deductible amount reaches that level. For example, if the deductible for the children is $7,500, Andy I. Weiner shall pay 100% of the fist $6,500 in uninsured health care expenses of the children.

Beginning on the first day of the first month following the rendition of the divorce, and pursuant to section 154.183© of the Texas Family Code, IT IS ORDERED that the reasonable and necessary uninsured medical expenses of the children be paid as follows:

a. Andy I. Weiner shall be responsible for payment of 70% of each child's deductible;

b. after the deductible has been met, Katherine F. Weiner shall pay for 30% and Andy I. Weiner shall pay for 70% of all uninsured health care expenses for each child's health care not covered by the children's health insurance policy.

c. Notwithstanding the foregoing, any uninsured health care expenses not applied toward the deductible shall be paid 30% by Katherine F. Weiner and 70% by Andy I. Weiner.

Certified Document Number: 51817895 - Page 26 of 41

d.    Unless approved in advance by both parents, any party incurring out of network expenses, except in the case of a medical emergency, shall pay 100% of such expense.

Andy I. Weiner is ORDERED to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services.

Andy I. Weiner is ORDERED to maintain such health insurance in full force and effect on each child who is the subject of this suit as long as child support is payable for that child.    Andy I. Weiner is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of his employment or other disqualification from the group insurance.    Andy I. Weiner is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

Andy I. Weiner is ORDERED to furnish Katherine F. Weiner a true and correct copy of the health insurance policy or certification and a schedule of benefits within 10 days of the signing of this order.    Andy I. Weiner is ORDERED to furnish Katherine F. Weiner the insurance cards and any other forms necessary for use of the insurance within 10 days of the signing of this order.    Andy I. Weiner

Weiner - Agreed Final Decree of Divorce                    Page 27

Certified Document Number: 51817895 - Page 27 of 41

is ORDERED to provide, within three days of receipt by him, to Katherine F. Weiner any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that Katherine F. Weiner paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if Andy I. Weiner is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of Katherine F. Weiner or others as authorized by law.

The party who incurs a health-care expense on behalf of a child is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this suit that are incurred while child support is payable for that child.

Certified Document Number: 51817895 - Page 28 of 41

5.    Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6.    Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like.   Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required.   Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion

Certified Document Number: 51817895 - Page 29 of 41

of that bill.

IT IS FURTHER ORDERED that no surgical procedure, other than in an emergency or one covered by insurance, shall be performed on the child unless the parent consenting to surgery has first consulted with at least two medical doctors, both of whom state an opinion that the surgery is medically necessary. IT IS FURTHER ORDERED that a parent who fails to obtain the required medical opinions before consent to surgery on the child shall be wholly responsible for all medical and hospital expenses incurred in connection therewith and not covered by insurance.

7.     Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within thirty days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children.   In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option , may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company.   Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, Katherine F.

Weiner is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.     Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who paid those expenses.   IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.     WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN,

Certified Document Number: 51817895 - Page 31 of 41

WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

*Miscellaneous Child Support Provisions*

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of Andy I. Weiner and shall not terminate on the death of Andy I. Weiner. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of Andy I. Weiner's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of Katherine F. Weiner to Andy I. Weiner unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of Katherine F. Weiner but continues as an obligation to

Certified Document Number: 51817895 - Page 32 of 41

David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

| | |
|---|---|
| Name: | Katherine F. Weiner |
| Social Security number: | xxx-xx-x324 |
| Driver's license number: | xxxxx616 |
| | Issuing · state: Texas |
| Current residence address: | 8719 Stablecrest, Houston, TX 77024 |
| Mailing address: | 8719 Stablecrest, Houston, TX 77024 |
| Home telephone number: | 832-725-4340 |
| Name of employer: | N/A |

Certified Document Number: 51817895 - Page 33 of 41



Address of employment:     N/A
Work telephone number:     N/A

Name:                                          Andy I. Weiner
Social Security number:    xxx-xx-x888
Driver's license number                              xxxxx486
                                                     Issuing      state:
                                                     Texas
Current residence address:  1200 Post Oak Blvd., Apt. 907, Houston, TX
                            77056
Mailing address:                      1200 Post Oak Blvd., Apt. 907,
                            Houston, TX 77056
Home telephone number:     832 816 4666
Name of employer:          Weiner Development
Address of employment:     520 North Post Oak Blvd., Houston, Texas
Work telephone number:     (713) 623-0188

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY

EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF

ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING

ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS

OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE

NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED

CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER

PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE

THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES

NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT

TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE

NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE

Certified Document Number: 51817895 - Page 34 of 41

DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by e-mail correspondence to the party's e-mail address. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 1115 Congress, Houston, Texas 77002. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S,

Weiner - Agreed Final Decree of Divorce                    Page 35

Certified Document Number: 51817895 – Page 35 of 41

P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Certified Document Number: 51817895 - Page 36 of 41

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT. FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Change of Petitioner's Name*

IT IS ORDERED AND DECREED that Katherine F. Weiner's name is changed to Katherine Rose Warren.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court rendered on August 24, 2011, except as otherwise stated herein with regard to provisions for sale of the home.

*Discharge from Discovery Retention Requirement*

Weiner - Agreed Final Decree of Divorce                    Page 37



Certified Document Number: 51817895 - Page 37 of 41

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Decree Acknowledgment*

Petitioner, Katherine F. Weiner, and Respondent, Andy I. Weiner, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to

Certified Document Number: 51817895 - Page 38 of 41

hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

Date of Judgment

SIGNED on 3/29/2012

_____
JUDGE PRESIDING

FILED
Chris Daniel
District Clerk

MAR 29 2012

Time:_____ 2:48 Pm
Harris County, Texas
By_____ ALS
Deputy

Certified Document Number: 51817895 - Page 40 of 41



APPROVED AS TO FORM ONLY:

FULLENWEIDER WILHITE
4265 San Felipe Street
Suite 1400
Houston, Texas 77027
Tel: (713) 624-4100
Fax: (713) 624-4141

By: _____
Randall B. Wilhite
Attorney for Katherine F. Weiner
State Bar No. 21476400


JENKINS KAMIN, LLP
Two Greenway Plaza, Suite 600
Houston, Texas 77046
713-600-5500 Telephone
713-600-5501 Telefax

By: _____
Joan F. Jenkins
Attorney for Andy I. Weiner
State Bar Number 10621900


APPROVED AND CONSENTED TO
AS TO BOTH FORM AND SUBSTANCE:

_____
Katherine F. Weiner, Petitioner

_____
Andy I. Weiner, Respondent

Weiner - Agreed Final Decree of Divorce                    Page 41

Certified Document Number: 51817895 - Page 41 of 41

No. _____

| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| | § | NO. _____ |
| DAVID ABRAHAM WEINER | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF KATHERINE F. WARREN

Before me, the undersigned notary, on this day personally appeared KATHERINE F. WARREN, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. My name is Katherine F. Warren. I am over eighteen years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. On December 13, 1994, Andy I. Weiner and I created the DAVID ABRAHAM WEINER 1994 TRUST (the "Trust") for the benefit of our son, David W. Warren, formerly known as David A. Weiner. Andy I. Weiner and I are the trustors and co-trustees of the Trust.

3. The purpose of the Trust is to provide for the best interests of our son, David. A primary purpose of the Trust is to fund his educational costs. I believe that it is in David's best interest to receive a quality education.

4. David is enrolled as a freshman at Rice University in Houston, Texas. He began attending classes in August 2013.

5. Andy I. Weiner and I were granted a divorce on March 29, 2012. As part of the divorce decree, the trust was to continue as provided under the trust agreement. Under the trust agreement, Andy I. Weiner and I are required to act jointly as co-trustees.

1



6. Although David is the primary beneficiary of the Trust, he applied for financial aid with Rice University prior to the start of the Fall 2013 semester. David was denied financial aid because of the Trust. The financial aid department of Rice University explained that where students are the beneficiaries of trusts like the DAVID ABRAHAM WEINER 1994 TRUST, that the school assumes that the trust funds are intended for the payment of college expenses.

7. David received a tuition bill from Rice University in July 2013. I wrote a check from the Trust's Fidelity account for $20,000 or around August 1, 2013. The check was returned to Rice University unpaid because Andy I. Weiner requested that Fidelity not honor the check.

8. After the check was returned to Rice University unpaid, David received a letter from the university advising him that his tuition payment was overdue. I requested that Fidelity wire $20,000 to David, with which he paid his tuition. It took approximately six weeks for the tuition payment to be credited to David's account with Rice University.

9. I believe that it is detrimental to the best interests of David for Andy I. Weiner and I to continue acting as co-trustees of the Trust. Our disagreements regarding distributions of David's behalf could seriously inhibit his ability to receive a wonderful education.

10. David is an intelligent adult and is capable of using the Trust assets for his best interests. I believe that David has shown maturity beyond most other college students his age. It would be in his best interests to be given the Trust assets for his college tuition, rather than to face the uncertainty inherent in the current situation.

Katherine F. Warren

Exhibit C

Sworn to and subscribed before me by Katherine F. Warren on ___9·30___, ___ 2013.



ANGIE K BYRNES
My Commission Expires
September 16, 2015

Notary Public in and for the State of Texas

Exhibit C

No. 425,576

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| | § | NO. 4 |
| DANIEL STEPHEN WEINER | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## FIRST AMENDED ORIGINAL PETITION FOR MODIFICATION OF TRUST and RESPONSE TO PLEA IN ABATEMENT AND PLEA TO THE JURISDICTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Katherine F. Warren as next friend of Daniel S. Weiner, a minor, Petitioner herein, and files this First Amended Original Petition for Modification of Trust for the DANIEL STEPHEN WEINER 1996 TRUST, a true and correct copy of which is attached hereto as "Exhibit A" and is incorporated for all purposes. Petitioner respectfully shows the Court as follows:

### PARTIES

1. Katherine F. Warren appears as next friend of Daniel S. Weiner pursuant to Rule 44 of the Texas Rules of Civil Procedure and files this action on his behalf in his capacity as beneficiary of the DANIEL STEPHEN WEINER 1996 TRUST ("Trust"). Daniel S. Weiner, a minor, was born on March 11, 1996. He will be an adult on March 11, 2014. No legal guardian or attorney ad litem has been appointed for Daniel S. Weiner.

2. Daniel S. Weiner ("Primary Beneficiary") has an interest in this proceeding under Texas Trust Code § 111.004(7). He is also a necessary party under Texas Trust Code § 115.011(2) because he is the primary beneficiary named in the Trust.

3. Katherine F. Warren has the exclusive right to represent Daniel S. Weiner in legal action and to make decisions of substantial legal significance concerning him pursuant to the

1

EXHIBIT

TAB H

exhibitsticker.com

Agreed Final Decree of Divorce ("Divorce Decree"), Cause No. 2011-01040 in the District Court of the 309th Judicial District in Harris County, Texas, which is attached as "Exhibit B" and incorporated for all purposes. Texas Trust Code § 115.013(c)(3) permits a parent to represent her child as guardian ad litem or next friend if there is no conflict of interest and no guardian of the estate or guardian ad litem has been appointed. Ms. Warren's interests do not conflict with those of Daniel S. Weiner.

4. Katherine F. Warren is an individual acting as trustee of the Trust. Ms. Warren is joined as a Respondent herein because she has an interest in the proceeding under Texas Trust Code § 111.004(7) and is a necessary party pursuant to Texas Trust Code § 115.011(b)(4). She currently resides at 1226 Muirfield Place, Houston, Harris County, Texas 77055.

5. Andy I. Weiner is an individual acting as trustee of the Trust. Mr. Weiner is joined as a Respondent herein because he has an interest in this proceeding under Texas Trust Code § 111.004(7) and is a necessary party pursuant to Texas Trust Code § 115.011(b)(4). Mr. Weiner currently resides at 1200 Post Oak Blvd., Apartment 907, Houston, Texas 77056.

6. The situs of the Trust is Houston, Harris County, Texas.

## JURISDICTION

7. The subject matter of this dispute involves the management and modification of the Trust estate of the DANIEL STEPHEN WEINER 1996 TRUST. This Court has jurisdiction over this subject matter pursuant to Texas Trust Code § 115.001(d)(1) and Texas Probate Code § 4G.

2

## RESPONSE TO PLEA IN ABATEMENT

8. Respondent Andy I. Weiner filed a Plea in Abatement in this action alleging that he had commenced an earlier suit on the same subject matter involving the same parties in the 309th Judicial District. In order to succeed on his Plea in Abatement, Mr. Weiner must show that 1) he commenced suit first, 2) the suit is still pending, 3) the same parties are involved, and 4) the controversies are the same. *In re Sims*, 88 S.W.3d 301, 303 (Tex. App. – San Antonio 2002, writ granted). The undisputed record shows that the Mr. Weiner cannot meet the last two requirements. On their face, Mr. Weiner's pleadings show that the parties are not the same in the District Court and the Probate Court. Daniel S. Weiner is not a party in the District Court action. Daniel S. Weiner would be a necessary party to a suit involving the DANIEL STEPHEN WEINER 1996 TRUST because he is a named beneficiary. Tex. Trust Code § 115.011(b)(2). A lack of necessary parties deprives the first court of dominant jurisdiction. *Mission Res.v. Garza Energy Trust*, 268 S.W.3d 301, 328 (Tex. App. Corpus Christi 2005). A plaintiff who is not a party to a prior suit is free to choose his forum. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). A defendant, however, is not at liberty to decline to do battle in the forum chosen by the plaintiff. *Id.* Accordingly, Mr. Weiner's Plea in Abatement should be denied.

9. Nor can Mr. Weiner show that he had a prior case involving the same subject matter when Petitioner filed his case in the Probate Court. Two controversies involve the same subject matter when the issues presented in each case are "inherently interrelated" – i.e. one controversy cannot be resolved without resolving the other. *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011); *Wyatt*, 760 S.W.2d at 247. That is not the case here. The pleadings

3

on their face reveal that the subject matters in the two actions are wholly dissimilar. The alienation issues can be resolved without modifying the Trust and the Trust can be modified without resolving the alienation issues.

10. The heart of Mr. Weiner's Petition to Modify Parent-Child Relationship ("SAPCR"[1]) filed on August 14, 2013 is a claim of alienation from his children allegedly caused by Katherine F. Warren, his ex-wife. See Supporting Affidavit to Exhibit A to Mr. Weiner's Plea in Abatement. Mr. Weiner's SAPCR contained a litany of grievances and relief requested in order to stop the alienation. Among them was a request for the exclusive right to consent to the children's psychiatric and psychological treatment, to manage their estates,[2] to represent them in legal action, and to exercise a fully expanded Standard Possession Order. Mr. Weiner also requested temporary orders for psychological evaluation of the whole family, the appointment of an Amicus Attorney, mandatory alternative dispute resolution ("ADR"), access to the children's health care records, and enforcement of the Divorce Decree's order that the Fidelity Trust accounts be changed to "and" accounts. He also requested a temporary restraining order to prevent Ms. Warren from withdrawing the children from school where they are presently enrolled and making disparaging remarks about him in front of the children. And finally, he requested a permanent injunction to prevent Ms. Warren from changing the names of the children. There was no mention of Trust management or modification and hence no inherent interrelation of the initial subject matter of the two suits. *In re Puig*, 351 S.W.3d at 305; *Wyatt*, 760 S.W.2d at 247.

---

[1] Suit Affecting the Parent-Child Relationship ("SAPCR") means a suit filed in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested. Tex. Family Code § 101.032.

[2] The children have a Uniform Transfer to Minors Account ("UTMA"), which Ms. Warren was awarded sole and exclusive control of on page 9 of the original Divorce Decree dated March 29, 2012.

4

11. It was only *after* Petitioner filed suit to modify the Trust on September 30, 2013 that Mr. Weiner amended hiss pleadings in the District Court on October 18, 2013 to request "the exclusive right to manage the existing trusts of the children." See page 2 of Exhibit B to Mr. Weiner's Plea in Abatement. This addition is the only change that was made in the amended pleadings. See Mr. Weiner's Exhibits A and B to his Plea in Abatement. In essence, Mr. Weiner amended his pleading to set up a new subject matter in order to obtain dominant jurisdiction in the District Court. But this is directly contrary to the Texas Supreme Court's ruling in *State of Texas v. Boyd*, in which the Court held that a party cannot obtain dominant jurisdiction by amending its pleadings in the first court to set up a subject matter similar to a different case in a second court involving the same parties. *State of Texas v. Boyd*, 136 S.W.2d 1107 (Tex. 1940). The plaintiff in *Boyd* amended its pleading in the Harris County District Court to set up a similar subject matter as another suit involving the same defendant in Travis County. The plaintiff then filed a plea in abatement alleging that it had a prior suit on the same subject matter pending in Harris County. The Court held that such action did not bestow dominant jurisdiction on the first case because they were wholly dissimilar prior to the amendment. *Id.* These facts are identical to the case at bar in which Mr. Weiner amended his parent-child alienation case against his ex-wife to add a new subject matter - management of the Trust estate - and then alleged that he had a prior suit pending on the same subject matter as Petitioner's case in the Probate Court. But the law is clear that amending a pleading to set up a subject matter similar to a second action does not give the first action dominant jurisdiction where the subject matter of the two cases were "wholly dissimilar" prior to the amendment. *Id.*

5

## RESPONSE TO PLEA TO THE JURISDICTION

12. Mr. Weiner also filed a Plea to the Jurisdiction on October 23, 2013 alleging that the District Court has continuing exclusive jurisdiction over matters pertaining to the Trust estate. But that assertion is directly contrary to the statute. Texas Family Code § 155.001(a) confers exclusive continuing exclusive jurisdiction over only the matters provided for in Title 5 of the Texas Family Code. These include "orders regarding managing conservatorship, possessory conservatorship, possession of and access to the child, and support of the child." Tex. Family Code § 155.003(a). The limits of the District Court's continuing exclusive jurisdiction are not boundless. They include only those matters expressly enumerated in Texas Family Code § 155.003(a), which are not involved in Petitioner's action to modify the Trust. Accordingly, this Court should deny Mr. Weiner's Plea to the Jurisdiction.

13. A hearing is scheduled on the Plea in Abatement and the Plea to the Jurisdiction for November 11, 2013 at 1:30 p.m. in this Court.

## VENUE

14. Venue of this proceeding is proper in this Court pursuant to Texas Trust Code § 115.002(b-2) and Texas Probate Code § 8.

## FACTS

15. The Trust is an inter vivos minor's trust created under Internal Revenue Code § 2503(c) by Ms. Warren and Mr. Weiner by agreement dated March 20, 1996 for the benefit of their son, Daniel S. Weiner, the Primary Beneficiary and Petitioner.

6

16. At the present time, Daniel S. Weiner is the only beneficiary of the Trust. Daniel S. Weiner is a high school senior and straight-A student at The Kincaid School in Houston, Texas. He is completing applications to attend college in the Fall of 2014 and is concerned about being able to depend on distributions from the Trust to help pay for his college.

17. The Trust estate consists of marketable securities and cash in the approximate value of $113,000 as of August 31, 2013.

18. The Trust is authorized under Section A-1 to make distributions to the Primary Beneficiary as follows:

> "The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests."

19. Pursuant to Section A-2 of the Trust, the Primary Beneficiary may withdraw all or part of the Trust estate within 60 days after becoming age 21, and may thereby terminate the trust as to the part withdrawn. If the Primary Beneficiary does not exercise his withdrawal right, the Trust continues until the Primary Beneficiary becomes age 30.

20. Section A-2 of the Trust provides that in the event the Primary Beneficiary should die before the Trust terminates, then all assets remaining in the Trust shall be held or distributed by the Trustee for the benefit of those in favor of whom the Primary Beneficiary exercises a power of appointment, or otherwise in the following order: (1) to the Primary Beneficiary's descendants, (2) if none of the descendants are then living, to

7

the trustors' descendants, (3) if none of the trustors' descendants are then living, to the trustors' heirs.

21. The initial and current trustees of the Trust are Ms. Warren and Mr. Weiner. In the event that both Mr. Weiner and Ms. Warren cease to act as trustee, Bayle Weiner Drubel, Mr. Weiner's sister, who is believed to live in Dartmouth, Massachusetts, is appointed successor trustee under Section D-1(a) of the Trust.

22. The trustees were granted a divorce on March 29, 2012. The Divorce Decree ordered that:

> "the following children's trusts are held in irrevocable trusts, which shall continue as written, and that each party will take any and all necessary steps to provide full co-trustee ownership and control of each such account including the placing of such accounts in a deposit and withdrawal agreement requiring both co-trustees to disburse funds; also known as an "and" account:
>
> 1.  Fidelity Trust Acct Ending in #8634 (David)
>
> 2.  Fidelity Trust Acct Ending in #3958 (Daniel)
>
> 3.  Fidelity Trust Acct Ending in #1942 (Michael)."

See Exhibit B, page 10.

23. The Texas Trust Code provides that on the petition of a beneficiary, a Court may order that the trustee be changed or that the trust be otherwise modified if modification of administrative, non-dispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the Trust's administration. Tex. Trust Code § 112.054(a)(3).

8

24. Petitioner believes that the inability of the trustees to agree on management of the Trust has impaired the Trust's administration. Modification of the Trust is necessary to prevent the trustees' personal issues from hindering their ability to effectively administer the Trust.

## RELIEF REQUESTED

25. Petitioner requests that the Court order that the Trust be modified to allow Daniel S. Weiner to become trustee of the Trust upon attaining age 18 on March 11, 2014; that modification of the Trust will further the purposes of the Trust; that modifying the Trust is necessary or appropriate to prevent waste or avoid impairment of the Trust's administration; and that the Court enter such other orders to effect the modification of the Trust.

26. Petitioner brings this action for the purpose of preserving and protecting the interests of the Trust estate and its Primary Beneficiary. The relief sought herein is necessary to enable the Trust to fulfill its intended purposes. Accordingly, Petitioner is entitled to recover reasonable attorney's fees and court costs from the Trust pursuant to Texas Trust Code § 114.064 ("In any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just"). If any of the other parties to this proceeding retain counsel to represent their interests in this cause, the Court should determine whether all or any portion of the attorney's fees and court costs incurred by these parties should be paid by the Trust.

9

## PRAYER

WHEREFORE PREMISES CONSIDERED, Petitioner prays that the Court grant the requested relief and deny Mr. Weiner's Plea in Abatement and Plea to the Jurisdiction. Petitioner further prays for such other and further relief to which Petitioner is justly entitled.

Respectfully submitted,

Cantrell & Cantrell, PLLC

By: _____
Carol A. Cantrell, Attorney for Petitioner
Texas Bar No.: 24043592
Meredith N. McIver
Texas Bar No.: 24078974
3700 Buffalo Speedway, Suite 520
Houston, TX 77098
Phone: 713-333-0555
Fax: 713-333-0550

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been duly served, either by hand delivery, certified mail, return receipt requested, electronic service, or facsimile, to counsel of record indicated below, on this 4th day of November, 2013.

Sarah Patel Pacheco
Kathleen Tanner Beduze
Crain Caton & James
Five Houston Center,
1401 McKinney, 17th Floor
Houston, TX 77010
spacheco@craincaton.com
713-658-1921 (facsimile)

_____
CAROL A. CANTRELL

## DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

A.   PRIMARY TRUST

A-1.   _Distributions_.   The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2.   _Termination_.   Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a)   To Daniel.

(b)   If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To Daniel's descendants.

(2)   If none of Daniel's descendants is then living, to trustors' descendants.

(3) If none of trustors' descendants is then living, to trustors' heirs.

A-3. <u>Payment of Taxes</u>.  If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

B.   CONTINGENT TRUSTS

B-1. <u>Trusts Established</u>.  Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment).  Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary.  However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. <u>Distributions</u>.    The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. <u>Termination</u>.  Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death.  Upon termination, the trust estate shall be distributed:

(a)   To the beneficiary.

(b)   If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment.  If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate.  If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To the beneficiary's descendants.

-2-

(2) If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3) If none of these persons is then living, to trustors, descendants.

(4) If none of trustors' descendants is then living, to trustors' heirs.

## C. DISTRIBUTIONS

C-1. <u>Distributions to or for Beneficiaries</u>. During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state. Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit. However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2. <u>Best Interests of Beneficiary</u>. In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

## D. OFFICE OF TRUSTEE

D-1. <u>Successor Trustee, Co-Trustee</u>. The following provisions shall apply to each separate trust established under this trust agreement:

(a) <u>Successor Trustee</u>. Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee. Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

-3-

(b) <u>Appointment of Successor Trustee by Trustee</u>. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) <u>Appointment of Successor Trustee by Beneficiaries</u>. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) <u>Appointment of Co-Trustee</u>. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) <u>Who May Be Appointed</u>. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f) <u>Procedure for Appointment</u>. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. <u>Resignation of Trustee</u>. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) <u>Notice</u>. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) <u>Accounting</u>. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. <u>Rights and Liabilities</u>.

(a) <u>Bond Not Required</u>. No bond or other security shall be required of any trustee.

(b) <u>Liabilities</u>. This agreement shall always be construed in

-4-

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) <u>Compensation</u>. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E. ADMINISTRATION

E-1. <u>General Powers of Trustee</u>. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) <u>Trust Estate</u>. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) <u>Business Interests</u>. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) <u>Transfers, Loans</u>. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) <u>Dealings With Related Parties</u>. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) <u>Agents, Employees</u>. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

-5-

(f) _Partitions, Distributions_. The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) _Claims, Controversies_. The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) _Additional Powers_. In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. _Principal and Income Determinations_. The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. _Restrictions on the Exercise of Certain Powers_.

(a) _Dealings with Trust Estate_. No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

(b)  Distributions to or for Trustee.  Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person.  If no other trustee is then serving, such power shall not be exercisable.

E-4.  Release and Delegations of Powers.  Any power granted to a trustee may be released, in whole or in part, temporarily or permanently.  Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting.  A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

F.  DEFINITIONS AND GENERAL PROVISIONS

F-1.  Trust Estate.  "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2.  Descendants.  "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants.  A posthumous child shall be considered as living at the death of his parent.  Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living.  Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner.  "Trustors' descendants" includes only those persons descended from both trustors.

F-3.  Heirs.  Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws.  However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made.  A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4.  Internal Revenue Code.  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

-7-

F-5. Other Terms. The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6. Spendthrift Provision. No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner. No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary. Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7. Texas Law Applies. The situs of the trusts established under this trust agreement is Texas. Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8. Maximum Term of Trusts. No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement. Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9. Powers of Appointment Exercisable by Beneficiaries. In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state. If the beneficiary appoints to a custodian, he may select the custodian. If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions. He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee. He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate. Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

G. ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.


_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

ATTACHMENT A:   INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST


$1.00


_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

3559:painsc\0157136

-10-

Exhibit B

NO. 2011-01040

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| KATHERINE F. WEINER AND ANDY I. WEINER | § § § § | 309TH JUDICIAL DISTRICT |
| AND IN THE INTEREST OF DAVID A. WEINER, DANIEL S. WEINER AND MICHAEL H. WEINER, CHILDREN | § § § § § | HARRIS COUNTY, TEXAS |

**F I L E D**
Chris Daniel
District Clerk
MAR 2 9 2012
Time: ____
Harris County, Texas
By ____ Deputy

## AGREED FINAL DECREE OF DIVORCE

On February 17, 2012, the Court heard the parties' agreement for the terms of their Agreed Final Decree of Divorce as set out in the parties' Mediated Settlement Agreement. Andy I. Weiner and his attorney, Eileen M. Gaffney appearing for Joan F. Jenkins appeared in person and proved up the agreement. After hearing the parties' agreement, the court set this case for entry.

*Appearances*

Petitioner, Katherine F. Weiner, appeared at entry through her attorney of record, Randy B. Wilhite and announced ready.

Respondent, Andy I. Weiner, appeared in person and through attorney of record, Joan F. Jenkins, and announced ready.

*Record*

The making of a record of testimony was waived by the parties with the

Weiner - Agreed Final Decree of Divorce

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Page 1

consent of the Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Agreement of Parties*

The Court finds that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce. The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement. A copy of the agreement is not filed with the records of this Court.

Certified Document Number: 51817895 - Page 2 of 41

The agreements in this Final Decree of Divorce were reached in mediation with Harry L. Tindall. This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement between the parties. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

*Divorce*

IT IS ORDERED AND DECREED that Katherine F. Weiner, Petitioner, and Andy I. Weiner, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

| | |
|---|---|
| Name: | David A. Weiner |
| Sex: | Male |
| Birth date: | June 14, 1994 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x861 |
| Driver's license number and issuing state: | xxxxx273, Texas |

| | |
|---|---|
| Name: | Daniel S. Weiner |
| Sex: | Male |
| Birth date: | March 11, 1996 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x039 |
| Driver's license number and issuing state: | xxxxx996Texas |

Certified Document Number: 51817895 - Page 3 of 41

Certified Document Number: 51817895 - Page 4 of 41

| Name: | Michael H. Weiner |
|---|---|
| Sex: | Male |
| Birth date: | November 1, 1999 |
| Home state: | Texas |
| Social Security number: | xxx-xx-x735 |
| Driver's license number and issuing state: | N/A |

The Court finds no other children of the marriage are expected.

*Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner are appointed Joint Managing Conservators of the following children: David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

IT IS ORDERED that, at all times, Katherine F. Weiner, as a parent joint managing conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.	the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.	the right of access to medical, dental, psychological, and educational records of the children;

4.	the right to consult with a physician, dentist, or psychologist of the children;

5.	the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.	the right to attend school activities;

7.	the right to be designated on the children's records as a person to be notified in case of an emergency;

8.	the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.	the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Andy I. Weiner, as a parent joint managing conservator, shall have the following rights:

1.	the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.	the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.	the right of access to medical, dental, psychological, and educational records of the children;

4.	the right to consult with a physician, dentist, or psychologist of the children;



Certified Document Number: 51817895 - Page 5 of 41

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Katherine F. Weiner and Andy I. Weiner,

as parent joint managing conservators, shall each have the following duties:

1.      the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.      the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.   WARNING:   A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, Katherine F.



Weiner, as parent joint managing conservator, shall have the following rights and duties:

     1.     the duty of care, control, protection, and reasonable discipline of the children;

     2.     the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

     3.     the right to consent for the children to medical and dental care not involving an invasive procedure; and

     4.     the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, Andy I. Weiner, as parent joint managing conservator, shall have the following rights and duties:

     1.     the duty of care, control, protection, and reasonable discipline of the children;

     2.     the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

     3.     the right to consent for the children to medical and dental care not involving an invasive procedure; and

     4.     the right to direct the moral and religious training of the children.

IT IS ORDERED that Katherine F. Weiner, as a parent joint managing conservator, shall have the following rights and duty:

     1.     the exclusive right to establish the primary residence and legal domicile of the children in Harris County, Texas or a county that is contiguous to Harris County, Texas, subject to the provisions hereinafter.

     2.     the exclusive right to consent to medical, dental, and surgical

Certified Document Number: 51817895 - Page 7 of 41



treatment involving invasive procedures;

3. the exclusive right to consent to psychiatric and psychological treatment of the children;

4. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the exclusive right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6. the exclusive right to consent to marriage and to enlistment in the armed forces of the United States;

7. the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education;

8. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

10. the exclusive duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parent.

IT IS ORDERED that Andy I. Weiner, as a parent joint managing conservator, shall have the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education, and in this regard, the Court finds that Andy I. Weiner has agreed for each child to remain at the Kinkaid School through each child's graduation from such School, and that there are other more specific provisions herein further delineating the obligation of

Andy I. Weiner to pay for the Kinkaid School for the children.

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. IT IS ORDERED that, so long as the principal residence of Andy I Weiner is in either Harris County, Texas or a county that is contiguous to Harris County, Texas, the primary residence of the children shall be in Harris County, Texas or a county that is contiguous to Harris County, Texas, and the parties shall not remove the children from such designated area for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

IT IS ORDERED that the following custodial accounts now held by the parties for the parties' children are placed under the sole and exclusive control of Katherine F. Weiner:

1.    Fidelity UTMA Acct Ending in #4270; and

2.    Fidelity UTMA Acct Ending in #6843.

Unless these documents have been previously executed, Andy I. Weiner is

Weiner – Agreed Final Decree of Divorce                              Page 9



ORDERED to appear in the law offices of Randall B. Wilhite at 4265 San Felipe Street, Suite 1400, Houston, Texas 77027, at 2:00 p.m. on March 30, 2012, and to execute, have acknowledged, and deliver to Katherine F. Weiner all documents necessary to effectuate Katherine F. Weiner's sole and exclusive control of the accounts.

IT IS ORDERED that the following children's trusts are held in irrevocable trusts, which shall continue as written, and that each party will take any and all necessary steps to provide full co-trustee ownership and control of each such account including the placing of such accounts in a deposit and withdrawal agreement requiring both co-trustees to disburse funds; also known as an "and" account:

1.    Fidelity Trust Acct Ending in #8634 (David);

2.    Fidelity Trust Acct Ending in #3958 (Daniel); and

3.    Fidelity Trust Acct Ending in #1942 (Michael).

*Possession and Access*

1.    *Modified Possession Order*

The Court finds that the parties have entered into a Mediated Settlement Agreement providing for a non-expanded, non-standard possession order as more specifically herein provided.

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Modified Possession Order. IT IS ORDERED that this Modified Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this

Weiner – Agreed Final Decree of Divorce                              Page 10



Modified Possession Order.   IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Modified Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Modified Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Modified Possession Order.

©    Except as otherwise expressly provided in this Modified Possession Order, Andy I. Weiner shall have the right to possession of the child as follows:

1.    Weekends -

On weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday, provided that upon 14 days' advance written notice of an out-of-town trip, Andy I. Weiner may pick up at 4 p.m. one time every 60 days.

2.    Thursdays - On Thursday of each week during the regular school term, beginning at 4:00 p.m. and ending at 8:00 p.m.

3.    Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at 5:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 5:00 p.m. on the day before school resumes after that vacation.



4.    Extended Summer Possession by Andy I. Weiner -

With Written Notice by April 1 - On or before April 1st of each year, Andy I. Weiner shall designate one period of 14 consecutive days (which may be exercised in 2 one week periods of possession, separated by no less than 14 days), beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than 7 days before school resumes for the next school year, during which he shall have his summer periods of possession with the children. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for Andy I. Weiner, it is expressly ORDERED that Katherine F. Weiner shall have a superior right of possession of the child as follows:

1.    Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at 5:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.    Summer Weekend Possession by Katherine F. Weiner - On or before April 15th of each year, Katherine F. Weiner shall designate 14 consecutive days, or at her election, two 7 day periods beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than 7 days before school resumes for the next school year, during which she will have her summer period(s) of possession with the children, provided the dates do not conflict with Father's Day weekend or the summer periods designated by Andy I. Weiner. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

(d)    Holidays

Notwithstanding the weekend and Thursday periods of possession of Andy I. Weiner, Katherine F. Weiner and Andy I. Weiner shall have the right to possession of the child as follows:

1.     Christmas Holidays in Even-Numbered Years - In even-numbered years, Andy I. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and Katherine F. Weiner shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

2.     Christmas Holidays in Odd-Numbered Years - In odd-numbered years, Katherine F. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and Andy I. Weiner shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.     Thanksgiving in Odd-Numbered Years - In odd-numbered years, Andy I. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4.     Thanksgiving in Even-Numbered Years - In even-numbered years, Katherine F. Weiner shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5.     Father's Day - Andy I. Weiner shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if Andy I. Weiner is not otherwise entitled under this Modified Possession Order to present possession of the child, he shall pick up the child from Katherine F. Weiner's residence and return the child to that same place.

6.     Mother's Day - Katherine F. Weiner shall have the right to

possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if Katherine F. Weiner is not otherwise entitled under this Modified Possession Order to present possession of the child, she shall pick up the child from Andy I. Weiner's residence and return the child to that same place.

(e)     Undesignated Periods of Possession

Katherine F. Weiner shall have the right of possession of the child at all other times not specifically designated in this Modified Possession Order for Andy I. Weiner.

(f)     General Terms and Conditions

Except as otherwise expressly provided in this Modified Possession Order, the terms and conditions of possession of the child are as follows:

1.     Surrender of Child by Katherine F. Weiner - Katherine F. Weiner is ORDERED to surrender the child to Andy I. Weiner at the beginning of each period of Andy I. Weiner's possession at the residence of Katherine F. Weiner.

2.     Return of Child by Andy I. Weiner - Andy I. Weiner is ORDERED to return the child to the residence of Katherine F. Weiner at the end of each period of possession.

3.     Surrender of Child by Andy I. Weiner - Andy I. Weiner is ORDERED to surrender the child to Katherine F. Weiner, if the child is in Andy I. Weiner's possession or subject to Andy I. Weiner's control, at the beginning of each period of Katherine F. Weiner's exclusive periods of possession, at the place designated in this Modified Possession Order.

4.     Return of Child by Katherine F. Weiner - Katherine F. Weiner is ORDERED to return the child to Andy I. Weiner, if Andy I. Weiner is entitled to possession of the child, at the end of each of Katherine F. Weiner's exclusive periods of possession, at the place designated in this Modified Possession Order.

Certified Document Number: 51817895 - Page 14 of 41

5. Notwithstanding any other provision herein to the contrary, any child with a driver's license shall be permitted to drive himself to and from each period of possession and during each period of possession; however, any child without a driver's license (which at this time includes Daniel Weiner and Michael Weiner) is ORDERED to ride only with Andy I. Weiner.

6. Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

7. Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

8. Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

9. Written Notice - Written notice shall be made to the other parent via e-mail correspondence to the other parent's e-mail address, including all notices from one parent to the other of any changes in a party's e-mail address. Each party is ORDERED to provide any change in the e-mail address designated by each such party as the one to be used for notification by the other party within 7 days of a change thereof.

This concludes the Modified Possession Order.

2. *Provisions for Jewish Religious Holidays*

In addition to the holiday periods of possession set forth in the Modified Possession Order, Andy I. Weiner and Katherine F. Weiner shall share the Jewish holidays as set forth below:

a. Rosh Hashanah - Even-Numbered Years. In all

even-numbered years Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Rosh Hashanah and ending at 9:00 p.m. on the same day; Katherine F. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Rosh Hashanah.

b.    Rosh Hashanah - Odd-Numbered Years.    In all odd-numbered years Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Rosh Hashanah and ending at 9:00 p.m. on the same day; Andy I. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Rosh Hashanah.

c.    Yom Kippur - Odd-Numbered Years - In all odd-numbered years, Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Yom Kippur and ending at 9:00 p.m. on the same day; Andy I. Weiner shall have possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Yom Kippur.

d.    Yom Kippur - Even-Numbered Years - In all even-numbered years, Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first day of Yom Kippur and ending at 9:00 p.m. on the same day; Katherine F. Weiner shall have

Certified Document Number: 51817895 - Page 16 of 41

possession of the children from 10:00 a.m. until 8:00 p.m. on the first day of Yom Kippur.

e. Passover - Even-Numbered Years - In all even-numbered years, Andy I. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first full day of Passover and ending at 9:00 p.m. on the same day.

f. Passover - Odd-Numbered Years - In all odd-numbered years, Katherine F. Weiner shall have possession of the children for a period beginning at 5:00 p.m. on the night before the first full day of Passover and ending at 9:00 p.m. on the same day.

3. *Duration*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

4. *Noninterference with Possession*

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

5. *Termination of Orders*



Certified Document Number: 51817895 - Page 17 of 41

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of Katherine F. Weiner to Andy I. Weiner unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that Andy I. Weiner is obligated to pay and shall pay to Katherine F. Weiner child support of two thousand two hundred fifty dollars ($2,250) per month, with the first payment being due and payable on ~~March~~ *April* 1, 2012, and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. any child marries;

3. any child dies;

4. the parent-child relationship is terminated based on genetic testing that excludes the obligor as the child's genetic father;

5. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

Certified Document Number: 51817895 - Page 18 of 41

6.     any child's disabilities are otherwise removed for general purposes.

Thereafter, Andy I. Weiner is ORDERED to pay to Katherine F. Weiner child support of one thousand eight hundred seventy-five dollars ($1,875) per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand eight hundred seventy-five dollars ($1,875) due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for another child.

Thereafter, Andy I. Weiner is ORDERED to pay to Katherine F. Weiner child support of one thousand five hundred dollars ($1,500) per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand five hundred dollars ($1,500) due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for another child.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that Andy I. Weiner's obligation to pay child support to Katherine F. Weiner shall not terminate but shall continue for as long as the child is enrolled-

1.     under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under

Weiner - Agreed Final Decree of Divorce                    Page 19

section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.     on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

Withholding from Earnings

IT IS ORDERED that any employer of Andy I. Weiner shall be ordered to withhold from earnings for child support from the disposable earnings of Andy I. Weiner for the support of David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of Andy I. Weiner by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of Andy I. Weiner, and it is hereby ORDERED that Andy I. Weiner pay the balance due directly to the state



disbursement unit specified below.

On this date the Court authorized the issuance of an Order/Notice to Withhold Income for Child Support.

Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to Katherine F. Weiner for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

Change of Employment

IT IS FURTHER ORDERED that Andy I. Weiner shall notify this Court and Katherine F. Weiner by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of Andy I. Weiner and the name and address of his current employer, whenever that information becomes available.

Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D



agency, the friend of the Court, a domestic relations office, Katherine F. Weiner, Andy I. Weiner, or an attorney representing Katherine F. Weiner or Andy I. Weiner, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

<u>Suspension of Withholding from Earnings</u>

The Court finds that good cause exists that no order to withhold from earnings for child support should be delivered to any employer of Andy I. Weiner as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to Katherine F. Weiner. For the purpose of this provision, a delinquency has occurred if Andy I. Weiner has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to Katherine F. Weiner, the clerk shall deliver the order to withhold earnings as provided above.

ACCORDINGLY, IT IS ORDERED that, as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to Katherine F. Weiner, all payments shall be made through the state disbursement unit and thereafter

Weiner - Agreed Final Decree of Divorce                    Page 22

Certified Document Number: 51817895 - Page 22 of 41

promptly remitted to Katherine F. Weiner for the support of the children. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to Katherine F. Weiner, all payments shall be made in accordance with the order to withhold earnings as provided above.

### Kinkaid School Tuition

IT IS ORDERED that Andy I. Weiner shall pay, as child support, through graduation from high school, each child's tuition, required fees, required books, lunches at school and other fees associated with the children's attendance at the Kinkaid School, as billed directly by the school to Andy I. Weiner.

*Health Care*

1.     IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner shall each provide medical support for each child as set out in this order as additional child support for as long as the Court may order Katherine F. Weiner and Andy I. Weiner to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day Katherine F. Weiner and Andy I. Weiner's actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that Katherine F. Weiner and Andy I. Weiner are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent

Certified Document Number: 51817895 – Page 23 of 41

to fully comply with those obligations before that date.

2. Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which Andy I. Weiner is responsible under a medical support order that does not exceed 9 percent of Andy I. Weiner 's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:



a.   to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b.   to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c.   to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3.   Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the children through Andy I. Weiner's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4.   Provision of Health-Care Coverage -



As additional child support, through four (4) months past high school graduation for each child and for so long as child support is payable for a child, Andy I. Weiner is ORDERED to provide health insurance for each such child with a deductible of no more than $1,000.00 per year, per child, and if it is higher, as child support, Andy I. Weiner is ORDERED to pay 100% of all deductible amounts to a point where such deductible amount reaches that level. For example, if the deductible for the children is $7,500, Andy I. Weiner shall pay 100% of the fist $6,500 in uninsured health care expenses of the children.

Beginning on the first day of the first month following the rendition of the divorce, and pursuant to section 154.183© of the Texas Family Code, IT IS ORDERED that the reasonable and necessary uninsured medical expenses of the children be paid as follows:

a.       Andy I. Weiner shall be responsible for payment of 70% of each child's deductible;

b.       after the deductible has been met, Katherine F. Weiner shall pay for 30% and Andy I. Weiner shall pay for 70% of all uninsured health care expenses for each child's health care not covered by the children's health insurance policy.

c.       Notwithstanding the foregoing, any uninsured health care expenses not applied toward the deductible shall be paid 30% by Katherine F. Weiner and 70% by Andy I. Weiner.

d. Unless approved in advance by both parents, any party incurring out of network expenses, except in the case of a medical emergency, shall pay 100% of such expense.

Andy I. Weiner is ORDERED to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services.

Andy I. Weiner is ORDERED to maintain such health insurance in full force and effect on each child who is the subject of this suit as long as child support is payable for that child. Andy I. Weiner is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of his employment or other disqualification from the group insurance. Andy I. Weiner is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

Andy I. Weiner is ORDERED to furnish Katherine F. Weiner a true and correct copy of the health insurance policy or certification and a schedule of benefits within 10 days of the signing of this order. Andy I. Weiner is ORDERED to furnish Katherine F. Weiner the insurance cards and any other forms necessary for use of the insurance within 10 days of the signing of this order. Andy I. Weiner

Weiner - Agreed Final Decree of Divorce                    Page 27



is ORDERED to provide, within three days of receipt by him, to Katherine F. Weiner any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that Katherine F. Weiner paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if Andy I. Weiner is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of Katherine F. Weiner or others as authorized by law.

The party who incurs a health-care expense on behalf of a child is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this suit that are incurred while child support is payable for that child.

Weiner – Agreed Final Decree of Divorce                    Page 28

Certified Document Number: 51817895 - Page 28 of 41

5.    Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6.    Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like.   Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required.   Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion

Certified Document Number: 51817895 - Page 29 of 41

of that bill.

IT IS FURTHER ORDERED that no surgical procedure, other than in an emergency or one covered by insurance, shall be performed on the child unless the parent consenting to surgery has first consulted with at least two medical doctors, both of whom state an opinion that the surgery is medically necessary. IT IS FURTHER ORDERED that a parent who fails to obtain the required medical opinions before consent to surgery on the child shall be wholly responsible for all medical and hospital expenses incurred in connection therewith and not covered by insurance.

7.      Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within thirty days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children.   In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option , may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company.   Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, Katherine F.

Weiner is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.      Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as ·reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who paid those expenses.   IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.      WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN,



WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

*Miscellaneous Child Support Provisions*

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of Andy I. Weiner and shall not terminate on the death of Andy I. Weiner. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of Andy I. Weiner's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of Katherine F. Weiner to Andy I. Weiner unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of Katherine F. Weiner but continues as an obligation to



David A. Weiner, Daniel S. Weiner and Michael H. Weiner.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas

Family Code is as follows:

| | |
|---|---|
| Name: | Katherine F. Weiner |
| Social Security number: | xxx-xx-x324 |
| Driver's license number: | xxxxx616 |
| | Issuing state: Texas |
| Current residence address: | 8719 Stablecrest, Houston, TX 77024 |
| Mailing address: | 8719 Stablecrest, Houston, TX 77024 |
| Home telephone number: | 832-725-4340 |
| Name of employer: | N/A |

Certified Document Number: 51817895 - Page 33 of 41

Address of employment:     N/A
Work telephone number:     N/A

Name:                                          Andy I. Weiner
Social Security number:      xxx-xx-x888
Driver's license number                                    xxxxx486
                                                           Issuing      state:
                                                           Texas
Current residence address:  1200 Post Oak Blvd., Apt. 907, Houston, TX
                            77056
Mailing address:                              1200 Post Oak Blvd., Apt. 907,
                            Houston, TX 77056
Home telephone number:      832 816 4666
Name of employer:           Weiner Development
Address of employment:      520 North Post Oak Blvd., Houston, Texas
Work telephone number:      (713) 623-0188

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY

EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF

ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING

ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS

OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE

NUMBER.  THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED

CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER

PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE

THE 60TH DAY BEFORE THE INTENDED CHANGE.  IF THE PARTY DOES

NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT

TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE

NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE

Certified Document Number: 51817895 - Page 34 of 41

DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by e-mail correspondence to the party's e-mail address. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 1115 Congress, Houston, Texas 77002. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S,

Weiner - Agreed Final Decree of Divorce                         Page 35

P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Certified Document Number: 51817895 - Page 36 of 41

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT. FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Change of Petitioner's Name*

IT IS ORDERED AND DECREED that Katherine F. Weiner's name is changed to Katherine Rose Warren.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court rendered on August 24, 2011, except as otherwise stated herein with regard to provisions for sale of the home.

*Discharge from Discovery Retention Requirement*

Weiner - Agreed Final Decree of Divorce                    Page 37



Certified Document Number: 51817895 - Page 37 of 41

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Decree Acknowledgment*

Petitioner, Katherine F. Weiner, and Respondent, Andy I. Weiner, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to

Certified Document Number: 51817895 - Page 38 of 41

hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

Date of Judgment

SIGNED on 3/29/2012

_____
JUDGE PRESIDING

FILED
Chris Daniel
District Clerk

MAR 29 2012
Time:_____2:48Pm_____
Harris County, Texas
By_____ALS_____
Deputy

Certified Document Number: 51817895 - Page 40 of 41

APPROVED AS TO FORM ONLY:

FULLENWEIDER WILHITE
4265 San Felipe Street
Suite 1400
Houston, Texas 77027
Tel: (713) 624-4100
Fax: (713) 624-4141

By: _____
Randall B. Wilhite
Attorney for Katherine F. Weiner
State Bar No. 21476400

JENKINS KAMIN, LLP
Two Greenway Plaza, Suite 600
Houston, Texas 77046
713-600-5500 Telephone
713-600-5501 Telefax

By: _____
Joan F. Jenkins
Attorney for Andy I. Weiner
State Bar Number 10621900

APPROVED AND CONSENTED TO
AS TO BOTH FORM AND SUBSTANCE:

_____
Katherine F. Weiner, Petitioner

_____
Andy I. Weiner, Respondent

Weiner - Agreed Final Decree of Divorce                Page 41

Certified Document Number: 51817895 - Page 41 of 41



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 4, 2012

Certified Document Number:        51817895 Total Pages:  41

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

Exhibit C

No. _____

| IN RE: | § | IN THE PROBATE COURT |
|---|---|---|
| | § | |
| | § | NO. _____ |
| DAVID ABRAHAM WEINER | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF KATHERINE F. WARREN

Before me, the undersigned notary, on this day personally appeared KATHERINE F. WARREN, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. My name is Katherine F. Warren. I am over eighteen years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. On December 13, 1994, Andy I. Weiner and I created the DAVID ABRAHAM WEINER 1994 TRUST (the "Trust") for the benefit of our son, David W. Warren, formerly known as David A. Weiner. Andy I. Weiner and I are the trustors and co-trustees of the Trust.

3. The purpose of the Trust is to provide for the best interests of our son, David. A primary purpose of the Trust is to fund his educational costs. I believe that it is in David's best interest to receive a quality education.

4. David is enrolled as a freshman at Rice University in Houston, Texas. He began attending classes in August 2013.

5. Andy I. Weiner and I were granted a divorce on March 29, 2012. As part of the divorce decree, the trust was to continue as provided under the trust agreement. Under the trust agreement, Andy I. Weiner and I are required to act jointly as co-trustees.

1

6. Although David is the primary beneficiary of the Trust, he applied for financial aid with Rice University prior to the start of the Fall 2013 semester. David was denied financial aid because of the Trust. The financial aid department of Rice University explained that where students are the beneficiaries of trusts like the DAVID ABRAHAM WEINER 1994 TRUST, that the school assumes that the trust funds are intended for the payment of college expenses.

7. David received a tuition bill from Rice University in July 2013. I wrote a check from the Trust's Fidelity account for $20,000 or around August 1, 2013. The check was returned to Rice University unpaid because Andy I. Weiner requested that Fidelity not honor the check.

8. After the check was returned to Rice University unpaid, David received a letter from the university advising him that his tuition payment was overdue. I requested that Fidelity wire $20,000 to David, with which he paid his tuition. It took approximately six weeks for the tuition payment to be credited to David's account with Rice University.

9. I believe that it is detrimental to the best interests of David for Andy I. Weiner and I to continue acting as co-trustees of the Trust. Our disagreements regarding distributions of David's behalf could seriously inhibit his ability to receive a wonderful education.

10. David is an intelligent adult and is capable of using the Trust assets for his best interests. I believe that David has shown maturity beyond most other college students his age. It would be in his best interests to be given the Trust assets for his college tuition, rather than to face the uncertainty inherent in the current situation.

Katherine F. Warren

2

Sworn to and subscribed before me by Katherine F. Warren on _9·30_____, ____ 2013.

ANGIE K BYRNES
My Commission Expires
September 16, 2015

Notary Public in and for the State of Texas

3



# HARRIS COUNTY PROBATE COURT NUMBER FOUR
## FAX (713) 368-7171
## PHONE (713) 368-6767

FAX TRANSMISSION

To:      Sarah Patel Pacheco
Via facsimile 713-658-1921

To:      Carol Cantrell
Via facsimile 713-333-0550

Re:      *In Re: Michael Henry Weiner 2000 Trust*; Cause No. 425578; In Probate
Court No. 4; Harris County, Texas
*In Re: Daniel Stephen Weiner 1996 Trust*; Cause No. 425576; In Probate
Court No. 4; Harris County, Texas

Date:    11-21-13

Pages:  5

**Note:**    **See attached signed Orders.**

**EXHIBIT**

TAB I

exhibitsticker.com

NO. 425,578

| IN RE: | § | IN PROBATE COURT |
| | § | |
| MICHAEL HENRY WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 2000 TRUST | § | HARRIS COUNTY, TEXAS |

## ORDER ON PLEA TO THE JURISDICTION

On this day, the Court considered the Plea to the Jurisdiction, filed by Defendant Andy

Weiner, co-trustee of the Michael Henry Weiner 2000 Trust, and after considering the pleadings,

evidence and arguments of counsel, the Court finds that the Plea to the Jurisdiction should be

GRANTED in its entirety. It is therefore,

ORDERED that the Plea to the Jurisdiction is GRANTED in its entirety. It is further,

ORDERED that, due to jurisdictional defects, this case is dismissed.

Signed this __21__ day of __November__, 2013.

_Christine Butts_
JUDGE PRESIDING

077344/000001
376 - 954996v1

APPROVED AS TO FORM:

CRAIN, CATON & JAMES, P.C.

By:_____
   SARAH PATEL PACHECO
   (TBA #00788164)
   KATHLEEN TANNER BEDUZE
   (TBA #24052205)
   1401 McKinney, Suite 1700
   Houston, Texas 77010
   (713) 658-2323
   Facsimile (713) 658-1921

**ATTORNEYS FOR ANDY WEINER**

2

NO. 425,576

| IN RE: | § | IN PROBATE COURT |
| | § | |
| DANIEL STEPHEN WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

## ORDER ON PLEA TO THE JURISDICTION

On this day, the Court considered the Plea to the Jurisdiction, filed by Defendant Andy Weiner, co-trustee of the Daniel Stephen Weiner 1996 Trust, and after considering the pleadings, evidence and arguments of counsel, the Court finds that the Plea to the Jurisdiction should be GRANTED in its entirety. It is therefore,

ORDERED that the Plea to the Jurisdiction is GRANTED in its entirety. It is further,

ORDERED that, due to jurisdictional defects, this case is dismissed.

Signed this ___21___ day of __November__, 2013.

_Christine Butts_
JUDGE PRESIDING

077344/000001
376 - 954996v1

APPROVED AS TO FORM:

CRAIN, CATON & JAMES, P.C.


By:_____
SARAH PATEL PACHECO
(TBA #00788164)
KATHLEEN TANNER BEDUZE
(TBA #24052205)
1401 McKinney, Suite 1700
Houston, Texas 77010
(713) 658-2323
Facsimile (713) 658-1921

**ATTORNEYS FOR ANDY WEINER**

2

077344/000001
376 - 954996v1

No. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | |
|   1994 TRUST | § | |
| | § | NO. 4 |
| and | § | |
| | § | |
| DANIEL W. WARREN, | § | |
|   PETITIONER-INTERVENOR | § | HARRIS COUNTY, TEXAS |

### PETITIONERS' NOTICE OF NONSUIT AGAINST KATHERINE WARREN

David W. Warren and Daniel W. Warren, Petitioners, hereby give written notice to this Court and to all parties to this suit that they are taking a nonsuit of their entire case against Katherine Warren, Respondent, in Petitioner's Second Amended Original Petition filed March 13, 2014 and Petitioner's Original Petition in Intervention filed April 22, 2014, effective immediately on the filing of this notice on August 7, 2014.

Respectfully submitted,

CANTRELL & CANTRELL, PLLC

By: /s/ Carol A. Cantrell

    Carol A. Cantrell, Attorney for Petitioners
    State Bar No.: 24043592
    Meredith N. McIver
    State Bar No.: 24078974
    Cantrell & Cantrell, PLLC
    3700 Buffalo Speedway, Suite 520
    Houston, Texas 77098
    Telephone: (713) 333-0555
    Facsimile: (713) 333-0550
    ccantrell@cctaxlaw.com

EXHIBIT

TAB J

exhibitsticker.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been duly served by electronic delivery or facsimile on all parties and counsel of record indicated below, on August 7, 2014.

Sarah Patel Pacheco
Kathleen Tanner Beduze
Crain Caton & James
Five Houston Center,
1401 McKinney, 17th Floor
Houston, TX 77010
spacheco@craincaton.com
713-658-1921 (facsimile)
ATTORNEY FOR RESPONDENT ANDY I. WEINER


Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, TX 77010
tom@lawcl.com
713-654-8115 (facsimile)
ATTORNEY FOR RESPONDENT KATHERINE R. WARREN


/s/  Carol Cantrell
CAROL A. CANTRELL

No. 425,577

| IN RE: | § | IN THE PROBATE COURT |
|--------|---|----------------------|
| | § | |
| DAVID ABRAHAM WEINER 1994 TRUST | § | |
| | § | NO. 4 |
| and | § | |
| | § | |
| DANIEL W. WARREN, PETITIONER-INTERVENOR | § | HARRIS COUNTY, TEXAS |

## RELEASE

I, David W. Warren and Daniel W. Warren, release and discharge Katherine R. Warren, both individually and as Trustee, from any and all claims, demands, lawsuits, actions, and liabilities or responsibilities of whatsoever kind or nature, that would otherwise be imposed on the trustee and which may arise out of or in connection with the trusteeship of the David Abraham Weiner 1994 Trust and the Daniel Steven Weiner 1996 Trust, including liability for any past violations.

I have read and understand the facts and causes of action set forth in the pleadings styled In Re: David Abraham Weiner 1994 Trust and intend this release as a full and complete release in conformity with the provisions of Texas Property Code Section 114.005. I further understand that by signing this release, I voluntarily surrender certain legal rights.

_____    7/06/14
David W. Warren                    Date

_____    7/6/14
Daniel W. Warren                   Date

Agreed to and accepted:

_____    7/6/14
Katherine R. Warren                Date

KW00510

FILED
4/22/2014 6:38:02 PM
Stan Stanart
County Clerk
Harris County

No. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NO. 4 |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## ORIGINAL PETITION IN INTERVENTION

Intervenor Daniel Steven Weiner (Daniel) respectfully files this Petition in Intervention. By this filing, Daniel appears in this case as a plaintiff seeking removal of Andy I. Weiner as Trustee of the Daniel Steven Weiner 1996 Trust and also seeking damages for breach of fiduciary duty.

## PARTIES

1. Intervenor Daniel S. Weiner is an individual and beneficiary of the Daniel Steven Weiner 1996 Trust (Daniel's Trust). Daniel Weiner resides in Harris County, Texas at 1226 Muirfield, Houston, TX 77055. The last three digits of intervenor's driver's license number are 996. The last three digits of Intervenor's Social Security number are 039.

2. Plaintiff, David W. Warren, is an individual and beneficiary of the David Abraham Weiner 1994 Trust (David's Trust). David resides in Harris County, Texas at 1226 Muirfield, Houston, TX 77055. Plaintiff's attorney Carol A. Cantrell, already has a copy of this petition because she also represents Intervenor, Daniel S. Weiner.

3. Respondent, Andy I. Weiner, an individual, has appeared and answered. A copy of this petition will be forwarded to Sarah Patel-Pacheco, attorney of record for Respondent Weiner, at 1400 McKinney, 17th Floor, Houston, TX 77010.

1

**EXHIBIT**

**TAB K**

exhibitsticker.com

4. Respondent Katherine R. Warren, an individual, has appeared and answered. A copy of this petition will be forwarded to Thomas R. Conner, attorney of record for Respondent Warren, Conner & Lindamood, P.C., 1221 Lamar, Suite 1010, Houston, TX 77010.

## VENUE

5. Venue of this proceeding is proper in this Court pursuant to Texas Trust Code § 115.002(b).

## THE ORIGINAL LAWSUIT

6. Plaintiff David W. Warren filed an Original Petition for Termination of Trust on September 30, 2013 seeking to terminate the David Abraham Weiner 1994 Trust. Respondents Andy I. Weiner and Katherine R. Warren were joined as necessary parties under Texas Property Code § 115.011 because they are trustees of the trust.

7. On October 23, 2013, Respondent Weiner filed an answer to plaintiff's original petition asserting a general denial as well as affirmative defenses of res judicata, collateral estoppel, the doctrine of unclean hands, and the terms of the trust.

8. On November 1, 2013, plaintiff David Warren filed a First Amended Original Petition for Modification of Trust and sought to remove both trustees and appoint himself as trustee rather than to terminate the trust.

9. On January 15, 2014 Respondent Warren filed an answer to plaintiff's First Amended Original Petition for Modification of Trust and asserted a general denial.

10. On March 13, 2014 David W. Warren filed his Second Amended Original Petition seeking to remove only Andy I. Weiner as trustee and obtain damages against Andy I. Weiner for breach of fiduciary duty by failing to prudently invest David's Trust funds and borrowing substantially all of David's Trust's funds, which is expressly prohibited by the

Texas Trust Code § 113.052 and the terms of the trust instrument.

**INTERVENOR'S INTEREST IN LAWSUIT**

11. Daniel S. Weiner has a justiciable interest in this lawsuit because he will be harmed if the Court finds that Andy I. Weiner did nothing wrong by borrowing substantially all of the funds from David's Trust on April 9, 2009 for his own personal use and benefit while he was trustee. Andy I. Weiner also borrowed substantially all of the funds from Daniel's Trust on the same day in the same transaction for Respondent Weiner's his own personal use and benefit without interest or collateral while he was trustee of Daniel's Trust. The trust instruments of both David's Trust and Daniel's Trust expressly prohibit borrowing by the trustee.

12. Daniel S. Weiner will also be harmed in this lawsuit if the Court finds that Andy I. Weiner did nothing wrong by maintaining the assets of David's Trust in cash for 3.5 years while the Dow Jones Industrial Average, the S&P 500 Index, and the NASDAQ advanced by 72 to 203 percent during that time period. Andy I. Weiner also maintained the assets of Daniel's Trust in cash during that same time period.

13. Daniel S. Weiner will also be harmed in this lawsuit if the Court finds that Andy I. Weiner did nothing wrong by investing more than half of David's Trust portfolio in Weiners Stores, Inc. when the company had a history of bankruptcy and was ultimately sold for a complete loss. Andy I. Weiner also invested over 65 percent of Daniel's Trust portfolio in Weiner Stores, Inc. during the same time period and sold the stock for a complete loss.

14. Daniel S. Weiner will also be harmed in this lawsuit if the Court finds that Andy I. Weiner did nothing wrong by failing to diversify David's Trust portfolio and consequently selling the stocks for a significant loss. Andy I Weiner also failed to diversify Daniel's Trust

Daniel's Trust by investing in the same stocks (Autozone Inc., Kohls Corp, Lowes Companies, Whole Foods Market, and 99 Cents Only Stores) as David's Trust and selling them at the same time for a loss of $30,586.

15. Because Daniel Weiner challenges the very same transactions that David Warren is already challenging, his claims arise from the same transactions or occurrences and involve common questions of law and fact with David's claims – namely, whether the actions of Andy I. Weiner in failing to prudently invest the trust assets and borrowing nearly all of the trust corpus for Respondent Weiner's own benefit constitute breaches of fiduciary duty. The outcome of David W. Warren's case will substantially affect the interest of Daniel S. Weiner because they complain of the same transactions by the same trustee during the same time period pertaining to identical trusts with identical assets.

16. A party has a justiciable interest in a lawsuit when its interests will be affected by the litigation. {*In re Union Carbide Corp., 273 S.W.3d 152, 155 (Tex. 2008); Law Offices of Windle Turley, P.C. v. Ghiasinejad, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.).*} A party may intervene in a suit if it could have brought all or part of the same suit in its own name. {*In re Union Carbide, 273 S.W.3d at 155; Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990); E & B Carpet Mills v. State, 776 S.W.2d 286, 290 (Tex. App.—Austin 1989, writ dism'd).*}

**FACTS**

17. Intervenor Daniel S. Weiner is the beneficiary of the Daniel Steven Weiner 1996 Trust (Daniel's Trust), an irrevocable inter vivos trust created by Respondents (trustors) Warren and Weiner on March 20, 1996. A true and correct copy of the trust agreement is attached hereto as "Exhibit A" and is incorporated for all purposes.

18. Respondents Andy I. Weiner and Katherine R. Weiner, are Trustees of the Trust. Respondent Weiner's sister Bayle Weiner Drubel is successor trustee in the event that both Respondents Weiner and Warren cease to serve.

19. Daniel S. Weiner was born on March 18, 1996 and is an adult.

20. The primary purpose of Daniel's Trust is to pay for Daniel's education. He is presently a senior student at Kinkaid High School in Houston, Texas. He has accepted enrollment at Rice University in Houston, Texas to attend classes in the fall of 2014.

21. Daniel's Trust owns marketable securities worth approximately $124,983 as of January 31, 2014. The Trust assets came from various sources including Daniel's own income tax refunds, birthday and Hanukkah gifts, and checks payable to the Custodian of his Uniform Gifts to Minors Account. Respondent Weiner "endorsed" these checks over to Daniel's Trust without Daniel's knowledge.

22. The Trustee is authorized to make discretionary distributions to the beneficiary as are in the beneficiary's best interest. The beneficiary may withdraw the entire Trust corpus upon reaching age 21.

23. On March 25, 2009, Respondent Andy I. Weiner liquidated the entire portfolio of Daniel's Trust and incurred a capital loss of $30,586.

24. On April 9, 2009 Respondent Weiner borrowed $90,959.38 from Daniel's Trust, leaving $1,000 in the trust. On the same day Respondent Weiner borrowed $126,641.40 from David's Trust and $82,474.40 from his other son Michael Weiner's trust, leaving only $1,000 in each of those trusts. In all, Respondent borrowed $300,075.18 from his sons' trusts for his own personal use and benefit while he was trustee.

25. On December 19, 2013, Daniel S. Weiner demanded an accounting of his trust under Texas Trust Code § 113.151-152. Respondent Weiner has ignored his demand.

26. In 1999, Daniel's Trust purchased 34,000 shares of Wieners Stores, Inc. stock, in addition to the 18,000 shares it already owned. On August 31, 1999, Weiners Stores, Inc. accounted for over 65 percent of Daniel's Trust's portfolio.

27. Respondent Weiner was an Executive Vice President of Weiner Stores, Inc. until 1995 when it declared Chapter 11 bankruptcy. Weiners Stores emerged from bankruptcy on August 26, 1997 and filed for Chapter 11 bankruptcy again on October 16, 2000.

28. On December 6, 2001, Daniel's Trust sold 52,000 shares of Wieners Stores, Inc. for $2/10^{ths}$ of a cent per share for a total loss of $28,762.44.

29. From July 1, 1999 to March 25, 2009 Daniel's Trust invested in only five to eight individual stocks in a portfolio worth less than $90,000.

30. From March 26, 2009 to September 11, 2012 Daniel's Trust's account at Fidelity consisted entirely of cash. During this time the trust earned $99.13 of interest income, while the Dow Jones Industrial Average increased by 72 percent, the S&P 500 Index increased by 79 percent, and the NASDAQ Composite increased by over 203 percent.

31. Daniel S. Weiner did not discover Respondent Weiner's borrowing or failure to prudently invest his Trust funds until discovery began in David Warren's case. Daniel Weiner was a minor when the borrowings and other breaches occurred. The period of limitations does not begin to run against a person entitled to bring an action for breach of fiduciary duty while the person is under 18 years of age. {Tex. Civ. Prac. & Rem. Code §§ 16.001, 16.004.} Daniel S. Weiner became 18 on March 18, 2014 and is thus within the limitations period for bringing this action.

## CAUSES OF ACTION

32. Daniel S. Weiner incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

33. There is a real and justiciable controversy between Daniel S. Weiner and Respondent Andy I. Weiner concerning Respondent Weiner's actions as trustee of Daniel's Trust.

34. Respondent Weiner has materially breached his fiduciary duties in the following manner:

a. By borrowing substantially all of the assets of Daniel's Trust for his own personal use and benefit on April 9, 2009 without interest or collateral in violation of Paragraph E-3(a) of the Trust Agreement and the Texas Trust Code § 113.052, both of which expressly forbid borrowing by the trustee;

b. By commingling substantially all of Daniel's Trust assets with Respondent Weiner's own personal funds in violation of the duty of loyalty under Texas Trust Code § 117.007, the duty not to profit by self-dealing with the trust under Texas Trust Code § 114.0001(a), and the common law duty to segregate trust assets;

c. By investing over 65 percent of Daniel's Trust assets in Weiner Stores, Inc. in 1999, resulting in a material loss to the trust in violation of the prudent investor rule under Texas Trust Code § 117.004;

d. By failing to properly diversify Daniel's Trust property resulting in a material loss to the trust in violation of the duty to diversify under Texas Trust Code § 117.005;

e. By failing to prudently invest Daniel's Trust property resulting in a material loss to the trust in violation of the prudent investor rule under Texas Trust Code § 117.004;

7

f.     By failing to render an accounting despite written demand by Daniel S. Weiner on December 19, 2013 in violation of the duty to account under Texas Trust Code §§ 113.151 and 113.152.

Daniel and his trust have suffered substantial economic damages as a direct result of Respondent Weiner's material breaches of fiduciary duty enumerated above.

35.   Daniel Weiner further claims that Respondent Weiner's sister, Bayle Weiner Drubel, should not be named as successor trustee in the event Respondents are unable to serve because she has a material conflict of interest with respect to this Trust due to her relationship with Respondent Weiner.  As a result of her conflict, Ms. Drubel would not be capable of properly performing her fiduciary duties. {*Kappus v. Kappus*, 284 S.W.3d 831 (Tex. 2009)}.

## RELIEF REQUESTED

WHEREFORE, Daniel S. Weiner requests:

36.   Judgment against Respondent Andy I. Weiner for a sum within the jurisdictional limits of the Court.

37.   Monetary relief of over $200,000 but not more than $1,000,000.

38.   Removal of Respondent Weiner as Trustee of the Daniel Steven Weiner 1996 Trust pursuant to Texas Trust Code §§ 114.008(a)(7) and 113.082;

39.   That Respondent Weiner be ordered to pay money or restore property to Daniel's Trust equal to the trust's lost profits caused by Respondent Weiner's borrowing, imprudent investing, and other breaches of fiduciary duty pursuant to Texas Trust Code § 114.008(a)(3);

40. That Respondent Weiner be ordered to disgorge and pay to Daniel's Trust any profit he has made through his personal use of Daniel's Trust funds under Texas Trust Code § 114.0001(a).

41. That Respondent Weiner be ordered to pay Daniel's Trust punitive damages in excess of the statutory cap due to Respondent Weiner's gross negligence and intentional and conscious indifference to the rights of the beneficiaries under Texas Civ. Prac. & Rem. Code § 41.008.

42. That Daniel S. Weiner be awarded reasonable and necessary attorney fees, costs, and expenses through trial and all appeals under applicable Texas law, including but not limited to Texas Civ. Prac. & Rem. Code § 38.001 and Texas Trust Code §§ 114.064 and 113.151(a).

43. That Respondent Weiner be ordered to submit an accounting that meets the requirements of Texas Trust Code § 113.152 and personally bear the cost of the accounting pursuant to Texas Trust Code § 113.151.

44. That Daniel's Trust be modified pursuant to Texas Trust Code § 112.054(a)(3) to appoint Daniel Weiner as co-Trustee with Respondent Katherine Warren and remove Bayle Weiner Drubel as the successor trustee in the event that Ms. Warren ceases to serve.

45. That Daniel S. Weiner and his trust be awarded prejudgment and postjudgment interest as provided by law.

**PRAYER**

WHEREFORE PREMISES CONSIDERED, Daniel S. Weiner prays that the Court grant the

requested relief and such further relief to which Daniel S. Weiner and his trust are justly

entitled.

<div style="margin-left:40%">

By: /s/ Carol A. Cantrell
Carol A. Cantrell, Attorney for Daniel S. Weiner
Texas Bar No.: 24043592
Meredith N. McIver
Texas Bar No.: 24078974
3700 Buffalo Speedway, Suite 520
Houston, TX  77098
Phone: 713-333-0555
Fax:  713-333-0550

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been duly served
by electronic service to counsel of record indicated below on this 22[st] day of April 2014.

Sarah Patel Pacheco
Kathleen Tanner Beduze
Crain Caton & James
Five Houston Center,
1401 McKinney, 17th Floor
Houston, TX  77010
spacheco@craincaton.com
713-658-1921 (facsimile)
ATTORNEY FOR RESPONDENT ANDY I. WEINER

Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, TX 77010
tom@lawcl.com
713-654-8115 (facsimile)
ATTORNEY FOR RESPONDENT KATHERINE R. WARREN

By: /s/ Carol A. Cantrell

# DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

A.   PRIMARY TRUST

A-1. <u>Distributions</u>. The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2. <u>Termination</u>. Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a)   To Daniel.

(b)   If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To Daniel's descendants.

(2)   If none of Daniel's descendants is then living, to trustors' descendants.

EXHIBIT A

(3)  If none of trustors' descendants is then living, to trustors' heirs.

A-3.  Payment of Taxes.  If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

B.  CONTINGENT TRUSTS

B-1.  Trusts Established.  Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment).  Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary.  However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2.  Distributions.    The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3.  Termination.  Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death.  Upon termination, the trust estate shall be distributed:

(a)  To the beneficiary.

(b)  If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment.  If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate.  If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)  To the beneficiary's descendants.

-2-

EXHIBIT A

(2) If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3) If none of these persons is then living, to trustors, descendants.

(4) If none of trustors' descendants is then living, to trustors' heirs.

C. DISTRIBUTIONS

C-1. <u>Distributions to or for Beneficiaries</u>. During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state. Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit. However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2. <u>Best Interests of Beneficiary</u>. In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

D. OFFICE OF TRUSTEE

D-1. <u>Successor Trustee, Co-Trustee</u>. The following provisions shall apply to each separate trust established under this trust agreement:

(a) <u>Successor Trustee</u>. Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee. Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

EXHIBIT A

(b) <u>Appointment of Successor Trustee by Trustee</u>. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) <u>Appointment of Successor Trustee by Beneficiaries</u>. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) <u>Appointment of Co-Trustee</u>. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) <u>Who May Be Appointed</u>. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f) <u>Procedure for Appointment</u>. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. <u>Resignation of Trustee</u>. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) <u>Notice</u>. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) <u>Accounting</u>. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. <u>Rights and Liabilities</u>.

(a) <u>Bond Not Required</u>. No bond or other security shall be required of any trustee.

(b) <u>Liabilities</u>. This agreement shall always be construed in

-4-

EXHIBIT A

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) <u>Compensation</u>. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E.  ADMINISTRATION

E-1. <u>General Powers of Trustee</u>. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) <u>Trust Estate</u>. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) <u>Business Interests</u>. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) <u>Transfers, Loans</u>. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) <u>Dealings With Related Parties</u>. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) <u>Agents, Employees</u>. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

-5-

EXHIBIT A

(f) Partitions, Distributions. The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) Claims, Controversies. The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) Additional Powers. In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. Principal and Income Determinations. The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. Restrictions on the Exercise of Certain Powers.

(a) Dealings with Trust Estate. No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

EXHIBIT A

(b)  <u>Distributions to or for Trustee</u>. Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4.  <u>Release and Delegations of Powers</u>. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

## F.  DEFINITIONS AND GENERAL PROVISIONS

F-1.  <u>Trust Estate</u>. "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2.  <u>Descendants</u>. "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3.  <u>Heirs</u>. Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4.  <u>Internal Revenue</u> Code. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

-7-

EXHIBIT A

F-5.  Other Terms.  The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6.  Spendthrift Provision.  No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner.  No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary.  Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7.  Texas Law Applies.  The situs of the trusts established under this trust agreement is Texas.  Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8.  Maximum Term of Trusts.  No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement.  Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9.  Powers of Appointment Exercisable by Beneficiaries.  In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state.  If the beneficiary appoints to a custodian, he may select the custodian.  If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions.  He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee.  He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate.  Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

G.   ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.

```
                              _____
                              Andy I. Weiner, Trustor and
                              Trustee


                              _____
                              Katherine Friedman Weiner,
                              Trustor and Trustee
```

EXHIBIT A

ATTACHMENT A:  INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST


$1.00


_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

3559:painsc\0157136

-10-

EXHIBIT A

| DATE | NUMBER | DESCRIPTION | AMOUNT OF TRANSACTION | | BALANCE | |
|---|---|---|---|---|---|---|
| 4/3/97 | 1026 | INTERNAL REVENUE SERVICE | 696 | 00 | | (signature) |
| 4/5/98 | 1027 | IRS - | 175 | 00 | | |
| 4/9/98 | 1028 | IRS - ESTIMATED | 175 | 00 | | |
| 6/1/98 | 1029 | IRS - ESTIMATE | 175 | 00 | | |
| 9/5/98 | 1030 | IRS - ESTIMATED Tax | 175 | 00 | | |
| 4/23/99 | deposit | Loan from mom & im. | 200000 | 00 | | |
| 1/2/99 | 1031 | IRS - ESTIMATED Tax | 175 | 00 | | |
| 2/18/99 | 1032 | SCHLICHER SCHOOL — APPL. FEE | 250 | 00 | | |
| 12/25/99 | deposit | from mom & d | 29,000 | 00 | | |
| 4/26/00 | 1ct | loan from mom & d | 13000 | 00 | | |
| 4/12/01 | 1033 | US TREASURY | 200 | 00 | | |

EXHIBIT A

| DATE | NUMBER | DESCRIPTION | AMOUNT OF TRANSACTION | BALANCE |
|---|---|---|---|---|
| 12/15/01 | 101 | Gift - Mom & Dad | 10,000 00 | |
| 12/01/02 | 102 | Gift - Mom & Dad | 11,000 00 | |
| 12/26/03 | 103 | Gift - Mom & Dad | 12,000 00 | |
| 5/8/05 | 104 | Gift - Boyce | 500 00 | |
| 12/29/05 | 105 | Gift - Mom & Dad | 5,000 00 | |

FILED
12/1/2014 12:00:00 AM
Stan Stanart
County Clerk
Harris County

No. 425,576-401

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DANIEL STEVEN WEINER | § | NO. 4 |
| | § | |
| 1996 TRUST | § | HARRIS COUNTY, TEXAS |

**ORIGINAL PETITION**

1 PER IN

12-1-2014

NOW COMES Daniel W. Warren (Daniel), Petitioner and Beneficiary of the Daniel Steven Weiner 1996 Trust, and files this Original Petition pursuant to the Court's Order (attached "Exhibit A") granting his Motion to Sever his causes of action from Cause No. 425,577, In Re David Abraham Weiner 1996 Trust. Petitioner seeks removal of Andy I. Weiner as Trustee of the Daniel Steven Weiner 1996 Trust and damages for breach of fiduciary duty.

**PARTIES**

1.    Daniel W. Warren, Petitioner, is an individual and Beneficiary of the Daniel Steven Weiner 1996 Trust (Daniel's Trust). Daniel W. Warren resides in Harris County, Texas at 1226 Muirfield, Houston, TX 77055. The last three digits of his driver's license number are 996. The last three digits of his Social Security number are 039.

2.    Andy I. Weiner, Respondent, is an individual acting as trustee of Daniel's Trust. He appeared and answered as Respondent in Cause No. 425,577, from which this case was severed. Mr. Weiner currently resides at 111 Post Oak Blvd., Apartment 452, Houston, Texas 77056. He can be served through his attorney of record, Sarah Patel-Pacheco, Crain Caton & James, 1401 McKinney, 17th Floor, Houston, Texas 77010.

3. Katherine R. Warren, is an individual acting as trustee of Daniel's Trust. She appeared and answered as a Respondent and Cross-Defendant in Cause No. 425,577 from which this case was severed. Petitioner released her of all liability in connection with her trusteeship

1

**EXHIBIT**

**TAB L**

exhibitsticker.com

pursuant to Texas Property Code § 114.005 and on August 7, 2014, filed a Notice of Nonsuit against Ms. Warren in Cause No. 425,577, which applies to this case in the same manner as if it had been filed under this Cause No. 425,576-401.

## DISCOVERY CONTROL PLAN

4.    This case is subject to the discovery control plan and deadlines set out in the Agreed Docket Control Order dated August 27, 2014 relating to Cause No. 425,577.

## VENUE

5.    Venue of this proceeding is proper in this Court pursuant to Texas Property Code § 115.002(b).

## FACTS

6.    Daniel W. Warren is the sole beneficiary of the Daniel Steven Weiner 1996 Trust (Daniel's Trust), an irrevocable inter vivos trust created by Respondent Andy Weiner and Katherine Warren on March 20, 1996. A true and correct copy of the Trust Agreement is attached hereto as "Exhibit B" and is incorporated for all purposes. Although neither party has a signed copy of Daniel's Trust Agreement, the parties have admitted the authenticity of the unsigned copy in pleadings and discovery.

7.    Andy I. Weiner and Katherine R. Warren, are Trustors (settlors) and Trustees of Daniel's Trust. Either trustee may serve alone if one of them should cease to act as trustee. [Paragraph D-1 of Daniel's Trust Agreement].

8.    The Trust Agreement grants the trustee discretion to make distributions for Daniel's best interest, considering his age, the income and transfer tax effects, the cost of his support, maintenance, education, and comfort without regard to any other resources available to him

2

for these purposes, and any other factors the trustee deems relevant. [Paragraphs A-1 and C-2 of Daniel's Trust Agreement].

9. However, no distributions can be made "to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto." [Paragraph C-1 of the Trust Agreement].

10. Daniel's Trust currently owns marketable securities worth approximately $108,043 as of September 30, 2014. The Trust assets came from a variety of sources, but primarily from Daniel's grandparents who wrote checks payable to "Andy Weiner, Custodian for Daniel Weiner," which Andy Weiner endorsed and deposited into Daniel's Trust.

11. Daniel's Trust Agreement provides that Daniel may withdraw the entire Trust corpus within 60 days after he becomes 21. To the extent Daniel does not exercise this withdrawal right, the Trust continues until Daniel becomes 30, or dies, whichever is earlier.

12. The Trust Agreement prohibits loans without adequate interest. It also prohibits loans to a trustor as follows: "No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor…." [Paragraph E-3(a) of the Trust Agreement]. Andy Weiner admits that he read Paragraph E-3(a) before he borrowed the money. But he decided that "It was better to borrow money from this trust than go into bankruptcy." [Deposition of Andy Weiner, Jan. 16, 2014, page 33, lines 13-16].

13. The Trust Agreement waives the trustee's common law duty to diversify the Trust

investments by permitting the trustee to invest in "property of any description," including "property unproductive of income,[1] shares of open or closed end investment trusts or companies, wasting assets,[2] and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount." [Paragraph E-1(a) of Daniel's Trust Agreement].

14. However, the Trust Agreement *does not* waive the trustee's duty to exercise judgment or the duty not to speculate with Trust assets under Texas Property Code § 113.056, which applied prior to January 1, 2004, as follows:

> Unless the terms of the trust instrument provide otherwise, in acquiring, investing, reinvesting, exchanging, retaining, selling, supervising, and managing trust property… a trustee **shall** exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence in the management of their own affairs, **not in regard to speculation** but in regard to the permanent disposition of their funds, considering the probable income from as well as the probable increase in value and safety of their capital.

15. Nor does the Trust Agreement waive the trustee's duty to prudently invest the Trust assets and make them productive. Texas Property Code § 117.004(a) provides that: "A trustee **shall** invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." *Langford v. Shamburger*, 417 S.W.2d 438, 444-445, *n.r.e.* (It is a breach of fiduciary duty to unreasonably delay the investment of trust funds).

---

[1] "Property unproductive of income" is property that has with little or no income, but is expected to appreciate, such as raw land or growth oriented (low-yield) stocks. [Rest. 3rd, Trusts (Prudent Investor Rule § 227, cmts.]

[2] "Wasting assets" are those that are overproductive of income, such as an oil well or coal deposit that depletes itself through use over time. [Rest. 3rd, Trusts (Prudent Investor Rule § 227, cmts.]

4

16.     The Trust Agreement relieves the trustee of liability "for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account." [Paragraph D-3(b) of the Trust Agreement] This Paragraph does *not* excuse Andy Weiner for *intentionally* breaching his fiduciary duty. Nor could it, because Texas Property Code § 114.007(a) renders any term of a trust relieving a trustee of liability for an intentional breach of trust as unenforceable.

17.     Andy Weiner began purchasing Weiners Stores Inc. stock for the Trust in 1999, shortly after it began trading on the OTC Bulletin Board in August 1998. OTC stocks do not meet the listing requirements of the national exchanges like NYSE, AMEX, and NASDAQ because they tend to be too small, closely held, thinly traded and risky.

18.     Weiners Stores Inc. had just emerged from Chapter 11 bankruptcy in August 1997, had only 518 shareholders, and was trading at 12.5 cents to $1.50 a share in 1998 and 1999.[3] Its Annual Report filed with the SEC in April 1999 reported that its sales were sliding and it had not paid a dividend or had an operating profit in the last five years. *Id.*

19.     Andy Weiner was aware that Weiners Stores Inc. was a risky investment. He was an executive officer of Weiners Stores Inc. for five to eight years before it filed for bankruptcy in 1995. [Andy Weiner Deposition, Jan. 16, 2014, p. 14, lines 1-17] Andy Weiner has a BA from Stanford and a Masters in Business from the University of Texas and is a retail shopping center developer. [*Id.* at p. 13, lines 16-25].

20.     Andy Weiner made several purchases of Weiner Stores Inc. stock for the Trust in May,

---

[3] Weiners Stores Inc. Annual Report - [X] Reg. S-K Item 405 - Form 10-K, *available at* http://www.secinfo.com/dRx61.68u.d.htm#6thPage.

June, and August 1999, spending $28,764 of Trust money. By August 31, 1999, he had accumulated 52,000 shares of Weiners Stores Inc. stock in the Trust, which was over 65 percent of its value. Intentionally placing such a large percentage of the Trust's assets at a risk of total loss was grossly negligent. [*Dolan v. Dolan*, 2009 Tex. App.-Houston Lexis 4487 (The trustee, an experienced businessman, was grossly negligent and ordered to pay exemplary damages for placing nearly half the trust assets at risk of total loss.)]

21. Weiner Stores Inc. filed for Chapter 11 bankruptcy again in October 2000. It announced that it was closing all of its stores in June 2001. Andy Weiner sold the Trust's 52,000 shares in December 2001 for $2, resulting in a complete loss of the Trust's $28,762 investment. Weiners Stores Inc. converted to a Chapter 7 bankruptcy six months later.

22. During the three years that Daniel's Trust funds were invested in Weiners Stores Inc. stock, Daniel's Trust *lost* over 12 percent of its portfolio value *each year.* Investing in Weiners Stores Inc. was grossly negligent based on the "overall performance of the entire trust estate," which is the standard set forth in the Trust Agreement by which the propriety of an investment will be evaluated.

23. On March 30, 2009, Andy Weiner liquidated the Trust's entire portfolio and on April 9, 2009 he knowingly and intentionally instructed Fidelity to transfer $90,959.38 to his own personal account at Fidelity. This left $1,000 in the Trust, with no promissory note, no interest, and no security for the $90,959.38 loan to Andy Weiner, who was "on the edge of bankruptcy." Andy Weiner knew that making the loan to himself was directly contrary to the Trust Agreement and that it would place the entire Trust portfolio at risk of loss by making an unsecured loan to a person on the edge of bankruptcy. [*Dolan v. Dolan*, 2009 Tex. App.-

6

Houston Lexis 4487 (The trustee was found to be grossly negligent and ordered to pay exemplary damages for loaning himself half the trust funds without interest or security.)]

24.    On July 10, 2010, Andy Weiner repaid $90,959.38 to Daniel's Trust without interest. Thereafter, he purposely delayed reinvesting the Trust money for 26 months until September 2012 when he finally invested the funds 51 percent in Fidelity Spartan 500 Index Fund (FUSEX), 31 percent in Fidelity Contrafund (FCNTX), and 18 percent in Fidelity Total Bond Fund (FTBFX).

25.    Had Andy Weiner invested Daniel's Trust funds on April 9, 2009 in the same funds and percentages as he purchased for the Trust in September 2012, Daniel's Trust would have earned $67,901 from April 9, 2009 to September 11, 2012. Yet the Trust earned less than $100 during this same time period. In fact, since its inception in 1996, Daniel's Trust *lost* an average of -1.167 percent per year. Based on the "overall performance of Daniel's entire trust estate," it was grossly negligent not to invest Daniel's Trust money from April 9, 2009 to September 11, 2012.

26.    Failing to invest the Trust assets was also bad faith because Andy Weiner had an improper motive for not investing the money. He planned to use the trust funds for his own "personal spending," according to an email he wrote to Katherine in 2011 stating that he was ready to consider investing the kid's trust funds because "If we sell the Tractor's in the near term, we would not need their funds for our personal spending." [*Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied) ("Improper motive is an essential element of bad faith."); *In re Hubberd Testamentary Trust*, 432 S.W.3d 358, 369 (Tex. App. San Antonio 2014) ("Bad faith is not simply bad judgment or negligence, but means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose.").

27. Daniel W. Warren did not discover Andy Weiner's breaches of fiduciary duty until discovery began in Cause No. 425,577. Daniel was a minor when the borrowings and imprudent investing occurred. The period of limitations does not begin to run against a person entitled to bring an action for breach of fiduciary duty while the person is under 18 years old. [Tex. Civ. Prac. & Rem. Code §§ 16.001, 16.004.] Daniel W. Warren became age 18 on March 11, 2014 and is thus within the limitations period for bringing this action.

28. On December 19, 2013, Daniel W. Warren, through his attorney, demanded an accounting of his Trust under Texas Property Code § 113.151-152. Andy Weiner has not yet provided one.

### CAUSES OF ACTION

29. Daniel W. Warren incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

30. There is a real and justiciable controversy between Daniel W. Warren and Andy Weiner concerning Andy Weiner's actions as trustee of Daniel's Trust.

31. Andy Weiner has knowingly, intentionally, and with gross negligence breached his fiduciary duties in the following manner, resulting in a material loss to the Trust:

a. By knowingly and intentionally exposing over 65 percent of Daniel's Trust funds to an extreme degree of risk by investing in Weiner Stores Inc., a highly speculative unlisted penny stock with no earnings or dividend history, resulting in a complete loss of the $28,762 investment, plus any future earnings it could have made, in violation of the duty to prudently invest the Trust assets without speculation under the Texas Property Code § 113.056 as it applied prior to January 1, 2004, resulting in a material loss to the Trust;

8

b. By knowingly and intentionally instructing Fidelity to transfer nearly all of Daniel's Trust funds to Andy Weiner's own personal account at Fidelity on April 9, 2009, in violation of the Trust Agreement, which expressly forbids "loans to a trustor or any spouse of a trustor" and "loans to any person without adequate interest" [Paragraph E-3(a) of the Trust Agreement], which Andy Weiner read before he transferred the money to himself, resulting in a material loss to the Trust;

c. By knowingly and intentionally instructing Fidelity to transfer nearly all of Daniel's Trust funds to Andy Weiner's own personal account at Fidelity on April 9, 2009 in violation of the Trust Agreement Paragraph C-1, which expressly forbids "distributions to a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor," resulting in a material loss to the Trust;

d. By failing to compensate Daniel's Trust for Andy Weiner's personal use of $90,959.38 belonging to the Trust, resulting in a material loss to the Trust;

e. By knowingly and intentionally putting his own interest above the beneficiary's by using Daniel's Trust funds as Andy Weiner's own money, in violation of the duty of loyalty under Texas Trust Code § 117.007, the duty not to profit by self-dealing with the Trust under Texas Trust Code § 114.0001(a), and the duty to segregate trust assets under Restatement of the Law Third (Trusts) § 179, resulting in a material loss to the Trust;

f. By knowingly, intentionally, and with bad faith failing to invest Daniel's Trust funds from April 9, 2009 to September 11, 2012 in violation of the duty to prudently invest the Trust assets under Texas Property Code § 117.004 and the duty of loyalty under Texas Property Code § 117.007, resulting in a material loss to the Trust;

g.      By refusing to render an accounting after written demand by Daniel W. Warren on December 19, 2013 in violation of the duty to account under Texas Trust Code §§ 113.151 and 113.152.

32.    Daniel and his Trust have suffered substantial economic damages as a direct result of Andy Weiner's gross negligence and material breaches of fiduciary duty enumerated above.

33.    Removal of Andy Weiner as Trustee is necessary to prevent further harm to the Trust.

## RELIEF REQUESTED

WHEREFORE, Daniel W. Warren respectfully requests:

34.   Judgment against Andy Weiner for a sum within the jurisdictional limits of the Court.

35.   Monetary relief of over $200,000 but not more than $1,000,000.

36.   Removal of Andy Weiner as Trustee of the Daniel Steven Weiner 1996 Trust pursuant to Texas Property Code §§ 114.008(a)(7) and 113.082;

37.   That Andy Weiner be ordered to pay money or restore property to Daniel's Trust equal to the trust's lost profits caused by Andy Weiner's improper borrowing and failure to prudently invest the Trust funds, pursuant to Texas Property Code § 114.008(a)(3) and its predecessor Texas Property Code § 113.056;

38.   That Andy Weiner be ordered to pay Daniel's Trust exemplary damages of *greater* than two times the Trust's economic damages based his knowing, intentional, and reckless dealing with Trust property worth over $20,000 in a manner that is contrary to the Trust Agreement and the Texas Property Code, and involved a substantial risk of loss to the Trust. [Tex. Civ. Prac. & Rem. Code § 41.008(b), 41.008(c)(10); Tex. Penal Code § 32.45].

39.    That Daniel W. Warren be awarded reasonable and necessary attorney fees, costs, and expenses through trial and all appeals under applicable Texas law, including but not limited to Texas Civ. Prac. & Rem. Code § 38.001 and Texas Property Code §§ 114.064 and 113.151(a).

40.    That Andy Weiner be ordered to submit an accounting that meets the requirements of Texas Property Code § 113.152 and personally bear the cost of the accounting pursuant to Texas Property Code § 113.151.

41.    That Daniel's Trust be modified pursuant to Texas Property Code § 112.054(a)(3) to appoint Daniel Warren as co-Trustee with Katherine Warren, or alternatively to terminate the Trust and distribute the funds to Daniel Warren.

42.    That Daniel W. Warren and his Trust be awarded prejudgment and post judgment interest at the rate of 5 percent as provided by the Texas Finance Code § 304.003(c), or as otherwise appropriate.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Daniel W. Warren prays that the Court grant the requested relief and such further relief to which Daniel W. Warren and his Trust are justly entitled.

By: /s/ Carol A. Cantrell
Carol A. Cantrell, Attorney for Daniel W. Warren
Texas Bar No.: 24043592
Meredith N. McIver
Texas Bar No.: 24078974
3700 Buffalo Speedway, Suite 520
Houston, TX  77098
Phone: 713-333-0555
Fax:  713-333-0550

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been duly served by citation and/or electronic service to counsel of record indicated below on this December 1, 2014.

Sarah Patel Pacheco
Kathleen Tanner Beduze
Crain Caton & James
Five Houston Center,
1401 McKinney, 17th Floor
Houston, TX  77010
pacheco-efile@craincaton.com
713-658-1921 (facsimile)
ATTORNEY FOR RESPONDENT ANDY I. WEINER

Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, TX 77010
tom@lawcl.com
713-654-8115 (facsimile)
ATTORNEY FOR KATHERINE R. WARREN

By: /s/ Carol A. Cantrell

No. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NO. 4 |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

### AMENDED ORDER ON MOTION TO SEVER

On this date, the Court having considered Daniel W. Warren's Motion to Sever and the Court's written and verbal Orders on August 27-28, 2014, GRANTS the Motion to Sever as follows. It is hereby:

ORDERED that Daniel W. Warren shall restate the claims set forth in his Motion to Sever as a new Original Petition by December 1, 2014 and complete service pursuant to the rules that would apply to a new lawsuit. It is further,

ORDERED that the Court Clerk assign Cause No. 425,576-401 to Daniel W. Warren's new Original Petition. It is further,

ORDERED that Daniel W. Warren file all future pleadings, motions, and other papers under Cause No. 425,576-401 as Petitioner rather than Intervenor. It is further,

ORDERED that all prior discovery, orders, motions, responses and answers pertaining to Daniel W. Warren in Cause No. 425,577 shall apply in the same manner as if such had occurred in Cause No. 425,576-401, and that the Clerk of this Court is hereby directed to transfer and file copies of the following pleadings and orders from Cause No. 425,577 to Cause No. 425,576-401:

1. Daniel W. Warren's Original Petition in Intervention; docket entry date 4-22-14

2. Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-15-14

3. Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-5-14

4. Notice of Submission of Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-5-14

5. Petitioners' Notice of Nonsuit Against Katherine Warren (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-7-14

EXHIBIT

A

exhibitsticker.com

6. Andy Weiner's Motion to Compel Depositions (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

7. Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-1-14

8. Motion for Continuance of Hearing on Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

9. Petitioners' Response to Andy Weiner's Motion to Compel (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-18-14

10. Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-22-14

11. Petitioners' Response to Andy Weiner's Motion for Continuance (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

12. Petitioners' Response to Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

13. Order Granting Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-29-14

14. Order Denying Motion for Sanctions; docket entry date 8-29-14

15. Order Partially Granting and Partially Denying Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-4-14

16. Daniel W. Warren's Motion to Sever; docket entry date 9-8-14

17. Order Partially Granting and Partially Denying Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-26-14

18. Order Granting Motion to Sever; signed 11-5-14

19. Court's Docket Sheet; docket entry date 8-29-14

20. Andy Weiner's First Supplement To Original Answer; docket entry date 7-8-14

21. Petitioner's Response to Andy Weiner's Motion for Partial Traditional Summary Judgment; docket entry date 8-5-14;

22. Petitioner's Application to Quash Deposition of Daniel Warren; docket entry date 8-11-14;

23. Order to Compel Depositions Granted; docket entry date 8-29-14; and

24. Petitioner's Responses to Andy Weiner's Special Exceptions to Petition in

Intervention and Motion for Sanctions; docket entry date 8-19-14.

It is further,

ORDERED that Cause No. 425,576-401 is subject to the deadlines set out in the Agreed Docket Control Order dated August 27, 2014 relating to Cause No. 425,577. It is further,

ORDERED that all costs related to the copying, transfer, and filing of items 1 through 24 herein be assessed against Daniel Warren. It is further,

ORDERED that if Daniel W. Warren fails to file a new Original Petition by the 1st day of December, 2014 as Cause No. 425,576-401, his pleading in Cause No. 425,577 will be dismissed.

SIGNED on this 17 day of November, 2014.

_Christine Butts_
PRESIDING JUDGE

DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

A. PRIMARY TRUST

A-1. <u>Distributions</u>. The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2. <u>Termination</u>. Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a) To Daniel.

(b) If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1) To Daniel's descendants.

(2) If none of Daniel's descendants is then living, to trustors' descendants.

EXHIBIT

B

(3) If none of trustors' descendants is then living, to trustors' heirs.

A-3. <u>Payment of Taxes</u>. If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

B.   CONTINGENT TRUSTS

B-1. <u>Trusts Established</u>. Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment). Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary. However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. <u>Distributions</u>.   The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. <u>Termination</u>. Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death. Upon termination, the trust estate shall be distributed:

(a)   To the beneficiary.

(b) If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment. If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate. If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To the beneficiary's descendants.

-2-

(2)  If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3)  If none of these persons is then living, to trustors, descendants.

(4)  If none of trustors' descendants is then living, to trustors' heirs.

C.  DISTRIBUTIONS

C-1.  Distributions to or for Beneficiaries.  During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state.  Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit.  However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor.  Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2.  Best Interests of Beneficiary.  In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

D.  OFFICE OF TRUSTEE

D-1.  Successor Trustee, Co-Trustee.  The following provisions shall apply to each separate trust established under this trust agreement:

(a)  Successor Trustee.  Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee.  Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

-3-

(b) <u>Appointment of Successor Trustee by Trustee</u>. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) <u>Appointment of Successor Trustee by Beneficiaries</u>. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) <u>Appointment of Co-Trustee</u>. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) <u>Who May Be Appointed</u>. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f) <u>Procedure for Appointment</u>. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. <u>Resignation of Trustee</u>. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) <u>Notice</u>. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) <u>Accounting</u>. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. <u>Rights and Liabilities</u>.

(a) <u>Bond Not Required</u>. No bond or other security shall be required of any trustee.

(b) <u>Liabilities</u>. This agreement shall always be construed in

-4-

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) _Compensation_. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E.   ADMINISTRATION

E-1. _General Powers of Trustee_. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) _Trust Estate_. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) _Business Interests_. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) _Transfers, Loans_. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) _Dealings With Related Parties_. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) _Agents, Employees_. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

-5-

(f) <u>Partitions, Distributions</u>. The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) <u>Claims, Controversies</u>. The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) <u>Additional Powers</u>. In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. <u>Principal and Income Determinations</u>. The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. <u>Restrictions on the Exercise of Certain Powers</u>.

(a) <u>Dealings with Trust Estate</u>. No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

(b) <u>Distributions to or for Trustee</u>. Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4. <u>Release and Delegations of Powers</u>. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

F. DEFINITIONS AND GENERAL PROVISIONS

F-1. <u>Trust Estate</u>. "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2. <u>Descendants</u>. "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3. <u>Heirs</u>. Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4. <u>Internal Revenue</u> Code. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

F-5. <u>Other</u> Terms. The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6. <u>Spendthrift Provision</u>. No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner. No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary. Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7. <u>Texas Law Applies</u>. The situs of the trusts established under this trust agreement is Texas. Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8. <u>Maximum Term of</u> Trusts. No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement. Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9. <u>Powers of Appointment Exercisable by Beneficiaries</u>. In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state. If the beneficiary appoints to a custodian, he may select the custodian. If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions. He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee. He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate. Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

G.  ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.

_____
Andy I. Weiner, Trustor and Trustee


_____
Katherine Friedman Weiner, Trustor and Trustee

ATTACHMENT A:   INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST


$1.00




_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

3559:painsc\0157136

-10-

No. 425,577

| | | |
|---|---|---|
| IN RE: | § | IN THE PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NO. 4 |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## AMENDED ORDER ON MOTION TO SEVER

On this date, the Court having considered Daniel W. Warren's Motion to Sever and the Court's written and verbal Orders on August 27-28, 2014, GRANTS the Motion to Sever as follows. It is hereby:

ORDERED that Daniel W. Warren shall restate the claims set forth in his Motion to Sever as a new Original Petition by December 1, 2014 and complete service pursuant to the rules that would apply to a new lawsuit. It is further,

ORDERED that the Court Clerk assign Cause No. 425,576-401 to Daniel W. Warren's new Original Petition. It is further,

ORDERED that Daniel W. Warren file all future pleadings, motions, and other papers under Cause No. 425,576-401 as Petitioner rather than Intervenor. It is further,

ORDERED that all prior discovery, orders, motions, responses and answers pertaining to Daniel W. Warren in Cause No. 425,577 shall apply in the same manner as if such had occurred in Cause No. 425,576-401, and that the Clerk of this Court is hereby directed to transfer and file copies of the following pleadings and orders from Cause No. 425,577 to Cause No. 425,576-401:

1. Daniel W. Warren's Original Petition in Intervention; docket entry date 4-22-14

2. Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-15-14

3. Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-5-14

4. Notice of Submission of Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-5-14

5. Petitioners' Notice of Nonsuit Against Katherine Warren (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-7-14

EXHIBIT

A

exhibitsticker.com

6. Andy Weiner's Motion to Compel Depositions (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

7. Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 7-1-14

8. Motion for Continuance of Hearing on Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-14-14

9. Petitioners' Response to Andy Weiner's Motion to Compel (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-18-14

10. Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-22-14

11. Petitioners' Response to Andy Weiner's Motion for Continuance (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

12. Petitioners' Response to Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 8-25-14

13. Order Granting Andy Weiner's Special Exceptions to the Original Petition in Intervention filed by Daniel W. Warren; docket entry date 8-29-14

14. Order Denying Motion for Sanctions; docket entry date 8-29-14

15. Order Partially Granting and Partially Denying Andy Weiner's Special Exceptions to Petitioners' Joint Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-4-14

16. Daniel W. Warren's Motion to Sever; docket entry date 9-8-14

17. Order Partially Granting and Partially Denying Andy Weiner's Motion for Partial Summary Judgment (a copy of which shall remain filed in Cause No. 425,577); docket entry date 9-26-14

18. Order Granting Motion to Sever; signed 11-5-14

19. Court's Docket Sheet; docket entry date 8-29-14

20. Andy Weiner's First Supplement To Original Answer; docket entry date 7-8-14

21. Petitioner's Response to Andy Weiner's Motion for Partial Traditional Summary Judgment; docket entry date 8-5-14;

22. Petitioner's Application to Quash Deposition of Daniel Warren; docket entry date 8-11-14;

23. Order to Compel Depositions Granted; docket entry date 8-29-14; and

24. Petitioner's Responses to Andy Weiner's Special Exceptions to Petition in

Intervention and Motion for Sanctions; docket entry date 8-19-14.

It is further,

ORDERED that Cause No. 425,576-401 is subject to the deadlines set out in the Agreed Docket Control Order dated August 27, 2014 relating to Cause No. 425,577. It is further,

ORDERED that all costs related to the copying, transfer, and filing of items 1 through 24 herein be assessed against Daniel Warren. It is further,

ORDERED that if Daniel W. Warren fails to file a new Original Petition by the 1st day of December, 2014 as Cause No. 425,576-401, his pleading in Cause No. 425,577 will be dismissed.

SIGNED on this 17 day of November, 2014.

_Christine Butts_
PRESIDING JUDGE

# DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

A.   PRIMARY TRUST

A-1.   Distributions. The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2.   Termination. Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a)   To Daniel.

(b)   If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)   To Daniel's descendants.

(2)   If none of Daniel's descendants is then living, to trustors' descendants.

EXHIBIT

B

exhibitsticker.com

(3) If none of trustors' descendants is then living, to trustors' heirs.

A-3. <u>Payment of Taxes</u>. If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

## B. CONTINGENT TRUSTS

B-1. <u>Trusts Established</u>. Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment). Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary. However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. <u>Distributions</u>. The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. <u>Termination</u>. Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death. Upon termination, the trust estate shall be distributed:

(a) To the beneficiary.

(b) If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment. If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate. If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1) To the beneficiary's descendants.

-2-

(2) If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3) If none of these persons is then living, to trustors, descendants.

(4) If none of trustors' descendants is then living, to trustors' heirs.

## C. DISTRIBUTIONS

C-1. <u>Distributions to or for Beneficiaries</u>. During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state. Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit. However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2. <u>Best Interests of Beneficiary</u>. In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

## D. OFFICE OF TRUSTEE

D-1. <u>Successor Trustee, Co-Trustee</u>. The following provisions shall apply to each separate trust established under this trust agreement:

(a) <u>Successor Trustee</u>. Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee. Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

-3-

(b)  Appointment of Successor Trustee by Trustee. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c)  Appointment of Successor Trustee by Beneficiaries. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d)  Appointment of Co-Trustee. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e)  Who May Be Appointed. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f)  Procedure for Appointment. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2.  Resignation of Trustee. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a)  Notice. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b)  Accounting. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3.  Rights and Liabilities.

(a)  Bond Not Required. No bond or other security shall be required  of any trustee.

(b)  Liabilities. This agreement shall always be construed in

-4-

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) <u>Compensation</u>. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E.   ADMINISTRATION

E-1. <u>General Powers of Trustee</u>. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) <u>Trust Estate</u>. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) <u>Business Interests</u>. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) <u>Transfers, Loans</u>. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) <u>Dealings With Related Parties</u>. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) <u>Agents, Employees</u>. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

(f) **Partitions, Distributions.** The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) **Claims, Controversies.** The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) **Additional Powers.** In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. **Principal and Income Determinations.** The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. **Restrictions on the Exercise of Certain Powers.**

(a) **Dealings with Trust Estate.** No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

(b) <u>Distributions to or for Trustee</u>. Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4. <u>Release and Delegations of Powers</u>. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

F. DEFINITIONS AND GENERAL PROVISIONS

F-1. <u>Trust Estate</u>. "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2. <u>Descendants</u>. "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3. <u>Heirs</u>. Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4. <u>Internal Revenue</u> Code. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

F-5. Other Terms. The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6. Spendthrift Provision. No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner. No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary. Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7. Texas Law Applies. The situs of the trusts established under this trust agreement is Texas. Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8. Maximum Term of Trusts. No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement. Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9. Powers of Appointment Exercisable by Beneficiaries. In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state. If the beneficiary appoints to a custodian, he may select the custodian. If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions. He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee. He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate. Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

G.   ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.

_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

-9-

ATTACHMENT A:  INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST


$1.00




_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

3559:painsc\0157136

-10-



NO. 425,577　　　　　　　　PROBATE COURT 4

| IN RE: | § | IN PROBATE COURT |
| | § | |
| DAVID ABRAHAM WEINER | § | NUMBER FOUR (4) OF |
| | § | |
| 1994 TRUST | § | HARRIS COUNTY, TEXAS |

## ANDY WEINER'S SECOND AMENDED CROSS-CLAIMS AGAINST KATHERINE WARREN F/K/A KATHERINE WEINER

TO THE HONORABLE JUDGE OF SAID COURT:

Andy Weiner ("Mr. Weiner") files the following Second Amended Cross-Claim Against Katherine F. Warren f/k/a Katherine Weiner ("Ms. Warren"), and, in support thereof, respectfully shows the following:

### I.
### Overview

1.　　Mr. Weiner and Ms. Warren are co-trustees of the David Abraham Weiner 1994 Trust ("David's Trust"). Mr. Weiner and Ms. Warren are likewise co-trustees of the Daniel Stephen Weiner 1996 Trust ("Daniel's Trust"). As such, Mr. Weiner and Ms. Warren are jointly responsible for the administration and liabilities of David's Trust and Daniel's Trust (collectively, the "Trusts"), if any.

2.　　Accordingly, Mr. Weiner files the following cross-claims against Ms. Warren:

　　a. Contribution;

　　b. Breaches of Fiduciary Duty;

　　c. Removal of Trustee; and

　　d. Tortious Interference with Administration.

### II.
### Factual Background

3.　　On December 13, 1994, Mr. Weiner and Ms. Warren established David's Trust for the benefit of their then-minor son, David. *See David Abraham Weiner 1994 Trust agreement,*

092865/000002
376 - 1273851v1

UNOFFICIAL COPY

EXHIBIT

TAB M

attached hereto as Exhibit A and incorporated by this reference. The irrevocable trust agreement provides that David is the primary beneficiary and Mr. Weiner and Ms. Warren are the co-trustees.

4. On March 11, 1996, Mr. Weiner and Ms. Warren established Daniel's Trust for the benefit of their then-minor son, Daniel S. Weiner ("Daniel"). *See Daniel Steven Weiner 1996 Trust*, attached hereto as Exhibit B and incorporated by this reference. The irrevocable trust agreement provides that Daniel is the primary beneficiary and Mr. Weiner and Ms. Warren are the original co-trustees. Exhibit B.

5. Both David's Trust agreement and Daniel's Trust agreement specifically provide that:

    a. Ms. Warren and Mr. Weiner are to act jointly as co-trustees;

    b. A trustee shall not be held liable for any act or omission, except in the case of gross negligence, bad faith or fraud; and

    c. The overall performance of the Trust shall be taken into account when assessing the propriety of any investment of the Trust.

*See* Exhibits A and B.

6. Additionally, the agreements of the Trusts grant Ms. Warren and Mr. Weiner, as co-trustees of the Trusts, the general powers to: (i) invest and reinvest the Trust assets[1]; (ii) lease, sell, transfer or encumber, in any manner, all or any part of the Trust[2]; and (iii) loan or borrow money from the Trust, in any manner.[3]

7. Ms. Warren and David's original lawsuit, filed solely against Mr. Weiner, sought an order from this Court to either distribute David's Trust funds to David free of trust or, alternatively, to award Ms. Warren sole and exclusive control over a new account (a Uniform Transfers to Minors Act account created for David's benefit), even though the Trust agreement

---

[1] Exhibit A § E-1(a); Exhibit B § E-1(a).
[2] Exhibit A § E-1(c); Exhibit B § E-1(a).
[3] Exhibit A § E-1(c); Exhibit B § E-1(a).

2

092865/000002
376 - 1273851v1

and the Divorce Decree provide otherwise. In the original Petition, Ms. Warren and David stated that Ms. Warren would submit an accounting and sought her discharge from any liabilities relating to the Trust.

8. Since originally filed, counsel for Ms. Warren and David has filed an amended petition that now names only David as the Petitioner, and Mr. Weiner and Ms. Warren as Respondents. In the amended petition, David instead sought to be his own trustee.

9. David testified in his partial deposition that he is not aware of any breaches of trust by either Mr. Weiner or Ms. Warren. Irrespective of this testimony under oath, David filed yet another amended petition asserting various claims solely against Mr. Weiner, even though both Mr. Weiner and Ms. Warren have served as co-trustees since the inception of David's Trust.

10. Since the filing of David's second amended petition, Daniel, David's younger brother, filed an original petition in intervention in this proceeding.[4]

11. As co-trustees of the Trust, Mr. Weiner and Ms. Warren are jointly responsible for the administration of the Trust. Accordingly, in the event damages are assessed against Mr. Weiner due to his role as co-trustee of David's Trust and/or Daniel's Trust, Ms. Warren is responsible for 50% of those damages, in addition to 50% of Mr. Weiner's attorneys' fees and costs incurred in defending this action.

### III.
### Cross-Claims Against Katherine Warren

12. Mr. Weiner incorporates by reference the factual allegations contained within the preceding Paragraphs 1 through 11.

---

[4] Mr. Weiner does not concede that Daniel has standing to bring any claims against Mr. Weiner in this proceeding nor does Mr. Weiner agree with Daniel's alleged legal basis to intervene in the above-referenced proceeding.

3

092865/000002
376 - 1273851v1

### A. Cross-Claim for Contribution.

13.     In David's Second Amended Petition, he seeks to hold Mr. Weiner liable for breaches of fiduciary duty in his capacity as David's Trust.  *See* Second Amended Petition at ¶14, on file with this Court.

14.     Likewise, in Daniel's Petition in Intervention, Daniel seeks to hold Mr. Weiner liable for breaches of fiduciary duty in his capacity as co-trustee of Daniel's Trust.  *See* Petition in Intervention at ¶34, on file with this Court.

15.     It is undisputed that Mr. Weiner and Ms. Warren were named as initial co-trustees of both David's Trust and Daniel's Trust.  Pursuant to Texas Property (Trust) Code, co-trustees are to act jointly in administering the Trust.  TEX. PROP. CODE § 113.085.  Ms. Warren has failed to jointly administer the Trusts with Mr. Weiner.

16.     Further, Ms. Warren has failed to delegate her powers or duties as co-trustee of the Trusts to Mr. Weiner.  Pursuant to Texas Property (Trust) Code Section 113.085(c):

> (c)     A co-trustee **shall participate in the performance of a trustee's function** unless the co-trustee:
> (1)     **is unavailable to perform** the function because of absence, illness, disqualification under other law, or other temporary incapacity; or
> (2)     **has delegated the performance of the function to another trustee** in accordance with the terms of the trust or applicable law, has communicated the delegation to all other co-trustees, and has filed the delegation in the records of the trust.

TEX. PROP. CODE § 113.085 (c) (emphasis added).

17.     And, the Trusts expressly provide that a co-trustee may only release or delegate her powers as follows:

> E-4. Release and Delegations of Powers. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A

092865/000002
376 - 1273851v1

release or delegation *shall be by written instrument filed with the records of each trust to which the release or delegation applies*.

*See* Exhibit A § E-4 (emphasis added); Exhibit B § E-4 (emphasis added).

18.   Ms. Warren never communicated any intent to delegate her co-trustee duties to Mr. Weiner nor has she filed a written instrument delegating or releasing any powers to Mr. Weiner, as required by the terms of the Trusts. In short, there is no evidence that Ms. Warren has delegated the performance of her co-trustee functions to Mr. Weiner. TEX. PROP. CODE § 113.085(c)(2).

19.   Mr. Weiner seeks to hold Ms. Warren responsible for 50% of any liabilities assessed against the Trusts and/or him relating to the actions sought by any beneficiary, including, but not limited to, holding Ms. Warren liable for 50% of the attorneys' fees, accountant fees, and costs incurred by Mr. Weiner as a result of the above-referenced litigation.

20.   Thus, pursuant to Section 33.016 of the Texas Civil Practice & Remedies Code, Mr. Weiner asserts a contribution claim against Ms. Warren for any liability that may be imposed on him pursuant to the breach of fiduciary duty claims brought by David and/or Daniel in the instant litigation.

### B.   Cross-Claim for Breaches of Fiduciary Duty.

21.   Ms. Warren, as co-trustee, serves in various fiduciary capacities for David and Daniel. Trustees are held to a "very high and very strict standard of conduct which equity demands". *Slay v. Burnett's Trust,* 187 S.W.2d 377, 387-88 (Tex. 1945).

22.   . As a fiduciary and co-trustee of the Trusts, Ms. Warren has breached the following duties:

  a. Duty of loyalty;
  b. Duty of competence;
  c. Duty of competence by failing to administer the Trusts pursuant to their terms;

5

092865/000002
376 - 1273851v1

d. Duty of full disclosure;

e. Duty to act with integrity of the strictest kind;

f. Duty to act with due diligence;

g. Duty to exercise reasonable discretion; and

h. Duty to act as a reasonably prudent person.

23. Ms. Warren breached her fiduciary duties, which resulted in injury.

24. Thus, in accordance with recognized principles of fiduciary law, Mr. Weiner seeks an award of actual damages and, since Ms. Warren's conduct was intentional, punitive damages.

### C. Cross-Claim for the Removal of Ms. Warren as Trustee.

25. Ms. Warren, through her hostile actions and position of influence, has turned both Daniel and David against their father, Mr. Weiner. Despite Mr. Weiner's valiant attempts, Ms. Warren has failed and refused to engage with Mr. Weiner to administer the Trusts.

26. By these acts, Ms. Warren has created a hostile environment for David, Daniel and Mr. Weiner.

27. Accordingly, Mr. Weiner files this cross-claim for the removal of Ms. Warren as trustee of the Trusts.

### D. Cross-Claim for Tortious Interference with Administration.

28. Through her actions, Ms. Warren has tortiously interfered with Mr. Weiner's ability to properly administer the Trusts. Ms. Warren has interfered with the administration of the Trusts by initiating unnecessary litigious proceedings against Mr. Weiner, by and through David and Daniel, and continuously failing to act in the best interests of David and Daniel, to the detriment of Mr. Weiner.

29. Such acts have proximately caused and prevented and interfered with the ability of Mr. Weiner to properly administer Decedent's Estate.

UNOFFICIAL COPY

6

30.     Ms. Warren's acts have resulted in the incurrence of unnecessary expenses, damages or loss to the Trusts, for which recovery from her is proper in an amount within the jurisdictional limits of the Court.

31.     Mr. Weiner seeks actual and punitive damages for Ms. Warren's tortious interference with administration and for her intentional and malicious conduct.

## IV.
### Damages and Other Relief Requested

32.     Mr. Weiner re-alleges and incorporates by reference the foregoing background allegations and causes of action in support of the damages sought below.

### A.     Actual Damages.

33.     Based on the acts and occurrences set forth in the preceding paragraphs, Ms. Warren breached her fiduciary duties, proximately causing significant loss to the Trusts and actual damages to the Trusts.

34.     As a result of Ms. Warren's breaches of fiduciary duties, tortious interference with administration, and bad acts constituting her removal as trustee of the Trusts, which were the proximate cause of damages to Mr. Weiner and the Trusts, Mr. Weiner is entitled to damages from Ms. Warren.

### B.     Punitive Damages.

35.     As a result of Ms. Warren's intentional and willful breaches of fiduciary duty and tortious interference with administration, Mr. Weiner seeks punitive damages from Ms. Warren.

### C.     Additional Relief Sought.

36.     Mr. Weiner is entitled to pre-judgment and post-judgment interest and costs of court in all amounts awarded hereunder as allowed by law.  He specifically sues for recovery of pre-judgment and post-judgment interest and recovery of costs of court under the applicable

7

092865/000002
376 - 1273851v1

provisions of the laws of the State of Texas.

37. With regard to claims by David and/or related to David's Trust, Mr. Weiner, individually and as co-trustee, respectfully requests the following relief:

a. To the extent of any claims of David, Ms. Warren shall be held responsible for all actions and alleged inactions of the trustees;

b. To the extent of any claims of David, Ms. Warren shall be held equally liable for all claimed damages and relief sought by David, as finally determined, if any;

c. Ms. Warren shall be held liable for any and all violations of David's Trust agreement, including any plan or scheme to collude with David;

d. Ms. Warren shall be held equally responsible for the preparation and submission of any accounting determined to be due and personally bear one-half of the costs of the accounting pursuant to §113.151 of the Texas Trust Code; and

e. Ms. Warren shall be ordered to pay one-half of Mr. Weiner's attorneys' fees and costs incurred as a result of defending the lawsuit.

38. With regard to claims by Daniel and/or related to Daniel's Trust, Mr. Weiner, individually and as co-trustee, respectfully requests the following relief:

a. To the extent any claims of Daniel are validly asserted in this proceeding, Ms. Warren shall be held responsible for all actions and alleged inactions of the trustees;

b. To the extent any claims of Daniel are validly asserted in this proceeding, Ms. Warren shall be held equally liable for all claimed damages and relief sought by Daniel, as finally determined, if any;

c. Ms. Warren shall be held liable for any and all violations of Daniel's Trust agreement, including any plan or scheme to collude with Daniel;

d. Ms. Warren shall be held equally responsible for the preparation and submission of any accounting determined to be due, and personally bear one-half of the costs of the accounting pursuant to §113.151 of the Texas Trust Code; and

e. Ms. Warren shall be ordered to pay one-half of Mr. Weiner's attorneys' fees and costs incurred as a result of defending the lawsuit.

8

WHEREFORE, Andy Weiner respectfully requests that this Court grant the above-requested relief, and for such other and further relief as to which he may show himself justly entitled to receive.

Respectfully submitted,

**CRAIN, CATON & JAMES,**
**A PROFESSIONAL CORPORATION**

By: /s/ Kathleen Tanner Beduze
SARAH PATEL PACHECO
(TBA # 00788164)
KATHLEEN TANNER BEDUZE
(TBA # 24052205)
1401 McKinney, 17th Floor
Houston, Texas 77010
(713) 658-2323
(713) 658-1921 (Facsimile)

*Attorneys for Andy Weiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to:

Carol A. Cantrell
Cantrell & Cowan, PLLC
3700 Buffalo Speedway, Suite 520
Houston, Texas 77098
Facsimile: (713) 333-0550

Thomas R. Conner
Conner & Lindamood, P.C.
1221 Lamar, Suite 1010
Houston, Texas 77010
Facsimile: (713) 654-8115

by e-file and/or facsimile on the 24th day of October, 2014.

/s/ Kathleen Tanner Beduze
KATHLEEN TANNER BEDUZE

9

UNOFFICIAL COPY

092865/000002
376 - 1273851v1

## DAVID ABRAHAM WEINER 1994 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the David Abraham Weiner 1994 Trust for the benefit of their son, David Abraham Weiner ("David"). Trustors grant, assign and deliver to Andy I. Weiner and Katherine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the David Abraham Weiner 1994 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

### A. PRIMARY TRUST

A-1. **Distributions**. The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to David, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in David's best interests.

A-2. **Termination**. David may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that David does not exercise this withdrawal right, the trust shall continue until David becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a) To David.

(b) If David is not then living, to such one or more persons, corporations or organizations (including David's estate), as David

-1-

EXHIBIT A

appoints by a will which specifically refers to this power of appointment. If or to the extent that David does not effectively exercise this power of appointment, the trust estate shall be distributed:

    (1)   To David's descendants.

    (2)   If none of David's descendants is then living, to trustors' descendants.

    (3)   If none of trustors' descendants is then living, to trustors' heirs.

A-3. **Payment of Taxes**. If David's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of David's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

### B. CONTINGENT TRUSTS

B-1. **Trusts Established**. Any portion of a trust estate upon the trust's termination (other than a portion withdrawn by David pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment). Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary. However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. **Distributions**. The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. **Termination**. Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30

-2-

and is under no legal disability or upon the beneficiary's earlier death. Upon termination, the trust estate shall be distributed:

(a)  To the beneficiary.

(b)  If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment. If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate. If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1)  To the beneficiary's descendants.

(2)  If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3)  If none of these persons is then living, to trustors' descendants.

(4)  If none of trustors' descendants is then living, to trustors' heirs.

## C.  DISTRIBUTIONS

C-1. Distributions to or for Beneficiaries. During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state. Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit. However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

-3-

C-2. **Best Interests of Beneficiary**. In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

### D. OFFICE OF TRUSTEE

D-1. **Successor Trustee. Co-Trustee**. The following provisions shall apply to each separate trust established under this trust agreement:

(a) **Successor Trustee**. Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee. Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

(b) **Appointment of Successor Trustee by Trustee**. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) **Appointment of Successor Trustee by Beneficiaries**. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) **Appointment of Co-Trustee**. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) **Who May Be Appointed**. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere. However, neither a trustor nor any spouse of a trustor may be appointed as trustee.

(f) **Procedure for Appointment**. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including,

-4-

for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. **Resignation of Trustee**. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) **Notice**. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) **Accounting**. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. **Rights and Liabilities**.

(a) **Bond Not Required**. No bond or other security shall be required of any trustee.

(b) **Liabilities**. This agreement shall always be construed in favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) **Compensation**. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

**E. ADMINISTRATION**

E-1. **General Powers of Trustee**. To carry out the trust purposes, but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) **Trust Estate**. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the

-5-

provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed end investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) **Business Interests**. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) **Transfers, Loans**. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) **Dealings With Related Parties**. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) **Agents, Employees**. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

(f) **Partitions, Distributions**. The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) **Claims, Controversies**. The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) **Additional Powers**. In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a

-6-

written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. **Principal and Income Determinations.** The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. **Restrictions on the Exercise of Certain Powers.**

(a) **Dealings with Trust Estate.** No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

(b) **Distributions to or for Trustee.** Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4. **Release and Delegations of Powers.** Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee then acting. A release or delegation shall be

-7-

by written instrument filed with the records of each trust to which the release or delegation applies.

## F. DEFINITIONS AND GENERAL PROVISIONS

F-1. **Trust Estate.** "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2. **Descendants.** "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3. **Heirs.** Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4. **Internal Revenue Code.** "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

F-5. **Other Terms.** The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

F-6. **Spendthrift Provision.** No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate

-8-

in any manner. No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary. Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

F-7. Texas Law Applies. The situs of the trusts established under this trust agreement is Texas. Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

F-8. Maximum Term of Trusts. No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement. Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

F-9. Powers of Appointment Exercisable by Beneficiaries. In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state. If the beneficiary appoints to a custodian, he may select the custodian. If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions. He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee. He may impose lawful conditions on an appointment and, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate. Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died intestate. The foregoing provisions are intended to expedite the

-9-

prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

### G. ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the David Abraham Weiner 1994 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 13 day of _December_, 1994.

_____
Andy I. Weiner, Trustor and Trustee

_____
Katherine Friedman Weiner, Trustor and Trustee

-10-

ATTACHMENT A:  INITIAL CONTRIBUTIONS
TO THE DAVID ABRAHAM WEINER 1994 TRUST


$20,000


_____
Andy I. Weiner,  Trustor  and
Trustee

_____
Katherine  Friedman  Weiner,
Trustor and Trustee


-11-

STATE OF TEXAS §

COUNTY OF HARRIS §

    Before me, the undersigned authority, on this day personally appeared Andy I. Weiner, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, and in the capacity therein stated.

    Given under my hand and seal this 13th day of December, 1994.



JULIE SLATEN
Notary Public
STATE OF TEXAS
My Comm. Exp. 03-18-'95

    Notary Public in and for
the State of Texas


STATE OF TEXAS §

COUNTY OF HARRIS §

    Before me, the undersigned authority, on this day personally appeared Katherine Friedman Weiner, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed, and in the capacity therein stated.

    Given under my hand and seal this 13th day of December, 1994.

JULIE SLATEN
Notary Public
STATE OF TEXAS
My Comm. Exp. 03-18-'95

    Notary Public in and for
the State of Texas


0752:3448:121394
f:\L00752\HF51\TRO\WEINA3-1.TRO


-12-

# DANIEL STEVEN WEINER 1996 TRUST

By this trust agreement, Andy I. Weiner and Katherine Friedman Weiner, husband and wife, both of Harris County, Texas, as "trustors," establish the Daniel Steven Weiner 1996 Trust for the benefit of their son, Daniel Steven Weiner ("Daniel"), born March 11, 1996. Trustors grant, assign and deliver to Andy I. Weiner and Katharine Friedman Weiner, both of Harris County, Texas, as "trustees," the property described in Attachment A. Attachment A, which is captioned "Initial Contributions to the Daniel Steven Weiner 1996 Trust," is incorporated by reference as a part of this trust agreement.

This trust agreement and the trusts established by it are irrevocable. No person shall have the right to revoke or amend this trust agreement or any of its provisions. However, property acceptable to the trustee may be added to any trust from time to time in the future by trustors or by any other person (including additions pursuant to the provisions of the last will of any person).

All references to "trustee" shall refer to the person or persons then acting as such.

## A. PRIMARY TRUST

A-1. _Distributions._ The income of the trust may be accumulated and retained, in whole or in part, or the trustee may distribute to Daniel, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in Daniel's best interests.

A-2. _Termination._ Daniel may withdraw any part or all of the trust estate within 60 days after he becomes age 21, and may thereby terminate the trust as to the part withdrawn. Exercise of this withdrawal right shall be by one or more written instruments delivered to the trustee within the 60-day period. If or to the extent that Daniel does not exercise this withdrawal right, the trust shall continue until Daniel becomes age 30 or dies before that age, at which time the trust estate shall be distributed:

(a) To Daniel.

(b) If Daniel is not then living, to such one or more persons, corporations or organizations (including Daniel's estate), as Daniel appoints by a will which specifically refers to this power of appointment. If or to the extent that Daniel does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1) To Daniel's descendants.

(2) If none of Daniel's descendants is then living, to trustors' descendants.

## EXHIBIT B

(3) If none of trustors' descendants is then living, to trustors' heirs.

A-3. **Payment of Taxes**. If Daniel's will contains no contrary directions, the trustee shall pay from the trust estate the entire increment in taxes payable by reason of Daniel's death (including any interest or penalties thereon) to the extent (if any) that the total of such taxes is greater than would have been imposed if no portion of the trust estate were taken into account in determining such taxes.

B. CONTINGENT TRUSTS

B-1. **Trusts Established**. Any portion of a trust estate upon the trusts termination (other than a portion withdrawn by Daniel pursuant to Paragraph A-2) which would be distributable to a beneficiary who is under age 30 or to a beneficiary who is under a legal disability instead shall be distributed to the trustee of a Contingent Trust (unless otherwise directed by the valid exercise of a power of appointment). Each beneficiary's portion so distributed shall be held and administered as the initial trust estate of a separate trust for the beneficiary. However, if a Contingent Trust is already in existence for that beneficiary, any additional portion to be distributed to the trustee of a Contingent Trust for the beneficiary shall be added to the trust estate of the existing Contingent Trust.

B-2. **Distributions**. The income of each Contingent Trust may be accumulated and retained, in whole or in part, or the trustee may distribute to the beneficiary for whom the trust was established, from time to time, so much or all of the trust estate as, in the trustee's discretion, is in the beneficiary's best interests.

B-3. **Termination**. Each Contingent Trust shall terminate when the beneficiary for whom the trust was established has become age 30 and is under no legal disability or upon the beneficiary's earlier death. Upon termination, the trust estate shall be distributed:

(a) To the beneficiary.

(b) If the beneficiary is not then living, to such one or more persons, corporations or organizations as the beneficiary appoints by a will which specifically refers to this power of appointment. If none of the beneficiary's descendants is then living, this power may not be exercised in favor of the beneficiary, the beneficiary's estate, the beneficiary's creditors or the creditors of the beneficiary's estate. If or to the extent that the beneficiary does not effectively exercise this power of appointment, the trust estate shall be distributed:

(1) To the beneficiary's descendants.

-2-

(2) If none of the beneficiary's descendants is then living, to the descendants of the beneficiary's nearest ancestor who was one of trustors' descendants and who has descendants then living.

(3) If none of these persons is then living, to trustors' descendants.

(4) If none of trustors' descendants is then living, to trustors' heirs.

### C. DISTRIBUTIONS

C-1. **Distributions to or for Beneficiaries.** During the term of a trust, any distribution to be made to a beneficiary from the trust may be made (i) to the beneficiary, (ii) if the beneficiary is under a legal disability or if the trustee determines that the beneficiary is unable to properly manage his affairs, to a person furnishing support, maintenance or education for the beneficiary or with whom the beneficiary is residing, for expenditure on the beneficiary's behalf, or (iii) to a custodian for a minor beneficiary, as selected by the trustee, under the Uniform Gifts to Minors Act of any state. Alternatively, the trustee may otherwise apply all or a part of the distribution for the beneficiary's benefit. However, no such distribution shall be made to a trustor, to any spouse of a trustor, or in any manner that discharges a legal obligation (including an obligation of support) of a trustor or any spouse of a trustor. Any distribution under this paragraph shall be a full discharge of the trustee with respect thereto.

C-2. **Best Interests of Beneficiary.** In making distributions in the "best interests" of a beneficiary, the trustee may consider the age of the beneficiary, the costs of the beneficiary's support, maintenance, education and comfort without regard to any other resources available to the beneficiary for these purposes, the effect of any distribution upon the income and transfer tax liability of the beneficiary or of the trust, and any other factors deemed relevant by the trustee.

### D. OFFICE OF TRUSTEE

D-1. **Successor Trustee. Co-Trustee.** The following provisions shall apply to each separate trust established under this trust agreement:

(a) **Successor Trustee.** Should Andy I. Weiner or Katherine Friedman Weiner cease to act as trustee, for any reason, the one remaining shall continue to act as trustee. Should both Andy I. Weiner and Katherine Friedman Weiner cease to act as trustees, for any reason, trustors appoint Bayle Weiner Drubel as successor trustee.

-3-

(b) **Appointment of Successor Trustee by Trustee**. At any time after qualifying as trustee, any trustee may appoint a successor trustee to act in his place, either immediately or in the future upon any stated contingency, and may thereby supplement the provisions of subparagraph (a).

(c) **Appointment of Successor Trustee by Beneficiaries**. If at any time there is no trustee acting and none has been appointed, a majority of the beneficiaries (acting through the beneficiary's natural or legal guardian or legal representative, in the case of a beneficiary under a legal disability) who might then be entitled to receive a distribution from the trust estate shall appoint a successor trustee.

(d) **Appointment of Co-Trustees**. The trustee (acting unanimously if more than one) may appoint one or more co-trustees.

(e) **Who May Be Appointed**. A successor trustee or co-trustee may be any individual, bank or trust company and may be domiciled anywhere.

(f) **Procedure for Appointment**. Appointment shall be made by written instrument filed with the trust records. Any such appointment may be changed or revoked prior to the date it becomes effective. Any such appointment may be limited in any manner deemed advisable by the person making the appointment, including, for example, restricting the power over distributions as necessary to avoid the imposition of any tax upon the trust, the appointee or the appointee's estate.

D-2. **Resignation of Trustee**. A trustee may resign from a trust without the necessity of any court proceeding upon meeting these conditions:

(a) **Notice**. At least 30 days' written notice (if not waived) shall be given to each beneficiary who might then be entitled to receive a distribution from the trust estate. If a beneficiary is under a legal disability, notice shall be given to (or waived by) the beneficiary's natural or legal guardian.

(b) **Accounting**. If and to the extent required by the successor trustee, an accounting for the administration of the trust shall be given to the successor trustee. The successor trustee shall be fully protected in relying upon such accounting.

D-3. **Rights and Liabilities**.

(a) **Bond Not Required**. No bond or other security shall be required of any trustee.

(b) **Liabilities**. This agreement shall always be construed in

-4-

favor of the validity of any act by or omission of any trustee. A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud. Specifically, in assessing the propriety of any investment of a trust estate, the overall performance of the entire trust estate shall be taken into account.

(c) _Compensation_. Each trustee shall be entitled to receive reasonable compensation for services actually rendered to a trust.

E. ADMINISTRATION

E-1. _General Powers of Trustee_. To carry out the trust purposes but subject to any limitations stated elsewhere herein, the trustee of each trust shall have the following powers, which may be exercised free from court supervision, and which shall exist until all of the trust estate has been distributed:

(a) _Trust Estate_. The trustee may invest and reinvest all or any part of the trust estate in property of any description and may retain as a part of the trust estate any property acquired at any time and in any manner. Specifically, and without regard to the provisions of any applicable state law, the trustee may retain, or invest and reinvest in, property unproductive of income, shares of open or closed and investment trusts or companies, wasting assets, and any other property, regardless of location and without regard to any requirement of diversification as to kind or amount.

(b) _Business Interests_. The trustee may continue operation of any business entity, in any business form, with all or any part of the trust estate, and may reorganize or liquidate any such entity at any time.

(c) _Transfers. Loans_. The trustee may lease, sell, transfer, or encumber in any manner (including with purchase money mortgages) all or any part of the trust estate, and may loan or borrow money in any manner (including by joint and several obligations) with or without security. Subject to the provisions of Paragraph E-3(a), the trustee may purchase assets from the estate of a trustor and may loan funds to the estate of a trustor at such rate of interest and with such security as the trustee determines to be in the best interests of the current beneficiaries of the trust.

(d) _Dealings With Related Parties_. The trustee may deal with any person or entity regardless of any relationship or identity of any trustee to or with that person or entity and may hold or invest all or any part of the trust estate in common or undivided interests with that person or entity.

(e) _Agents. Employees_. The trustee may employ and compensate agents and other employees and may delegate to them any and all discretions and powers.

-5-

(f) **Partitions, Distributions.** The trustee may partition all or any part of any interest, may pay and receive such moneys or properties as may be necessary to equalize differences, and in so doing (i) may make any distribution of all or any part of the trust estate in any manner (including composing shares differently) and (ii) may evaluate any property, which valuation shall be binding on all beneficiaries.

(g) **Claims, Controversies.** The trustee may maintain and defend any claim or controversy by or against the trust without the joinder or consent of any beneficiary.

(h) **Additional Powers.** In addition, the trustee shall have all rights, privileges and powers now or hereafter granted to trustees in Texas, including those granted under the Texas Trust Code. Any subsequent legislation or regulation expanding or limiting the rights, privileges and powers granted a trustee shall apply to all trusts hereunder unless the trustee elects not to have such legislation or regulation apply to a particular trust by a written instrument filed with the trust records. However, the provisions made for the various beneficiaries under this trust agreement are exclusive. Any statute that purports to enlarge the class of beneficiaries to whom distributions may be made or the purposes for which distributions may be made shall not apply to any trust. All trust powers may be exercised upon such terms as the trustee deems advisable and may affect trust properties for any length of time regardless of the duration of the trust. Generally, and subject only to the terms of this trust agreement, the trustee shall hold, manage, control, use, invest, reinvest, and dispose of the trust estate to the same extent as if the trustee were the fee simple owner thereof.

E-2. **Principal and Income Determinations.** The receipts, disbursements and reserves of each trust may be allocated, on a cash or accrual basis, between principal and income in the trustee's discretion without regard to the provisions of any statute. To the extent the trustee does not exercise this discretionary power, the provisions of the Texas Trust Code shall control.

E-3. **Restrictions on the Exercise of Certain Powers.**

(a) **Dealings with Trust Estate.** No power granted the trustee shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of any trust estate for less than an adequate consideration in money or money's worth or to authorize loans to any person without adequate interest. No part of any trust estate may be (i) loaned to a trustor or to any spouse of a trustor or (ii) applied to the payment of premiums on policies of insurance on the life of a trustor or on the life of any spouse of a trustor.

-6-

(b) Distributions to or for Trustee. Any power to make discretionary distributions to or for the benefit of a person who is serving as trustee of a trust (including distributions to the person's spouse and distributions in discharge of any legal obligation of the person) shall be exercisable solely by the trustee or trustees other than that person. If no other trustee is then serving, such power shall not be exercisable.

E-4. Release and Delegations of Powers. Any power granted to a trustee may be released, in whole or in part, temporarily or permanently. Except as provided in Paragraph E-3, any such power may be delegated, in whole or in part, temporarily or permanently, to any other trustee than acting. A release or delegation shall be by written instrument filed with the records of each trust to which the release or delegation applies.

F. DEFINITIONS AND GENERAL PROVISIONS

F-1. Trust Estate. "Trust estate" means all assets, however and whenever acquired (including income and accumulated income), which may belong to a trust at any given time.

F-2. Descendants. "Descendants" means the legitimate children of the person or persons designated and the legitimate lineal descendants of such children, and includes any person adopted before becoming age 18 and the adopted person's descendants. A posthumous child shall be considered as living at the death of his parent. Whenever a distribution is to be made to the descendants of any person, the property to be distributed shall be divided into as many equal shares as there are living children of the person and deceased children of the person who left descendants who are then living. Each living child shall take one share and the share of each deceased child shall be divided among his then living descendants in the same manner. "Trustors' descendants" includes only those persons descended from both trustors.

F-3. Heirs. Any distribution to be made to the "heirs" of a person shall be made to the individuals who would have inherited the person's personal property if the person had died intestate at the time the distribution is to be made, domiciled in Texas and not married, under the laws of Texas in force on the effective date of this trust agreement, with the shares of taking determined by those laws. However, both trustors and any spouse of a trustor shall be deemed to have died prior to the time that any such distribution is to be made. A distribution to "trustors' heirs" shall be made to the heirs of Andy I. Weiner.

F-4. Internal Revenue Code. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

-7-

P-5. <u>Other</u> Terms. The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

P-6. <u>Spendthrift Provision</u>. No beneficiary shall have the power to anticipate, encumber, or transfer his interest in any trust estate in any manner. No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities or torts of a beneficiary or subject to seizure or other process by any creditor of a beneficiary. Nothing in this paragraph shall be construed to limit the otherwise valid exercise of a power of appointment or right of withdrawal given by this trust agreement.

P-7. <u>Texas Law Applies</u>. The situs of the trusts established under this trust agreement is Texas. Wherever possible, the laws of Texas shall apply to the construction, administration and validity of each trust.

P-8. <u>Maximum Term of</u> Trusts. No trust shall continue for a period longer than 21 years after the death of the last to die of trustors and all of trustors' descendants who are living on the effective date of this trust agreement. Any trust still in force at the end of such period shall terminate, and the trust estate shall be distributed to the beneficiary for whom the trust was established.

P-9. <u>Powers of Appointment Exercisable by Beneficiaries</u>. In exercising a power of appointment given to a beneficiary by this trust agreement, the beneficiary may appoint the property subject to the power outright to the appointee, in trust, or to a custodian for the appointee under the Uniform Gifts to Minors Act of any state. If the beneficiary appoints to a custodian, he may select the custodian. If the beneficiary appoints in trust, he may select the trustee or trustees, may establish such administrative terms for the trust as he deems appropriate, and may impose lawful spendthrift restrictions. He may give the trustee discretionary powers over the income and principal, and may create a trust that has several permissible distributees. He may create life interests or other limited interests in some appointees with future interests in favor of other appointees, may appoint different types of interests among the appointees, and may create new powers of appointment in a trustee or trustees or in any appointee. He may impose lawful conditions on an appointment and,, in general, may appoint to or among the appointees in any lawful manner.

In determining whether, in what manner and to what extent a testamentary power of appointment has been exercised by a beneficiary, the trustee may act in reliance upon a court order admitting an instrument to probate as the beneficiary's last will or an order finding that the beneficiary died intestate. Unless within six months after the beneficiary's death the trustee has actual notice of the existence of proceedings to probate a will of the beneficiary, the trustee shall assume that the beneficiary died

-8-

intestate. The foregoing provisions are intended to expedite the prompt and efficient administration of the trust and to protect the trustee from any action taken or distribution made in accordance with these provisions. Nothing in this paragraph shall limit or qualify any power of appointment given by this trust agreement or any right which an appointee or taker in default of appointment may have against any person receiving a distribution from the trustee irrespective of the place of probate or of the time of discovery of a will exercising the power or any other action taken in the beneficiary's estate.

## G. ACCEPTANCE BY TRUSTEE

By signing this trust agreement, the trustee (i) accepts these trusts and all of the rights, powers and duties attached to the office of trustee as provided herein, (ii) agrees to serve as trustee of the Daniel Steven Weiner 1996 Trust and of any Contingent Trusts which may be established under this trust agreement, (iii) acknowledges receipt of the property described in Attachment A, and (iv) agrees to hold and administer each trust estate in accordance with the terms of this trust agreement.

This trust agreement is executed effective as of the 20th day of March, 1996.

_____
Andy I. Weiner, Trustor and
Trustee


_____
Katherine Friedman Weiner,
Trustor and Trustee

-9-

ATTACHMENT A:   INITIAL CONTRIBUTIONS
TO THE DANIEL STEVEN WEINER 1996 TRUST

$1.00

_____
Andy I. Weiner, Trustor and
Trustee

_____
Katherine Friedman Weiner,
Trustor and Trustee

-10-

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was
found to be inadequate for the best photographic
reproduction because of illegibility, carbon or
photo copy, discolored paper, etc. All blockouts,
additions and changes were present at the time
the instrument was filed and recorded.